# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| CHARLES CURRY d/b/a GET DIESEL NUTRITION, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| vs. | )   Case No. 17 C 2283<br>) |
| REVOLUTION LABORATORIES, LLC, REV LABS MANAGEMENT, INC., JOSHUA NUSSBAUM, and BARRY NUSSBAUM, | )<br>)<br>)<br>)<br>) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Charles Curry has filed suit against Revolution Laboratories, LLC (Revolution), Rev Labs Management, Inc. (Management), Joshua Nussbaum, and Barry Nussbaum, alleging that they infringed and diluted his trademark, violated the Illinois Consumer Fraud and Deceptive Practices Act, violated the Illinois Uniform Deceptive Trade Practices Act, engaged in false advertising and cybersquatting, and filed a fraudulent trademark application. Defendants have moved to dismiss the suit for lack of personal jurisdiction. For the reasons discussed below, the Court grants defendants' motion.

## Background

The Court takes the following facts from the complaint and evidence submitted by the parties in support of their arguments on defendants' motion to dismiss. Where facts are in dispute, the Court takes all facts in the light most favorable to Curry and

makes all reasonable inferences in his favor.  *Felland v. Clifton*, 682 F.3d 665, 672 (7th Cir. 2012).

Curry, a resident of Olympia Fields, Illinois, is the CEO and founder of Get Diesel Nutrition.  Founded in 2002, Get Diesel manufactures and sells dietary supplements.  Since 2002, Get Diesel has placed over 100 print ads for its products in dietary and fitness magazines.  In March 2005, Get Diesel began manufacturing a dietary supplement named Diesel Test.  The company began advertising Diesel Test in June 2005.  In June 2016, Curry filed a trademark application for the marks "Diesel Fuel" and "Diesel" with a first-use date of June 2002.  Curry does not say whether these marks have been registered with the United States Patent and Trademark Office.

Revolution is a limited liability company organized under Nevada law with its principal place of business in California.  The company manufactures and distributes dietary supplements and apparel.  According to Curry, Joshua and Barry Nussbaum are co-founders of Revolution.  Joshua is also the president of the company, and Barry is the CEO.  The two men also created Management, a domestic corporation organized under Nevada law with its principal place of business in California.  Joshua and Barry created Management for the sole purpose of acting as manager of Revolution.  Joshua is the president of Management, and Barry is the director.

In November 2016, Curry learned that defendants were manufacturing and distributing a dietary supplement also named Diesel Test.  Curry began receiving messages from customers on Facebook requesting a free trial of the Diesel Test dietary supplement or a refund for their purchase of Diesel Test.  Curry realized that the customers mistakenly believed that his company had manufactured and sold the

supplements they purchased from defendants. On November 13, 2016,[1] Curry sent defendants a message on Facebook notifying them that they were infringing his common-law trademark rights and demanding a halt to their sale and distribution of their Diesel Test product. On November 15, Curry sent a follow-up e-mail to Revolution in which he renewed his claims and instructed the company to contact his attorney.

Defendants continued to market and sell their products. On November 28, 2016, Joshua filed a trademark application for the "Diesel Test" trademark. Curry alleges that this application fraudulently represented defendants' ownership of the trademark. In December 2016, Curry filed his own trademark application for the "Diesel Test" trademark with a first-use date of April 2005. In March 2017, the PTO suspended both parties' applications for the "Diesel Test" trademark.

Curry then filed this suit, in which he contends that defendants knew of his company and common-law trademarks on products such as Diesel Test. He argues that defendants intended to capitalize on his reputation in the nutrition community by marketing a product with an identical name and very similar packaging in order to cause consumers to believe that defendants' products were associated with his company. In count 1, Curry alleges that defendants are violating the Illinois Consumer Fraud and Deceptive Practices Act by infringing on Curry's trademarks and by using false advertising to make consumers believe their products are associated with Curry's company. He alleges in count 2 that the same conduct violates the Illinois Uniform Deceptive Trade Practices Act. In count 3, Curry alleges that defendants are engaging

---

[1] The complaint states that this occurred in 2017, not 2016. Compl. ¶ 7. Because November 2017 is three months in the future, and based on the timeline of other events, the Court believes Curry intended to say 2016.

3

in false designation of origin and false advertising in violation of the Lanham Act. He alleges in count 4 that defendants are diluting his trademarks through tarnishment. In count 5, Curry alleges that defendants are infringing his trademarks in violation of Illinois common law. He alleges in count 6 that defendants' use of domain names incorporating his "Diesel Test" trademark constitutes cybersquatting in violation of the Lanham Act. In count 7, Curry alleges that Joshua submitted a fraudulent trademark application for the "Diesel Test" mark.

In an affidavit submitted in support of defendants' motion to dismiss, Barry states that neither he nor Management has ever been involved in the marketing, sale, distribution, or manufacturing of Revolution's products. He states that they were not aware that Curry claimed to own trademarks on the names "Diesel," "Diesel Fuel," and "Diesel Test," or that Curry was selling products under those names. He states that neither he nor Management has ever seen any advertisements for Curry's products until this lawsuit. Joshua also states in his affidavit that he, Revolution, and Management were not aware that Curry claimed to own the trademarks or that Curry was selling products under those names. He states that they have never seen advertisements for Curry's products. He also states that he and Revolution first learned of Curry's trademark claims through the Facebook message and that they did not know Curry was located in Illinois until he filed this suit.

## Discussion

Defendants have moved to dismiss Curry's suit for lack of personal jurisdiction. They contend that they do not have the requisite contacts with Illinois to justify the exercise of either general or specific jurisdiction.

4

Motions to dismiss for lack of personal jurisdiction are governed by Federal Rule of Civil Procedure 12(b)(2).  Fed. R. Civ. P. 12(b)(2).  Where a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction exists.  *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 799 (7th Cir. 2014).  The plaintiff need only make out a *prima facie* case of personal jurisdiction.  *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003).  If the defendant submits affidavits or other evidence in opposition to the exercise of jurisdiction, the plaintiff must go beyond the pleadings and submit affirmative evidence to support personal jurisdiction.  *Id.*  The Court accepts as true all uncontroverted allegations in the complaint and resolves any factual disputes in favor of Curry.  *Felland*, 682 F.3d at 672.

In a federal question case, "a federal court has personal jurisdiction over the defendant if either federal law or the law of the state in which the court sits authorizes service of process to that defendant."  *Mobile Anesthesiologists Chicago, LLC v. Anesthesia Assocs. of Houston Metroplex, P.A.*, 623 F.3d 440, 443 (7th Cir. 2010).  Where the federal statute at issue does not authorize nationwide service of process, personal jurisdiction is governed by the law of the forum state.  *Id.*  The Lanham Act does not authorize nationwide service of process.  *be2 LLC v. Ivanov*, 642 F.3d 555, 558 (7th Cir. 2011).  Therefore the Court's determination of personal jurisdiction is governed by Illinois law.

Illinois's long-arm statute permits the exercise of personal jurisdiction if it would be permitted under either the Illinois Constitution or the United States Constitution. *Mobile Anesthesiologists*, 623 F.3d at 443 (citing 735 Ill. Comp. Stat. Ann. 5/2-209(c)).

5

The Seventh Circuit has held that "there is no operative difference between these two constitutional limits" and therefore analyzes personal jurisdiction under Illinois law using the framework provided by federal due process requirements. *Mobile Anesthesiologists*, 623 F.3d at 443.

Under the due process clause of the Fourteenth Amendment, a defendant is subject to personal jurisdiction in a particular state only if the defendant had "certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Wash., Office of Unemployment Compensation and Placement*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted). "[E]ach defendant must have purposely established minimum contacts with the forum state such that he or she should reasonably anticipate being haled into court there." *Tamburo v. Dworkin*, 601 F.3d 693, 701 (7th Cir. 2010) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)). Personal jurisdiction can be general or specific, depending on the extent of the defendant's contacts. *Mobile Anesthesiologists*, 623 F.3d at 444. Curry contends that the Court has both general and specific jurisdiction over defendants.

**A.     General jurisdiction**

"A defendant that has 'continuous and systematic' contacts with a state is subject to general jurisdiction there in any action, even if the action is unrelated to those contacts." *Tamburo*, 601 F.3d at 702. This is a high standard—the defendant's contacts must be sufficiently pervasive to approximate physical presence in the forum state. *Id.*

Neither Revolution nor Management is subject to general jurisdiction in Illinois. A

corporation is typically subject to general jurisdiction only in the state of its incorporation and the state of its principal place of business. *Advanced Tactical*, 751 F.3d at 800. Both companies were incorporated in Nevada and operate out of California. Neither company is registered to do business in Illinois, owns property in Illinois, or has any employees in Illinois. Defs.' Rule 12(b)(2) Mot. to Dismiss for Lack of Personal Jurisdiction, Ex. B (Barry Affid.) ¶ 16. Further, Management—which was created for the sole purpose of managing Revolution—has no customers in Illinois. *Id.* ¶ 19. Revolution has sold its dietary supplements to customers in Illinois through the company's website. Defs.' Rule 12(b)(2) Mot. to Dismiss for Lack of Personal Jurisdiction, Ex. A (Joshua Affid.) ¶¶ 27, 29. But these contacts are insufficient to meet "the stringent criteria" of general jurisdiction. *Kipp v. Ski Enter. Corp. of Wis., Inc.*, 783 F.3d 695, 698 (7th Cir. 2015). Between October 2016 and June 2017, sales of Diesel Test to Illinois consumers represented only 4.3% of the company's nationwide sales of the product. These sales are not so substantial and of such a nature as to make Revolution "at home" in Illinois. Therefore the Court lacks general jurisdiction over both Management and Revolution.

The Court also lacks general jurisdiction over Barry and Joshua. For an individual defendant, general jurisdiction typically exists in "the individual's domicile." *Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014). Both Barry and Joshua are citizens and residents of California. Barry Affid. ¶ 2; Joshua Affid. ¶ 2. Curry argues the Court should not credit Barry's affidavit because in a different affidavit attached to an earlier version of defendants' motion to dismiss, Barry states that he lives in Hawaii and works in both Hawaii and California. Pl.'s Resp. to Defs.' Mot. to Dismiss, Ex. A at 7–8. But

even if the Court were to discredit Barry's most recent affidavit, Curry alleges only that Barry is a resident of Nevada and Joshua is a resident of California. Therefore he has failed to allege that either Barry or Joshua is domiciled in Illinois. Further, both defendants state in their affidavits that they have visited Illinois on only one occasion, they have not conducted business in Illinois, and they do not own any property in Illinois. Barry Affid. ¶¶ 4–6; Joshua Affid. ¶¶ 3–5. These statements are uncontradicted by any evidence offered by Curry. Thus Curry has not made out a *prima facie* case that either Barry or Joshua is essentially at home in Illinois. The Court lacks general jurisdiction over the two individual defendants.

**B.     Specific jurisdiction**

Specific personal jurisdiction is available only for a suit that arises out of the defendant's forum-related activity. *Advanced Tactical*, 751 F.3d at 800. Thus specific jurisdiction is appropriate where "(1) the defendant has purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in that state, and (2) the alleged injury arises out of defendant's forum-related activities." *Tamburo*, 601 F.3d at 702. The relationship giving rise to jurisdiction must stem from contacts that the defendant himself creates with the forum. *Advanced Tactical*, 751 F.3d at 801.

**1.     Revolution**

Curry contends that Revolution has purposefully directed its activities at Illinois based on its online sales to Illinois customers of the allegedly infringing dietary supplements. The Seventh Circuit has stated, however, that a defendant's online sales of its product to consumers in the forum state, without more, is insufficient to support a

8

finding of specific jurisdiction, because "[t]o hold otherwise would mean that a plaintiff could bring suit in literally any state where the defendant shipped at least one item." *Id.* at 801; *see also Mobile*, 623 F.3d at 446. The court has therefore indicated that the plaintiff must demonstrate that the defendant has deliberately and continuously exploited the market in the forum state through both its website and other contacts. *Mobile Anesthesiologists*, 623 F.3d at 446. Curry has failed to allege that Revolution has contacts with Illinois in addition to its online sales that would justify the exercise of jurisdiction, such as an advertising campaign directed at Illinois, *see uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 427 (7th Cir. 2010), or publication of Curry's forum-state address and direction to consumers to boycott his products, *see Tamburo*, 601 F.3d at 706. Therefore Curry has not alleged that Revolution purposefully directed its activities at Illinois.

In his response, Curry points to decisions in which this Court found specific jurisdiction over a defendant who was allegedly infringing on plaintiff's trademark. Pl.'s Resp. to Defs.' Mot. to Dismiss at 15–16. Curry argues that Revolution, by stating that it first used the "Diesel Test" mark in October 2016, has met the standard the Court has applied in previous cases because it has essentially admitted that it is the junior user of the mark and has no rights to use the mark. *Id.* at 16. Curry misapplies the Court's holding from its previous cases. In those cases, the Court indicated that specific personal jurisdiction may exist over a defendant who is allegedly infringing on a plaintiff's trademark rights where the plaintiff has made a *prima facie* case that the defendant "deliberately set out to trade on the reputation of an Illinois entity." *IPOX Schuster, LLC v. Nikko Asset Mgmt. Co.*, 191 F. Supp. 3d 790, 800 (N.D. Ill. 2016)

9

(Kennelly, J.). A defendant who "chooses to trade on the established name of an entity in the forum state and use that name for its own gain" has established a relationship with the forum state itself. *Ariel Invs., LLC v. Ariel Capital Advisors LLC*, No. 15 C 3717, slip op. at 5 (N.D. Ill. Oct. 29, 2015) (Kennelly, J.). The fact that Revolution indicates a later first-use date than Curry at this stage of the proceedings does not support Curry's allegations that the company willfully attempted to take advantage of his reputation by using his trademark. Barry and Joshua both state that, prior to this lawsuit, none of the defendants knew that Curry was selling a product called Diesel Test, knew that Curry had trademark rights in the "Diesel Test" mark, had seen any advertisements for Curry's products, or knew that Curry was located in Illinois. Joshua Affid. ¶¶ 33–36; Barry Affid. ¶¶ 21–23. Curry has not presented any evidence contradicting these contentions. *See IPOX*, 191 F. Supp. 3d at 800–01 (defendant's repeated communications with plaintiff both before and after plaintiff sent a cease-and-desist letter is evidence of an attempt to capitalize on plaintiff's trademark rights); *Ariel Invs.*, No. 15 C 3717, slip op. at 5 (finding specific personal jurisdiction where plaintiff presented evidence indicating defendant had likely come across plaintiff's trademark prior to the allegedly infringing conduct).

Further, the fact that Revolution continued to market its Diesel Test supplement after Curry notified the company of his alleged trademarks is insufficient to show that Revolution deliberately traded on his trademarks. *See Mobile Anesthesiologists*, 623 F.3d at 447. To hold otherwise would permit the plaintiff in a trademark infringement case to create personal jurisdiction by his own conduct, a premise that "finds no support in the case law." *Id*.

The Court therefore lacks specific personal jurisdiction over Revolution.

### 2. Management

Management is not responsible for any sales of the allegedly infringing products, including to consumers in Illinois. Barry Affid. ¶ 17. And Curry does not allege any independent conduct by Management that creates a relationship with Illinois. Instead, Curry argues that Revolution's Illinois contacts should be attributed to Management under the doctrine of piercing the corporate veil. The Court does not need to consider this issue. Because Revolution's contacts are insufficient to justify the exercise of specific personal jurisdiction over the company itself, they likewise would be insufficient to support specific jurisdiction over Management.

### 3. Joshua and Barry

Curry makes two primary arguments in support of exercising specific jurisdiction over Barry and Joshua. He argues first that the two men are personally responsible for Revolution's sales to Illinois consumers by virtue of their control over the company and are not protected from personal jurisdiction under Illinois's fiduciary shield doctrine. He also argues that, even if the two men are not personally responsible for the Illinois sales, the Court should attribute Revolution's contacts to the two men under the doctrine of piercing the corporate veil. But again, Revolution's sales of its Diesel Test supplement to Illinois consumers are insufficient to justify the exercise of specific personal jurisdiction, whether they were personally conducted by Barry and Joshua or attributable to them as owners of Revolution. Therefore the Court need not address the parties' arguments regarding the fiduciary shield and piercing the corporate veil.

Curry also contends that jurisdiction exists over Joshua based on the allegedly fraudulent trademark application that he filed with the PTO. This application was filed in

Virginia, an act that has no relationship with Illinois. Thus it cannot be used to justify jurisdiction in Illinois.

### 4. Summary

For these reasons, the Court lacks specific personal jurisdiction over any of the defendants.

**C.   Request for sanctions**

In his response to defendants' motion, Curry requests sanctions against defendants and their counsel for allegedly misrepresenting legal authority and presenting frivolous arguments. *See, e.g.*, Pl.'s Resp. to Defs.' Mot. to Dismiss at 13 & n.37, 15 & n.41. The Court disagrees with Curry's characterization of defendants' conduct and therefore denies his request for sanctions.

## Conclusion

For the foregoing reasons, the Court grants defendants' motion to dismiss the claims against them for lack of personal jurisdiction [dkt. no. 35] and denies Curry's request for sanctions. The status and ruling date set for August 17, 2017 is vacated. The Clerk is directed to enter judgment dismissing the case for lack of personal jurisdiction.

_____
MATTHEW F. KENNELLY
United States District Judge

Date:  August 15, 2017