# Exhibit 22



Nicholas C. Hailey
4530 Wisconsin Avenue, NW | 5th Floor
Washington, DC 20016
Office: (202) 480-2174
nick@oandzlaw.com

October 15, 2020

**VIA EMAIL**

Christopher Niro
Aronberg Goldgehn Davis & Garmisa
330 N. Wabash Ave, Suite 1700
Chicago, IL 60611
cniro@agdglaw.com

>   *Re:  Curry v. Revolution Laboratories, LLC et al. (N.D. Ill. Case No. 1:17-cv-02283)*
>   *Local Rule 37.2 Letter Regarding Defendants' Deficient Discovery Responses*

Mr. Niro:

We are writing regarding the significant deficiencies in Defendants' October 9, 2020 responses to Plaintiff's September 3, 2020 Interrogatories and Second Requests for Production of Documents to Revolution Laboratories, LLC ("Revolution"), Interrogatories and First Requests for Production of Documents to Joshua Nussbaum, and First Requests for Production of Documents to Barry Nussbaum.

Pursuant to Federal Rule of Civil Procedure 37 and N.D. Ill. Local Rule 37.2, we request a conference to address the issues outlined below immediately.  We are available to meet and confer on October 16, 19, or 20, 2020.  Please let us know your availability on those dates.

We note, as an initial matter, that Defendants' discovery responses were originally due on October 5, 2020.  Plaintiff accommodated Defendants' request for a four-day extension of that deadline until October 9, 2020, with the expectation that Defendants would use that additional time to fully investigate and respond to Plaintiff's requests.  Despite this extension, Defendants' responses are still plainly deficient, as detailed below.

Deficiencies in Defendants' Responses to Plaintiff's Interrogatories

Revolution and Joshua Nussbaum's answers to Plaintiff's interrogatories are clearly incomplete and defective in numerous respects:

- In response to Interrogatory 1 to Revolution, Revolution fails to identify the persons who played a role in the creation, development, formulation, design, manufacturing, sale, and

1

finances relating to Defendants' Diesel Test, as Plaintiff specifically requested. (Indeed, while Joshua Nussbaum's response to Interrogatory 1 notes that "various employees of Revolution . . . were directly responsible for the sales of Defendant's Diesel Test product," neither Revolution nor Joshua Nussbaum actually identify such employees.)

- Additionally, in response to Interrogatory 1, Revolution claims that "third-party entities Affiliati and Advolve were responsible for the marketing of Revolution's Diesel Test product," but fails to identify the Revolution employees who were responsible for managing, coordinating with, and communicating with these third parties—despite the fact that these third parties clearly did not operate entirely independent of Revolution.

- Further, in response to Interrogatory 1 (and Request for Production 6), Revolution claims that it "hired an independent contractor from March 2016 – July 2018 who created, developed, and designed the label design for Revolution's Diesel Test," but fails to identify that individual or provide contact information for him or her.

- In response to Interrogatory 2 to Revolution, Revolution fails to identify the persons that played a role in the decision to continue to market, advertise, and offer for sale Defendants' Diesel Test after receiving Plaintiff's cease and desist communication and learning of Plaintiff's Diesel Test trademark in November 2016, as requested.

- In response to Interrogatory 5 to Revolution, Revolution concedes that it registered and renewed the website dieseltestbooster-red.com, but otherwise fails to confirm or deny that it created, registered, directed to be created or registered, owned, controlled, or made or received payments in connection with any of the other websites covered by the Interrogatory. Revolution should also identify whether Affiliati and/or Advolve created, registered, directed to be created or registered, owned, controlled, or made or received payments in connection with these websites.

- In response to Interrogatory 8 to Revolution, Revolution cites only the "Profit & Loss" summary document previously produced at RL_000001. But that document is non-responsive on its face. For one, the document covers only the period from August 1, 2016 to October 1, 2017—despite Defendants' admitting that they sold Diesel-branded products until at least the first quarter of 2018. *See, e.g.*, Affidavit of Defendant Joshua Nussbaum (Apr. 22, 2020), ECF No. 88-1, ¶ 3. Revolution must identify its total sales and gross profits from its Diesel Test product for the full period it sold the product.

- In response to Interrogatory 9 to Revolution, Revolution cites various previously-produced spreadsheets and scattered emails, but these vague references do not fully respond to the Interrogatory. Among other reasons, Revolution fails to provide total sales and gross profits information for any of its other products apart from MRX, while the information Revolution has provided for MRX does not fully cover the relevant time period that Defendants' Diesel Test was sold. Revolution should identify total sales and gross profits derived from all other products sold to customers who bought Defendants' Diesel Test, not just MRX, for the full period for which it sold its Diesel Test product.

- Revolution's response to Interrogatory 10 is also deficient. Revolution redacts

2

information regarding the financial institution account it purportedly formerly used to send and receive money in connection with its Diesel Test and MRX products, stating that it will provide this information only after a confidentiality order is entered. On October 7, 2020, Plaintiff sent Defendants limited proposed revisions to Defendants' draft proposed confidentiality order, and Plaintiff has not heard back from Defendants regarding the order since then. We request that Defendants promptly respond so that the parties can finalize and seek entry of the order without delay. Redactions aside, it is clear that Revolution fails to include all requested information for the single account it identifies—including routing number—and that Revolution fails to include financial institution account information for Defendants' other relevant products apart from MRX.

- In response to Interrogatory 11 to Revolution, Revolution fails to confirm or deny that it made any sales to the persons identified in Exhibit B to the Interrogatory, and fails to provide any of the other requested information, apart from the inadequate response that "the document identified in Exhibit B speaks for itself."

- In response to Interrogatory 12 to Revolution, Revolution cites a small set of previously-produced emails, but that response is not sufficient to address the Interrogatory. For the limited emails produced, Revolution has redacted responsive customer names and other information. More broadly, Revolution fails to provide the specific information requested, and fails to address whether it received complaints from the individuals listed in Exhibit B. Revolution should also clarify whether it is taking the position that its production of the referenced documents is fully responsive to the Interrogatory.

- In response to Interrogatory 13 to Revolution, Revolution fails to identify any person from whom it received communications relating to Plaintiff or Plaintiff's products, other than Plaintiff himself. Instead, Revolution claims that its "[i]nvestigation continues." Revolution should identify the date by which that investigation will conclude and by which Revolution will provide a complete answer to the Interrogatory.

- In response to Interrogatory 1 to Joshua Nussbaum, Joshua Nussbaum fails to respond or provide any information regarding his roles, responsibilities, and involvement in the creation, development, formulation, design, manufacturing, and product label design of Defendants' Diesel Test.

- In response to Interrogatory 4 to Joshua Nussbaum, Joshua Nussbaum claims that he "reasonably relied on the opinion of counsel for Revolution Laboratories concerning the alleged infringement of any mark owned by Curry." Plaintiff hereby requests that Joshua Nussbaum produce, by no later than November 2, 2020, all documents evidencing the opinions of counsel that address infringement-related issues bearing on Plaintiff's trademarks, as well as all communications with counsel related to the subject matter of these opinions, all documents and information provided to counsel in connection with these opinions, any internal evaluations of the opinions received from counsel, and any editing or feedback provided by the client to counsel relating to the opinions.[1] In

---

[1] These documents are responsive to a number of Plaintiff's pending Requests for Production, including Requests 2 and 9 to Joshua Nussbaum and Requests 7 and 17 to Revolution.

3

asserting an advice of counsel defense, Joshua Nussbaum has waived privilege with respect to the subject matter of the advice he purportedly relied upon.

- Joshua Nussbaum fails to respond to Interrogatory 11. He should identify the specific dollar amount of income, dividends, and any other financial compensation he has received in connection with his ownership of and employment by Revolution—information that is plainly relevant to damages in this case.

<u>Deficiencies in Defendants' Responses to Plaintiff's Requests for Production</u>

With respect to Plaintiff's Requests for Production of Documents to Revolution, Joshua Nussbaum, and Barry Nussbaum, we note at the outset that Defendants have failed to produce any documents in response to those requests. Instead, Defendants contend that they will produce responsive documents "within a reasonable time and no later than November 2, 2020." Plaintiff disagrees that postponing production of a single document in response to these straightforward requests until November 2, 2020—a full two months after Plaintiff served the requests—is reasonable, particularly given the significant and continued discovery delays in this case to date.

Defendants' responses to these requests are also deficient in a number of respects:

- In response to Request for Production 6 to Revolution, Revolution claims that it "hired an independent contractor from March 2016 – July 2018 whom created, developed, and designed the label design for Revolution's Diesel Test," and that "third-party entity Hash Tag Fulfillment manufactured the labels for Revolution's Diesel Test." Revolution should produce all responsive documents and communications relating to this unidentified independent contractor and Hash Tag Fulfillment. If the independent contractor was given a Revolution email account, all responsive emails and documents from that account should be produced.

- Revolution objects to Request for Production 7 to Revolution, and it apparently does not intend to produce any documents in response to the Request. Those objections are meritless. Documents relating to the sale of Revolution's Diesel Test are clearly directly relevant to both liability and damages in this case. Accordingly, Revolution should confirm whether it will produce all documents responsive to this Request, or whether it intends to withhold documents based on its objections.

- In response to Request for Production 8 to Revolution, Revolution claims that no documents relating to advertising or marketing for Defendants' Diesel Test are in Revolution's possession, custody, or control. Plaintiff finds that very difficult to believe. Notwithstanding Revolution's claim to have engaged third parties Affiliati and Advolve, those third parties clearly did not operate entirely independent of Revolution. Revolution should produce all responsive communications with, or referencing, these third parties; responsive documents or information sent to, received from, created by, or created for these third parties; and invoices and payment records for these third parties' services.

- In response to Request for Production 12 to Revolution, Revolution cites only the "Profit & Loss" summary document previously produced at RL_000001. For the same reasons as noted above, this document fails to fully respond to Plaintiff's request. Revolution

4

must produce documents sufficient to identify its total sales and gross profits from its Diesel Test product for the full period for which it sold the product.

- In response to Request for Production 13 to Revolution, Revolution refers to a set of previously-produced spreadsheets with certain information regarding MRX. For the same reasons as noted above, those spreadsheets do not fully respond to Plaintiff's request. Revolution should produce documents sufficient to identify its total sales and gross profits derived from all other products sold to customers who bought Defendants' Diesel Test, not just MRX, for the full period for which it sold the Diesel Test product.

- In response to Request for Production 15 to Revolution, Revolution refers to the same previously-produced documents it identified in response to Interrogatory 12 to Revolution. For the same reason as noted above in connection with that Interrogatory, these documents do not fully respond to Plaintiff's Request.

- Revolution objects to Request for Production 18 to Revolution based, in part, on the contention that the Request seeks documents that are publicly available on the USPTO website, and Joshua Nussbaum and Barry Nussbaum object to Requests for Production 10 and 9, respectively, on the same grounds. Defendants should confirm whether or not any responsive documents exist that are not publicly available—including, for example, Defendant emails regarding the trademark applications and other documents relating to the applications that were not submitted to the USPTO—and produce such documents.

- In their answers to Requests for Production 1 to Joshua Nussbaum and Barry Nussbaum, the Nussbaums fail to identify whether they were involved with the formulation of Defendants' Diesel Test or whether they will be producing responsive documents regarding that subject, as requested.

- In response to Request for Production 2 to Joshua Nussbaum, Joshua Nussbaum claims that "[n]o responsive documents are in Joshua's individual possession, custody, and control." But Defendants have already produced emails from Joshua Nussbaum's personal Gmail account (jnussbaum86@gmail.com) relating to the sale of Defendants' Diesel Test. Joshua Nussbaum should confirm that he has conducted a search of and produced all responsive documents from that personal Gmail account, any other personal email accounts, and any other documents in his possession, custody, or control.

- In their answers to Requests for Production 5 to Joshua Nussbaum and Barry Nussbaum, the Nussbaums fail to indicate whether they received payments in connection with the websites listed in Exhibit A, fail to state whether responsive documents exist reflecting such payments, and fail to indicate whether such documents will be produced.

- In Joshua Nussbaum's answer to Request for Production 8, and in Barry Nussbaum's answer to Request for Production 7, the Nussbaums claim that no responsive documents exist. Those answers are incomplete. For example, the Nussbaums have been individually named as defendants in numerous lawsuits for which certain information is publicly available. The Nussbaums should explain why they did not identify these lawsuits, and produce any documents responsive to these Requests.

5

- Joshua Nussbaum and Barry Nussbaum object to Requests for Production 13 and 12, respectively, on the grounds that the documents requested are not relevant. To the contrary, Joshua Nussbaum and Barry Nussbaum's total assets, debts, and net worth are directly relevant to damages in this case, including punitive damages. Indeed, you specifically state that you will produce information regarding Revolution's total assets, debts, and net worth—apparently conceding that this information is relevant to Plaintiff's claims—but decline to provide the same information for the other named Defendants. There is no basis for distinguishing among the Defendants in this manner.

- Barry Nussbaum objects to Request for Production 6 on the grounds that "it seeks documents not within Joshua's individual possession, custody, or control," and he responds to Request for Production 8 that "no responsive documents are in Joshua's individual possession, custody, and control." Please confirm that these references to "Joshua" are typos, and that Barry Nussbaum intended to refer to himself.

- Additionally, we note that Revolution, Joshua Nussbaum, and Barry Nussbaum each "object[] to Curry's relevant time frame as the Requests are through the present when Revolution Laboratories, LLC ceased the sale of its Diesel Test products on its website www.revlabs.com in October 2017 and Revolution Laboratories, LLC's Diesel Test product was removed from Amazon on February 13, 2017 and was not reinstated thereafter." That statement ignores that Defendants have previously admitted that they continued to sell Diesel-branded products until at least the first quarter of 2018. *See, e.g.*, Affidavit of Defendant Joshua Nussbaum (Apr. 22, 2020), ECF No. 88-1, ¶ 3.

- Revolution, Joshua Nussbaum, and Barry Nussbaum also each state that they "continue[] to search for responsible [sic] documents in [their] individual possession, custody, and control." Revolution, Joshua Nussbaum, and Barry Nussbaum should each specify the date by which those searches will be complete and the date by which they will provide full and complete responses to these requests for documents based on those searches.

- Finally, we note that various responses by Defendants attempt to draw an apparent distinction between Joshua Nussbaum's role as President of Revolution and his "individual" capacity, and between Barry Nussbaum's role as Chief Executive Officer of Revolution and his "individual" capacity. Plaintiff will not address the merits of Defendants' claimed distinctions here, apart from making clear that Plaintiff strongly disagrees that there is any basis for those claims. For purposes of these discovery requests, Defendants should confirm that, for any responsive documents or communications that Joshua Nussbaum and Barry Nussbaum contend are not within their "individual possession, custody, and control," such responsive documents and communications will be produced by Revolution, to the extent that they are within Revolution's possession, custody, or control. Defendants should also confirm that all responsive documents and communications within Joshua Nussbaum and Barry Nussbaum's possession, custody, or control in their claimed capacities as President and Chief Executive Officer of Revolution, respectively, will be produced by Revolution.

Accordingly, Defendants should supplement their October 9, 2020 responses to Plaintiff's written discovery to cure the deficiencies outlined above promptly, and by no later

than October 23, 2020.  Likewise, Plaintiff expects that Defendants' forthcoming document productions in response to these requests will fully address the numerous issues raised above.

   Nothing herein constitutes any limitation or waiver as to any of Plaintiff's rights, claims, and remedies, each of which such right, claim, and remedy is expressly reserved.

               Sincerely,

               Nicholas C. Hailey


cc: Kristina Diesner
   Amy Gibson
   Timothy Novel
   Matt Oppenheim
   Scott Zebrak