```
 1                IN THE UNITED STATES DISTRICT COURT
                     NORTHERN DISTRICT OF ILLINOIS
 2                         EASTERN DIVISION

 3

 4   CHARLES CURRY                      )   Docket No. 17 C 2283
     Doing business as                  )
 5   Get Diesel Nutrition,              )
                                        )
 6                     Plaintiff,       )
                                        )   Chicago, Illinois
 7              vs.                     )   April 15, 2022
                                        )   9:15 o'clock a.m.
 8   REVOLUTION LABORATORIES, LLC, et   )
     al,                                )
 9                                      )
                       Defendants.      )
10

11             TRANSCRIPT OF PROCEEDINGS - STATUS
            BEFORE THE HONORABLE MATTHEW F. KENNELLY
12

13   APPEARANCES:

14   For the Plaintiff:      OPPENHEIM + ZEBRAK LLP
                             BY:  MR. MATTHEW JAN OPPENHEIM
15                           5225 Wisconsin Ave, NW, Suite 503
                             Washington, DC 20015
16                           202-450-3958

17

18   For the Defendant:      ARONBERG GOLDGEHN DAVIS & GARMISA
                             BY:  MR. R. TIMOTHY NOVEL
19                           330 N. Wabash Ave, Suite 1700
                             Chicago, IL 60611
20                           312-755-3161

21

22

23   Court Reporter:         MS. CAROLYN R. COX, CSR, RPR, CRR, FCRR
                             Official Court Reporter
24                           219 S. Dearborn Street, Suite 2102
                             Chicago, Illinois  60604
25                           (312) 435-5639
```

1     (The following proceedings were had telephonically:)
2          THE CLERK:  Case 17 C 2283, Curry v. Revolution
3     Laboratories.
4          THE COURT:  Can plaintiff's counsel please give your
5     name for the record.
6          MR. OPPENHEIM:  Good morning, your Honor.  Matthew
7     Oppenheim on behalf of plaintiff.
8          THE COURT:  Defendants' counsel.
9          MR. NOVEL:  Judge, Tim Novel, N-o-v-e-l, on behalf of
10    defendants.
11         THE COURT:  Okay.  I have some questions, first for
12    Mr. Oppenheim.
13         When you get up in front of the jury at trial and you
14    ask them to award damages, what's the number going to be?
15         MR. OPPENHEIM:  I think for the different claims, it
16    may be different amounts, but without, you know, prejudice,
17    obviously, to seeing what information we get.
18         I commonly, your Honor, when statutory damages are
19    involved or punitive damages, I ask the jury to make the
20    decision about what to award, I tell them the range, I may
21    suggest a particular part of the range, but in the case of
22    statutory damages, it's unlikely that I would point to a
23    specific number.
24         THE COURT:  Fair enough.
25         What's the -- remind me what the range is for the

1 statutory damages in situations like this?

2 MR. OPPENHEIM: It's such a simple question but
3 slightly harder to answer because I think there are different
4 claims involved and different statutory damages ranges for
5 each of the claims.

6 I don't have the range for the ACPA claims at the
7 moment. That's a little bit lower.

8 On the traditional Lanham Act claim, I believe it
9 goes up to 2 million, is the cap, and I don't remember -- I
10 apologize, I don't remember the floor.

11 THE COURT: Okay. And am I understanding -- I
12 probably already know this, and so if I'm telling you
13 something that I'm supposed to already know, hopefully, you'll
14 forgive me.

15 But there's not -- you're going to be asking for
16 statutory as opposed to trying to prove up actual losses; am I
17 right?

18 MR. OPPENHEIM: I think on some of the claims, we may
19 be able -- we may be asking for lost profits, yes, or gained
20 profits, right. Either one.

21 So, yes, actual damages, but on some of --

22 THE COURT: So what -- so what are those numbers?

23 MR. OPPENHEIM: I don't have them in front of me,
24 your Honor, but they could be fairly significant based off of
25 our expert's review of their financials.

1  THE COURT: All right. So I've asked four questions,
2 and I don't think I've gotten an answer yet.
3  MR. OPPENHEIM: So I prepared significantly for this
4 hearing, your Honor, and I -- those are not things I prepared
5 on because I thought we had already past those. As you know,
6 Mr. Hailey has handled most of these hearings. He is out on a
7 family vacation this week, so I'm handling --
8  THE COURT: Just assume I have a really good reason
9 that is related to the stuff that I have to deal with today
10 for asking these questions.
11  MR. OPPENHEIM: I understand that, your Honor.
12  THE COURT: Is the number going to be a seven-figure
13 number? Is it going to be a six-figure number? Is it going
14 to be an eight-figure number? Is it going to be a 15-figure
15 number? Just give me some --
16  MR. OPPENHEIM: I think we're -- I think likely an
17 eight-figure -- low eight-figure number is my guess --
18  THE COURT: Eight figures to the left of the decimal
19 point, right?
20  MR. OPPENHEIM: Yes.
21  THE COURT: All right. Fine.
22  All right. Now, that's my first question.
23  My second question is is that in the discovery that
24 is being done now -- which is, if I'm understanding it
25 correctly, it's punitive damages-related discovery that I

1 deferred, right?

2 MR. OPPENHEIM: Yes.

3 THE COURT: And so the number that you are looking
4 for, at least as I've always understood this, is a net
5 worth -- you're trying to figure out a net worth figure,
6 right?

7 MR. OPPENHEIM: Well, there were two things that you
8 focused on at the last hearing which we had asked for, which
9 was, one, their -- the access of -- or assets, liabilities,
10 which is the net worth, your Honor, of the two individual
11 defendants, as well as the moneys paid out from Rev Labs,
12 right, to the two defendants.

13 And you might remember at the last hearing, you asked
14 Mr. Niro about that. Mr. Niro said they hadn't been paid a
15 cent. And then we went through and showed -- pointed to the
16 deposition, which said they actually had been paid, but we
17 didn't have complete information on that. So you also
18 compelled that they produce information on that.

19 THE COURT: So on the net worth thing, is what you're
20 telling me in the motion to compel, I don't know if it's the
21 first or the second motion to compel, is what you're telling
22 me that you don't have enough information right now in order
23 to be able to tell me to come up with a net worth figure?

24 MR. OPPENHEIM: Not even remotely, no.

25 THE COURT: It's a yes or it's a no. Okay.

```
 1              MR. OPPENHEIM:  No.
 2              THE COURT:  Fine.  Okay.  All right.
 3              Now I'm going to flip over to the defense side here.
 4              MR. NOVEL:  Sure.
 5              THE COURT:  And do you think that they have enough
 6   information to come up with net worth figures for the two
 7   individual defendants based on what's given to me?  And just
 8   understand that if you say yes, then there's going to be
 9   follow-up questions.
10              MR. NOVEL:  Sure.
11              I think we've complied with the Court's order.  The
12   issue --
13              THE COURT:  That's not -- stop.  Stop, stop.
14              MR. NOVEL:  Okay.  Sure.
15              THE COURT:  Do you have my question in mind?  Because
16   you're not answering it.
17              MR. NOVEL:  Do I --
18              THE COURT:  Do they have information from which they
19   can determine a net worth figure for the two individual
20   defendants?
21              MR. NOVEL:  Yes.
22              THE COURT:  That's the first -- yes.  Okay.
23              So now here's the follow-up.  What's the -- what
24   would they -- how would they go about doing that?  Do they
25   have bank account records?  How do they know what -- how do
```

1 they know what the people have in the bank? That's the --
2     MR. NOVEL: Yes, they would use tax returns. They
3 would use bank account records that we've produced, Judge.
4 We've produced several thousand pages of financial records.
5     I think we're -- the misunderstanding is is -- go
6 ahead.
7     THE COURT: Finish the sentence. Finish the
8 sentence.
9     MR. NOVEL: I think the misunderstanding is that
10 there is a family trust that is not a party to this lawsuit,
11 that is not located within the United States. It does have
12 assets that my clients have limited, if any, access to.
13     And so I think the crux of the objections that I'm
14 reading as I go through the responses here is that they want
15 information about that trust. My client has limited ability,
16 if any, to get information about that trust.
17     It's a irrevocable trust. It's offshore. I am not
18 entirely even sure who the beneficiaries are or how it was set
19 up. It's certainly not a party defendant in this case.
20     THE COURT: Are either of your clients beneficiaries
21 of the trust?
22     MR. NOVEL: I'm unaware. One of them may be --
23     THE COURT: Well, whoa, let's stop. So the answer
24 is, I don't know?
25     MR. NOVEL: Yes.

1            THE COURT:  If you're the beneficiary of a trust,
2   then that's an asset.  It might be a contingent asset of some
3   sort, it might be an asset that you don't have access to now,
4   but that's an asset.
5            And so if the answer is there's an -- you told me
6   there's some sort of an offshore trust, or maybe more than one
7   trust, there's an offshore trust --
8            MR. NOVEL:  Correct.
9            THE COURT:  If there is an offshore trust of which
10  your client is the beneficiary, it's an asset.  When I ask you
11  are they the beneficiary of a trust, you say, I don't know.
12           Have you asked them?
13           MR. NOVEL:  Yes, I have.
14           THE COURT:  What did they say?
15           MR. NOVEL:  If that's the relevant question, I can
16  certainly get back to you.
17           Barry --
18           THE COURT:  No, but if you've asked him, you got to
19  remember -- you're not going to tell me you don't know the
20  answer, you don't remember the answer.  You're not going to
21  tell me that, right?
22           MR. NOVEL:  I can tell you that I -- Barry, the
23  client, Barry Nussbaum, is not a beneficiary as far as I can
24  recall from his answer.  Joshua may be.  And I can certainly
25  clarify that for the Court.

1  THE COURT: Okay. So let me go back. You said tax
2  returns. So one of the things that's said in the reply brief
3  here is that there are multiple years of tax returns that are
4  missing.
5  Am I understanding that right on the plaintiff's
6  side?
7  MR. OPPENHEIM: Yes, there are tax returns --
8  THE COURT: Don't -- don't -- don't -- don't -- stop,
9  stop, stop, stop.
10  MR. OPPENHEIM: Yep, got it.
11  THE COURT: Guys, pretend you're on cross because you
12  are, okay? So these are yes-and-no questions.
13  Okay. Now back to defense counsel. He's saying he's
14  missing tax returns. You told me you had -- you told me --
15  when I asked how do you calculate the net worth information,
16  you said -- the first thing you said, or maybe the second
17  thing, was tax returns. He says they're missing several years
18  of tax returns.
19  What about that?
20  MR. NOVEL: Again, this is thousands of pages of
21  production, Judge, but I believe we produced 2019 -- I'm just
22  looking through it, Judge.
23  We have produced tax returns. And the conversation I
24  had with plaintiff's counsel was, you know, if you need
25  additional returns, we would need additional time to get those

1   to you.  And I thought we had stipulated that that was going
2   to be the case.
3           THE COURT:  Somebody remind me what our trial date
4   is.  It's September -- right after Labor Day, right?
5           MR. OPPENHEIM:  That's correct, your Honor.
6           THE COURT:  Okay.  So, look, so it sounds like to me
7   that what I'm getting from the plaintiff's side is, Judge,
8   this is like pulling teeth, and it's not like pulling teeth,
9   it's like pulling the teeth when the patient won't even open
10  his mouth.
11          On the defense side, it's like, I don't understand,
12  we're doing the best we can.
13          So to quote the sheriff, or I think it was the
14  sheriff, from Cool Hand Luke, which one my late former
15  colleagues is fond of quoting:  What we have here is a failure
16  to communicate.
17          So I know ideally that you would have all the
18  documents at hand before taking the deposition.  Well, in this
19  case, the perfect is going to be the enemy of getting anything
20  done.
21          So here is what I'm going to recommend, and maybe
22  more than recommend, and maybe I'm going to order it.
23          So first of all, remind me where the Nussbaums live,
24  what state or states?
25          MR. NOVEL:  So Barry lives in Hawaii, and his son

1  Joshua lives in California.

2      THE COURT: Okay. And how were you figuring on
3  taking these depositions? By video, I'm assuming?

4      MR. NOVEL: Yes, remotely.

5      MR. OPPENHEIM: Yes, your Honor. In fact, we already
6  appeared for them on video, and they never showed up.

7      THE COURT: No, no, you don't have to -- don't. You
8  guys need to answer questions that I ask. Don't answer
9  questions that I haven't asked, okay? Do me a favor.

10      So, look, here's what I think you're going to need to
11  do. I think you go ahead and take the deposition based on
12  what you have. You're going to get a better sense of what you
13  don't have.

14      And here's what I'm going to say. If the defense --
15  if plaintiff can make a legitimate case to me after taking the
16  deposition that they're going to have to reconvene the
17  deposition because of all of the following stuff that didn't
18  get produced that we really need -- that they can show me that
19  they need in order to come up with the info that they have to
20  have in order to try the case, then two things are going to
21  happen. Well, maybe it's three.

22      Number one, the depositions are going to be resumed.

23      Number two, they're going to be resumed here. And by
24  "here," I mean in my jury room so I can go next door to the
25  jury room and order people to answer if I don't think they're

1  being responsive.  It's going to be like President Clinton in
2  the Paula Jones case when he had his deposition taken in front
3  of Judge Wright.
4        Number three, the defendants are going to be paying
5  for all of it.  They're going to be paying for the plaintiff's
6  fees, they're going to be paying for the court reporter,
7  they're going to be paying for the original of the transcript,
8  and everything.
9        So that's kind of a nice way of saying -- and I'm
10 going to set a deadline by which the first deposition is going
11 to get done; hopefully, the last deposition -- that's kind of
12 a nice way of saying somebody had better sit down with the
13 Nussbaums and get in the plaintiff's hands everything that I
14 ordered to be turned over so that you are not in a position
15 where this deposition is going to have to happen again, in a
16 situation where they're paying for it, and Mr. Nussbaum, the
17 elder, is going to be taking a flight to -- from Hawaii to
18 Chicago, and Mr. Nussbaum, the younger, is going to be taking
19 a flight from California to Chicago, and sitting in a nice
20 little jury room until they're done.
21       The deadline for taking the depositions of the
22 Nussbaums consistent with this order is going to be the end of
23 the first week of April, which is -- or the first week of May,
24 which is the 6th of May.  That means floor it, floor it, in
25 terms of having a conversation with your client and getting

1  stuff turned over.
2       I'm not going to adjudicate right now exactly who
3  gets what.  The risk is all going to be on you guys.  I have
4  made orders about this, the orders mean what they say, and I'm
5  going to decide whether there wasn't something turned over
6  when I have to decide whether it's significant or not, which
7  is going to be in the motion to compel.  But I'm crossing my
8  fingers that I won't end up having to get from the plaintiff
9  after the depositions, but --
10       Everybody understand all that?
11       MR. NOVEL:  We do.
12       THE COURT:  That was the defense who said "we do."
13       On the plaintiff's side, what did you want to ask me?
14       MR. OPPENHEIM:  May I get two clarifications, your
15  Honor?
16       One is --
17       THE COURT:  Sure.
18       MR. OPPENHEIM:  -- in order to avoid having documents
19  produced the night before the deposition, can we set a date by
20  which they have to provide any additional documentation?
21       THE COURT:  Seven days before, 29th of April.  That's
22  two weeks from today.
23       MR. OPPENHEIM:  Thank you, your Honor.
24       THE COURT:  So additional -- any additional documents
25  pursuant to the Court's earlier orders are to be produced by

1  the defendants by April 29th, and the depositions of the
2  Nussbaums are to be taken by the 6th of May.
3      MR. OPPENHEIM: And, your Honor, original -- I'm
4  sorry.
5      THE COURT: Yeah.
6      MR. OPPENHEIM: Second question. Originally, you had
7  ordered that each deposition was limited to one hour.
8      Could we extend that to two hours each just to make
9  sure we --
10      THE COURT: Ninety minutes.
11      MR. OPPENHEIM: Very well.
12      THE COURT: Ninety minutes. Ninety minutes per
13  side -- per person.
14      Okay. And then I want a joint status report on
15  the 13th of May. And, you know, if you don't agree to
16  everything, which I know you won't, you will probably agree
17  only to what each other's names are, and you may have to check
18  the driver's licenses even on that, joint status report by
19  the 13th of May, and then we're going to do a phone call on
20  the 18th of May at 9:15 in the morning.
21      MR. OPPENHEIM: Very well. And, your Honor --
22      THE COURT: And the motions to compel are both just
23  sort of entered and continued until then.
24      MR. NOVEL: Sure.
25      THE COURT: What else?

1  MR. NOVEL: I --
2  MR. OPPENHEIM: One clarification -- sorry.
3  MR. NOVEL: Go ahead.
4  THE COURT: Who's talking?
5  MR. OPPENHEIM: One last clarification, if I could,
6  your Honor. This is Matt Oppenheim for the plaintiffs. You
7  had focused on the tax returns in your questions --
8  THE COURT: I just pulled -- I just pulled something
9  out of the mix because that was something that defense counsel
10 said in his answer, we've turned over tax returns. And I
11 pointed out that your motion -- your motion said that you
12 hadn't gotten all of them.
13 And so I didn't mean by that to exclude anything
14 else, if that's your point.
15 MR. OPPENHEIM: Very well. Thank you, your Honor.
16 THE COURT: Thanks.
17 (Which were all the proceedings had in the above-entitled
18 cause on the day and date aforesaid.)
19 I certify that the foregoing is a correct transcript from
   the record of proceedings in the above-entitled matter.
20
21 Carolyn R. Cox                                    Date
   Official Court Reporter
22 Northern District of Illinois
   /s/Carolyn R. Cox, CSR, RPR, CRR, FCRR
23
24
25