**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION**

| | | |
|---|---|---|
| CHARLES CURRY, d/b/a GET DIESEL NUTRITION | ) ) | Case No. 1:17-cv-02283 |
| | ) | |
| Plaintiff, | ) | Honorable Matthew F. Kennelly |
| | ) | |
| v. | ) | Magistrate Judge Kim |
| | ) | |
| REVOLUTION LABORATORIES, LLC, | ) | |
| REV LABS MANAGEMENT, INC., JOSHUA | ) | |
| NUSSBAUM, and BARRY NUSSBAUM | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' OMNIBUS RESPONSE IN OPPOSITION
TO PLAINTIFF'S OMNIBUS MOTIONS *IN LIMINE***

Defendants, by and through their attorneys, for their Omnibus Responses in Opposition to

Plaintiff's Omnibus *Motions in Limine*, state as follows:

**I. Defendants Should Not Be Precluded From Offering *Any* Evidence, Testimony Or Argument That Revolution Did Not Infringe On Plaintiff's Diesel Test Mark Or Violate The ACPA**

Plaintiff's Motion *in Limine* to Preclude Defendants' Testimony Regarding Trademark

Infringement and ACPA Violations is unnecessary, improper and should be denied. The sole basis

for this motion is a stipulation that is already a part of this Court's record and available for use as

impeachment in the unlikely event it is necessary. Plaintiff now seeks to convert the stipulation

into a "gag order" that precludes all testimony related to facts and circumstances surrounding

alleged trademark infringement and ACPA violations.

A total prohibition on evidence, testimony or argument that Revolution did not infringe on

Plaintiff's Diesel test mark or violate the ACPA is far broader than the stipulation and would be

1

highly prejudicial to Barry Nussbaum and Joshua Nussbaum by preventing them from presenting testimony and evidence directly related to and necessary in establishing their defenses.

## II. Defendants Are Entitled to Offer Evidence and Testimony Regarding Advice of Counsel

Plaintiff is not entitled to bar Defendants from raising advice of counsel. The advice-of-counsel defense requires a defendant to establish the following elements: (1) before taking action, (2) he in good faith sought the advice of an attorney whom he considered competent, (3) for the purpose of securing advice on the lawfulness of his possible future conduct, (4) and made a full and accurate report to his attorney of all material facts which the defendant knew, (5) and acted strictly in accordance with the advice of his attorney who had been given a full report. *United States v. Al-Shahin*, 474 F.3d 941, 947 (7th Cir. 2007).

Defendants have testified regarding: 1) the identity of the attorney upon whose advice Defendants relied (Mr. Santos); 2) the nature of the advice sought; 3) Defendants' understanding of the work performed by their counsel; 4) the advice Defendants received from Mr. Santos, and 5) the extent to which Defendants relied on that advice, including actions taken and not taken in reliance on that advice.

Plaintiff has been in possession of this information since Defendants' depositions and opted not to depose Mr. Santos. Had Plaintiff elected to do so, rather than grilling the non-attorney Defendants on the precise legal bases and nuance of the advice Defendants received and relied upon from Mr. Santos, Plaintiff could have adduced with more specificity and competency the advice upon which Defendants relied. Plaintiff had every opportunity to issue an appropriate subpoena and chose not to.

Defendants testified that the advice received from their counsel was oral in nature and were able to relate the advice competently in their depositions. Further, Defendants testimony that

Defendants relied on the advice of their counsel upon receiving it goes directly to the element of underlined willfulness as it relates to Defendants' conduct.  Plaintiff will have the opportunity to cross examine Defendants on the advice of counsel and raise the alleged lack of documentation, but that alleged fact goes to the weight of the Defendants' testimony, not admissibility.  Any out of court statement that Defendants were to offer in regard to the advice of counsel is not inadmissible hearsay because it is being offered for the effect it had on the Defendants, not the truth of the matter asserted.  *Torry v. City of Chicago*, 932 F.3d 579, 585 (7th Cir. 2019) ("Statements introduced to show their effect on the listener, rather than the truth of the matter they assert, are not hearsay")

Plaintiff is attempting to establish that Defendants acted in bad faith and that their conduct in connection with the alleged trademark violations was willful.  The fact that Defendants were relying on the advice of their counsel, specifically as it relates to this issue, directly rebuts Plaintiff's allegation of willfulness.  Defendants acted pursuant to an understanding from their attorney that their conduct was lawful, proper and did not violate any of Plaintiff's alleged trademark rights.

## III.    Defendants' Profit And Loss Statements Are Admissible

Plaintiff compresses a host of complaints regarding Defendants profit and loss ("P&L") financial statements into a variety of single spaced footnotes and bullet points making the entirety of the argument disjoined and hard to follow.  But at its core, Plaintiff's complaint is just a rehash of an issue this Court addressed on summary judgment.  There, Plaintiff's insisted that the P&L documents and Mr. Turner's testimony be disregarded.  This Court rejected those arguments.  It held "[a] reasonable jury could also conclude…that Revolution did not profit from selling the infringing product. Put simply, a jury could believe the accuracy of the profit and loss statement,

and if so it could find in Revolution's favor." Dkt. 195, p. 10. The Court also held that—even if it disregarded Turner's declaration—Mr. Turner's deposition testimony supported the use of Quickbooks and Revolution's Diesel Test product data which was all within Turner's personal knowledge and properly considered evidence in this matter. Dkt. 195, p. 10 citing Dkt. 177-14 and *Palucki v. Sears, Roebuck & Co.*, 879 F.2d 1568, 1572 (7th Cir. 1989).

In the present motion, Plaintiff contends that Revolution's P&L should be excluded as hearsay. That is wrong. In addition to the fact that Mr. Turner has personal knowledge of and can independently lay foundation for the P&L, Mr. Turner will also lay a foundation for the admission of the P&L documents as a business record pursuant to Federal Rule of Evidence 803(6). *See Wheeler v. Sims*, 951 F.2d 796, 802 (documents are admissible as business records if: (1) the acts recorded therein were reported by a person with knowledge; (2) it was the regular practice of the person as a regularly conducted business activity[5] to record such acts; (3) the acts were recorded at or near the time of their occurrence; and (4) the documents are properly authenticated unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.) The P&L documents are merely copies of the data stored in the normal course of business, which data was maintained by Mr. Turner (the producer of the P&L) as part of his regular employment. Indeed, Mr. Turner provided a sworn affidavit in this matter, that he personally recorded sales transactions in order to match gross sales and expenses to each and every sale that hit Revolution Laboratories, LLC's bank account. **Exhibit A**, Dkt. 170-9, ¶4. Mr. Turner confirmed that it was his regular responsibility for entering transactions, that he ensured the designations were proper, and that he always checked the work when entered. *Id.* He provided similar testimony about accuracy and his checking data during his personal deposition. **Exhibit B**, excerpts from Turner deposition transcript, pp. 224-225. Mr. Turner further explained

in his affidavit exactly how he would upload data into Quickbooks. *Id.* ¶5. Mr. Turner specifically recited in his affidavit how the data that was pertinent to this case—i.e. Diesel Test data—was downloaded from Quickbooks by him into the P&L format. Ex. A, Dkt. 170-9, ¶5-11. Overall, Mr. Turner's declaration explains in detail exactly how the Quickbooks P&L record was completed.

Contrary to Plaintiff's complaint that underlying information was not produced, Mr. Turner testified that Revolution produced its records for sales data of Diesel test, including website sales, Amazon sales and Limelight sales records. **Exhibit C**, excerpts from 30(b)(6) deposition transcript, p. 52, 55, 59. The Amazon, Ebay, Shopify, and Limelight sales data are all even included on Plaintiff's pretrial exhibit list. See Dkt. 280, PL Ex. 149-153.

All of Plaintiff's arguments regarding unreliability and prejudice are merely issues to raise on cross examination. It could have address those same issues with Revolution's designated witness during his 30(b)(6) deposition, but Plaintiff elected not to. Defendants are permitted to present their witness to discuss the P&L statements, discuss how the data was input and stored, and to discuss the underlying data that was also produced in the litigation (as noted above); the jury is entitled to believe or disbelieve that witness as they see fit. Plaintiff is free to cross examine the witness about the documents and in so doing attempt to undermine the reliability of the documents and the witnesses testimony.

Plaintiff's complaint about the P&L being "created for litigation" is a fallacy. The actual, physical printout of the P&L was made in response to a discovery request. Just as an email is printed from Outlook (a database of emails), the P&L was printed from Quickbooks (a database of Revolution's financials). In both cases, the P&L and email data only exist in electronic format. Simply extracting that data in a printout for litigation does not make either "specifically prepared"

5

for litigation.  Plaintiff's contorted interpretation of document production undermines the entirety of the discovery process.

Furthermore, the P&L documents are clearly relevant.  Plaintiff has confirmed that its damages theory is based not on its own lost profits, but on disgorgement of Defendant's profits. The P&L documents go directly to that issue.  Plaintiff's final complaint of undue prejudice is not credible.  Courts have considered evidence "unduly prejudicial" where it is used to play on juror's sympathy or evoke a "sense of horror."  *Valdez v. Lowry*, No. 18 CV 5434, 2021 WL 5769533, at *7, n. 11 (N.D. Ill. Dec. 5, 2021).  A profit and loss statement is no such evidence.

## IV.  Trent Turner Should Not Be Barred From Testifying

Plaintiff seeks an order from this Court precluding Mr. Trent Turner from providing testimony regarding Revolution's P&L statements.  There is no basis for such a limitation.  Once again, as discussed with respect to the *motion in limine* on P&L statements, the Court addressed this very issue on Summary Judgement and found Mr. Turner's knowledge sufficient to provide evidence that a jury may consider.  See Dkt. 195, p. 10.

The entirety of Plaintiff's motion is premised on snippets of testimony provide by Mr. Turner during his personal deposition that occurred on January 26, 2021.  But the cherry-picked testimony cited by Plaintiff does not come close to telling the whole story, nor does it account for Mr. Turner's designation under Rule 30(b)(6) testify on financial matters on February 18, 2021.

Mr. Turner testified that he was responsible for maintaining QuickBooks for Revolution and responsible for the financial records for this case. Ex. B, pp. 20-22.  Mr. Turner testified that he enters information into Quickbooks and that QuickBooks is the accounting software used to keep company records in the ordinary course of business.  *Id*. at 163-167.  Mr. Turner testified as to the various sources of data that were included in the P&L statements.  *Id*. 176-179.  However,

when asked specifically to recall during his January 26, 2021 deposition how, in 2016 data was specifically entered into Quickbooks, understandably he could not recall. *Id*. at 180-189. Nevertheless, Mr. Turner testified that he was sure he knew that the data was entered back in 2016, though he could not presently recall, and that he was confident in the accuracy of the information. *Id*. at 181. Time and time again, what Plaintiffs now mischaracterize as Mr. Turner "not knowing" answers, were simply instances in which Mr. Turner did not presently recall the answer to a specific question. This is the entire purpose of the business records exception to hearsay. Mr. Turner is not required to memorize and remember each and every entry made into the company's accounting software, but can absolutely testify as required under the exception.

As to the accuracy of the reports, Mr. Turner reiterated that the reports were run for Diesel Test, the underlying data was checked at the time of entry, and therefore the reports accurately reflected Diesel Test. *Id*. at 191. Throughout Mr. Turner's deposition, Mr. Turner provided testimony that it was the company's regular practice to maintain its financial records using the Quickbooks program from which the P&L was printed. He and Defendants are entitled to rely on them as such. Indeed, that is the whole purpose of maintaining company records in the ordinary course of business—to rely on them in the operation of the business.

Aside from Mr. Turner's personal deposition, Mr. Turner was designated as a Rule 30(b)(6) witness to testify on Revolution's financial activity and performance, Revolution's balance sheet, its sales and profits from Diesel Test, its costs and expenses, the creation of its P&L statements and information contained therein, and the creation of sales and shipping spreadsheets produced by Revolution. **Exhibit D**, Rule 30(B)(6) dep notice topics 4, 5, 11, 12, 13, and 14; Ex. C at 48-49. But Plaintiff did not examine Mr. Turner on those topics. Instead, Plaintiff chose to use its deposition time as a memory test. For example, Plaintiff asked "what are Revolution's total gross

sales for Diesel Test." Ex. C at p. 51. And when Mr. Turner responded asking if the question was about the P&L, Plaintiff insisted "I'm just asking if you know, sitting here today" but without any exhibits, to which Mr. Turner responded that he would look at the P&L. *Id.* at p. 51. Mr. Turner also testified about the input of information into Quickbooks, and he testified about the use of the underlying Limelight data that Revolution also produced. See i.e. *Id.* at p. 59. When asked about other sales questions, Mr. Turner repeatedly testified that he would refer to the P&L for sales information. See i.e. *Id.* at p. 65-66. But Plaintiffs never actually asked any questions about the P&L. Plaintiff failed to substantively examine Mr. Turner on any of the designated topics.

Mr. Turner further provided a sworn declaration in this matter as to the P&L documents as discussed with respect to Plaintiff's third *motion in limine* (above). Among other things, Mr. Turner confirmed in his affidavit that he personally recorded sales transactions in order to match gross sales and expenses to each and every sale that hit Revolution Laboratories, LLC's bank account. Ex. A, ¶4. Contrary to Plaintiff's argument that Mr. Turner did not check the Quickbooks data, Mr. Turner testified that he did not need to "check" the numbers prior to his deposition because the data was checked back in 2016 and 2017 when it was entered and it was correct when he entered the data. Ex. B at pp. 224-225. Then again in his sworn affidavit Mr. Turner confirmed that it was his regular responsibility for entering transactions, that he ensured the labels were proper, and that he always check the work when entered. Ex. A, ¶4. Mr. Turner further explained in his affidavit exactly how he would upload data into Quickbooks. *Id.*, ¶5. Thus, Mr. Turner does have the necessary personal knowledge to provide testimony as to the P&L and other financial documents of Revolution in this matter.

**V.    Plaintiffs Should Not Be Precluded From Claiming Revolution Never Made A Profit**

Plaintiffs do not and cannot dispute that Revolution's finances are a material part of its damages assessment as well as being the "relevant inquiry under 15 U.S.C § 1117(a)." MIL p. 14. For this reason, Plaintiff will almost certainly rely upon Revolution's financial records and present testimony that Revolution profited from the alleged infringement. Defendants are entitled to rebut Plaintiff's contention and put on a defense.

Plaintiffs' contention that Defendants should be barred from providing the jury a complete and accurate view of its practices, operations and finances is nonsensical. Defendants are entitled to explain to the jury how Revolution has operated and walk the jury through a complete picture of its finances based upon the documentary evidence that has been produced in this case. Plaintiff's apparent disagreement with Defendants' claim that Revolution has never made a profit does not enable it to bar Defendants' right to present evidence and testimony in support of such contention; that is the purpose of cross-examination and rebuttal witnesses. Plaintiffs have the same financial records that support Defendants' assertion that Revolution never made a profit and will have ample opportunity to argue how and why those records could be construed as evidencing a profit. That is the purpose of a trial and trier of fact.

Plaintiff has the burden of proving an amount of profit it is allegedly entitled to disgorge and must present evidence and testimony in support of its theory. Plaintiff cannot relieve itself of its own burden of proof on a contested issue by suggesting it will become a "mini-trial." MIL p. 14. Indeed, every contested issue is a "mini-trial." Plaintiff should not be permitted to bar evidence and testimony based upon a factual dispute and generic characterization of the facts as a waste of time and undue delay.

Contrary to Plaintiffs' argument, barring Defendants from presenting the jury with a comprehensive picture of its business, operations and finances would confuse the jury, not the

inverse. Defendants are entitled to contextualize Revolution's finances on the sales at issue within the broader picture of its business operations to explain its financial reporting and how the sales at issue fit within its business practices. This evidence will contextualize and aid a jury in understanding that Revolution did not profit from the alleged infringing sales. Defendants are not attempting to offset other losses against alleged profit on infringing sales (see MIL p. 14, fn 30), Defendants are attempting to explain its overall business and financial picture so that a jury understands how and why Defendant did not profit from the alleged infringing sales. The jury instruction will provide the necessary guidance on how to assess damages. Defendants are not trying to "evoke jury sympathy," they are simply presenting the jury with the truth. (MIL p. 15) Plaintiff is not entitled to bar evidence and testimony by labeling it false, they have to prove it to the jury.

## VI. Defendants Should Not Be Barred From Testifying That They Stopped Selling Diesel Products Prior to the First Quarter of 2018

Plaintiff again seeks to use a stipulation that is already a part of this Court's record to obtain a broad and burdensome order that would preclude Defendants from testifying on a key issue in this case. Plaintiff is welcome to use a stipulation or other sworn statement to impeach a witness, but it is improper to attempt to bar testimony that does not fall within the stipulation. Defendants fully expect that Plaintiff will attempt to introduce a significant amount of evidence regarding Defendants' sales, financials and profits. To the extent Defendants anticipate that Plaintiff will do so, it is highly prejudicial to prevent Defendants from discussing and introducing rebuttal evidence.

## VII. In The Event All Parties Are Not Precluded From Offering Any Evidence Or Testimony Of Plaintiff's Sales, Defendant Should Be Able To Offer Testimony And Evidence On The Amount Of Plaintiff's Sales

In the event Plaintiff wishes to preclude all evidence and testimony regarding the occurrence and existence of a single Diesel Test sale by Plaintiff, Defendants agree for all the reasons set forth in its Motion *in Limine* No. 3 to Bar Evidence and Testimony of Plaintiff's Alleged Sales. Plaintiff's admissions that he does not have any documentary evidence of a sale should preclude Plaintiff from offering any evidence and testimony of sales, including claiming that he made any sales. *Id.* But if Plaintiff is permitted to testify that he made even one Diesel Test sale, Defendants should be permitted to present evidence, testimony and argument on the amount of those sales as it is an integral part of Plaintiff's case.

In its claim for infringement of an unregistered mark, Plaintiff bears the burden of proving that it was the first to use the mark. *Games Workshop Ltd. v. Chapterhouse Studios, LLC*, 10 C 8103, 2013 WL 1340559, at *7 (N.D. Ill. Apr. 1, 2013) (when a plaintiff claims infringement of an unregistered trademark, it bears the burden of establishing that it engaged in prior use and ownership); *See Johnny Blastoff, Inc. v. Los Angeles Rams Football Co.*, 188 F.3d 427, 433 (7th Cir. 1999) ("A party may acquire a protectable right in a trademark only through use of the mark in connection with its product.") Use of the mark requires sufficient sales to let others know they should not invest resources to develop a mark similar to one already used in the trade. *Zazu Designs v. L'Oreal, S.A.,* 979 F.2d 499, 503 (7th Cir.1992), *citing Blue Bell, Inc. v. Farah Manufacturing Co.,* 508 F.2d 1260, 1264–65 (5th Cir.1975). The use (sales) must be continuous and bona fide to impart ownership of the mark; de minimus sales do not provide protection of the mark. *S. Indus., Inc. v. Space Age Techs.*, 97 C 2787, 1999 WL 495484, at *4 (N.D. Ill. June 30, 1999). Moreover, common law rights are only established in the geographic regions where Plaintiff is able to prove that it actually used the trademark, and a second user may still use the same trademark in geographic areas remote from the market appropriated by the first user. *Pure Imagination, Inc. v.*

11

*Pure Imagination Studios, Inc.*, No. 03 C 6070, 2004 WL 2967446, at *10 (N.D. Ill. Nov. 15, 2004).

Plaintiff cannot have it both ways; either both parties are barred from offering testimony and evidence respecting Plaintiff's alleged sales or Defendants are entitled to offer or elicit testimony and evidence regarding the dearth of Plaintiff's sales to rebut the argument that Plaintiff acquired rights in the Diesel Test mark through sufficient market penetration in any area. In the latter scenario, Defendants are entitled to cross examine Plaintiff on the alleged amount of his sales based upon the absence of any supporting record to argue that he did not acquire common law rights. Plaintiff should not be permitted to preclude this line of questioning based upon a generic claim that Plaintiff would be unfairly prejudiced by his own admissions. If Plaintiff is permitted to offer an iota of evidence as to Plaintiff's purported sales, then Defendants must be permitted to present countervailing testimony and evidence on the amount of sales as it would be germane to Plaintiff's case and the *Motion in Limine* should be denied. However, if the Court grants Plaintiff's motion in limine, it must forbid any presentation of evidence of <u>any</u> sales by Plaintiff.

## VIII. Defendants Should Not Be Precluded From Making Reference to Barry Nussabaum's Alleged Health Condition

Plaintiff has put this issue squarely before the Court and has insisted, time and again, on using Barry Nussbaum's health condition to assail his credibility. Plaintiff opposed Mr. Nussbaum's initial motion to testify remotely for his deposition, which was supported by extensive medical records. Plaintiff presented images pulled from the internet which Plaintiff alleged contradicted the medical records and sworn statement made by Barry Nussbaum. They did not.

Further, at the June 13, 2022 remote deposition of Barry Nussbaum, Plaintiff's counsel, once again, trotted out images pulled from the internet and spent a significant portion of the deposition, which was limited to financial discovery, attempting to discredit Barry Nussbaum.

Plaintiff required Barry Nussbaum, in the course of his financial deposition, to review and explain several pages of internet printouts containing social media posts, YouTube videos, and the like in order to demonstrate to Plaintiff's counsel that, for a variety of reasons, the images did not in any way controvert Barry's testimony or sworn statement.

One example Plaintiff attempted to use was a posting on YouTube of a conversation between pollster Frank Luntz and Barry Nussbaum. The location of the video was in Mr. Luntz's home in Beverly Hills, CA and the video was "posted" sometime after December 31, 2016. This was apparently a "smoking gun" which Plaintiff alleged disproved Mr. Nussbaum's prior testimony. In fact, the video is taken much earlier in 2016 and the subject Mr. Luntz and Mr. Nussbaum are discussing relates to their as to possible outcomes of the 2016 US Presidential Election. Unless Mr. Luntz and Mr. Nussbaum were making predictions about an election that had already occurred, the video clearly does not show what Plaintiff's counsel was attempting to show.

Plaintiff's counsel have disputed Barry Nussbaum's condition with no basis for doing so, and further, used Barry Nussbaum's documented health condition to attempt to impugn his credibility and character. Plaintiff will no doubt attempt to do so once again at trial and Mr. Nussbaum must be permitted to defend and explain himself as he has had to throughout this matter.

The absence of information regarding Mr. Nussbaum's health condition is also prejudicial. The jury should be allowed to hear from Mr. Nussbaum and his counsel as to why he is unable to attend the trial in person and be given some explanation such that they can reasonably understand why he is not present. This is especially important in light of Plaintiff having previously opened the door on this issue repeatedly.

WHEREFORE, Defendants, Revolution Laboratories, LLC, Rev Labs Management, Inc., Joshua Nussbaum, and Barry Nussbaum, respectfully request that this Honorable Court deny Plaintiff's Omnibus Motion *in Limine* and grant Defendants such other and further relief as this Court deems just and reasonable.

REVOLUTION LABORATORIES, LLC, REV LABS MANAGEMENT, INC., JOSHUA NUSSBAUM, and BARRY NUSSBAUM

By: */s/ R. Timothy Novel*

      One of their attorneys

Matthew De Preter (ARDC# 6291503)
cdepreter@agdglaw.com
Amy M. Gibson (ARDC #6293612)
agibson@agdglaw.com
R. Timothy Novel (ARDC #6297303)
tnovel@agdglaw.com
Aronberg Goldgehn Davis & Garmisa
330 North Wabash Avenue, Suite 1700
Chicago, Illinois 60611
312-828-9600

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system on August 31, 2022 which will send notification of such filing to all counsel of record.

<u>*/s/ R. Timothy Novel*</u>