**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **CHARLES CURRY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 17 C 2283** |
| | ) | |
| **REVOLUTION LABORATORIES, LLC,** | ) | |
| **REV LABS MANAGEMENT, INC.,** | ) | |
| **JOSHUA NUSSBAUM, and** | ) | |
| **BARRY NUSSBAUM,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

This case is set for trial in mid-May 2023. There are sanctions-related matters pending before the Court regarding defendants' delayed production and non-production of financial information of various types. The Court rules on those matters via this opinion and also addresses the motion to withdraw filed by one of defendants' attorneys.

This is a lawsuit against an entity and two individual defendants, the Nussbaums, for trademark infringement and related claims. Plaintiff Charles Curry seeks to recover, among other things, the profits the defendants made from infringement. Plaintiff also seeks punitive damages on his state-law claim and statutory damages under the Lanham Act. On these latter points, the defendants' financial condition is a factor that is considered.

Starting about a year ago, plaintiff sought financial records that would assist in

showing the profits the defendants made from infringing sales and their financial status generally. The information plaintiff requested is relevant on, if nothing ese, the points just discussed relating to damages. Plaintiff's discovery requests led to the sanctions issues that are now before the Court.

The Court's involvement in disputes regarding plaintiff's financial discovery requests extends back to early March 2022. By September 2022, most of the information plaintiff sought had been produced but, perhaps, not all of it. And what defendants *did* produce essentially had to be dragged out of them bit by bit. Plaintiff had to invoke the Court's authority repeatedly, in ways that would not have been necessary had the defendants and their counsel not engaged in dilatory and, in some instances, obstructive tactics.

The Court starts with a brief history of the relevant events. On March 1, 2022, the Court granted plaintiff's motion to compel, which covered plaintiff's request for information within the Nussbaums' possession, custody, or control regarding their assets, net worth, income, and compensation. The Court ordered production in full by March 15. The Court also authorized and directed time-limited depositions of both Nussbaums regarding financial issues, to be completed by the end of March.

Following the Court's order, defendants produced some of the information ordered but not all of it. Among other things, they did not produce a significant quantity of bank records and tax returns. In addition, they produced no information regarding a trust established by Barry Nussbaum—into which, it appears, significant revenues from the defendant corporation have been funneled, and which apparently pays at least some of Barry Nussbaum's living expenses. And in late March, without any advance

2

notice, the Nussbaums failed to appear for their court-ordered depositions.

Plaintiff filed two motions for sanctions, one concerning the missing records and one concerning the depositions. On April 15, 2022, the Court ordered defendants to produce the missing financial discovery by April 29, ordered the Nussbaums to appear for their depositions by May 6, and continued the motions for sanctions.

No new documents were produced by the April 29 deadline despite the plain deficiencies in defendants' compliance with the Court's March 1 order. And at the May 6 depositions, Barry Nussbaum refused to answer questions regarding the assets in or value of the trust, and Joshua Nussbaum (claimed at the time to be a beneficiary of the trust and its "managing trustee") disclaimed any knowledge about the trust or its assets.

At a video hearing on May 24, 2022, at which the Court ordered the Nussbaums to appear personally, the Court admonished them—not the first time defendants (via counsel) had been admonished regarding discovery non-compliance—and ordered them to produce copies of the trust agreement and resume their depositions on June 13 under the Court's direct supervision.

On June 10, the Court noted defendants' continued noncompliance with the Court's production orders in various respects and ordered them and their counsel to show cause why they should not be held in contempt. During this hearing, defendant's counsel represented that the records of a particular bank account had been produced in their entirety—so the Court did not include that in its show cause order—but it later turned out this was false. In addition, the defendants did not produce until two days later complete records from Barry Nussbaum's Central Pacific Bank account, despite having told the Court on June 10 that they had produced those records in their entirety.

Also at the June 10 hearing, the Court ordered the Nussbaums to pay the attorney's fees and costs associated with their resumed deposition. The Nussbaums complied with this in July 2022, paying a little over $20,000. *See* Dkt. nos. 265, 266.

As of June 24, 2022, all of the relevant tax returns had been produced, but defendants had not yet produced the following records covered by the Court's earlier production orders: complete records of Barry Nussbaum's First Hawaiian Bank account, or any records for his California Bank and Trust account, the existence of which had not even been disclosed until his June 13 continued deposition. In addition, defendants and their counsel had continued to misrepresent information regarding the trust and their access to information about it. More information about the trust came out at the June 13 deposition. Based on the testimony, it appears that Barry Nussbaum, despite claiming not to have access to information about the trust (which he set up in the Cook Islands) or even the ability to obtain such information, regularly received money from the trust based partly on his "personal needs." It also appears that the trust owns Barry Nussbaum's home in Hawaii as well as significant other real estate. All of this had taken months, and repeated motions and court directives, to be disclosed. Even then, the Nussbaums continued to resist producing further information or documents concerning the trust. There also remained other relevant financial information either belatedly disclosed or not yet disclosed at all. *See* Dkt. no. 252 (Pl.'s Mem. in Further Support of Mot. for Sanctions) at 12-13.

Plaintiff sought in his June 24 submission the following relief:

- an instruction to the jury that the Nussbaums disobeyed multiple court orders to produce documents and information regarding their finances and allowing the

4

jury can infer that the information they failed to produce was unfavorable to them and favorable to plaintiff;

- an instruction to the jury that the net worth of each Nussbaum may be presumed significant for purposes of punitive and statutory damages;

- an order barring the Nussbaums from testifying about their finances;

- an order precluding the Nussbaums from relying on the trust to minimize their net worth or their compensation from the corporate defendant; and

- attorney's fees and costs incurred by plaintiff relating to the financial discovery and compliance efforts.

*See* Dkt. no. 252 at 14; *see also* Dkt. no. 284.

At a hearing on July 13, 2022, plaintiff's counsel reported that certain documents within the scope of the Court's production order(s) remained unproduced by defendants. These included certain records relating to assets of the trust; documents relating to a supposed amendment of the trust that purportedly removed Barry Nussbaum as "trust protector"; documents relating to Joshua Nussbaum's claimed resignation (post-lawsuit, in November 2020) as the trust's managing trustee; documents relating to a claimed restructuring of the trust—which was contended to have the effect of putting the trust's assets out of reach; documents relating to the value of certain real estate holdings; documents regarding certain business ventures reflected in the defendants' tax returns; and complete documents relating to two other trusts disclosed for the first time during Barry Nussbaum's continued deposition on June 13. During the July 13 hearing, defendants' counsel denied that any further documents existed. The Court ordered the parties to confer further on the document production issues.

5

On June 29, 2022, the Nussbaums filed affidavits stating that they had produced what amounted to the remaining records ordered by the Court that were in their possession, custody, or control. *See* Dkt. nos. 255, 256. The defendants then filed a memorandum stating that they had complied in full and that no preclusive or inference-type sanctions should be imposed. *See* Dkt. no. 264.

The Court also stated, during the July 13 hearing, that the preclusive and inferential sanctions sought by plaintiff should be addressed in a motion *in limine* to be filed later. Plaintiff subsequently filed a motion *in limine* on this topic. At a hearing on September 7, 2022, the Court overruled one aspect of plaintiff's requested relief, denying his to request bar defendants from testifying or making arguments about their assets. The Court tabled until closer to trial plaintiff's request for preclusive and inferential sanctions. The Court took under advisement plaintiff's request for monetary relief. The parties then filed further briefs regarding the amount of monetary sanctions the Court should award.

What remains for the Court's determination, aside from the remaining preclusive/inferential sanctions sought by plaintiff, is plaintiff's request for an award of attorney's fees and costs. Plaintiff requests fees in the amount of $238,005 and expenses of $1,460.45. Defendants argue that the request is overblown and unjustified and should be overruled in its entirety on that basis. They also challenge certain specifics of the requested fees.

More recently, Timothy Novell, one of the attorneys for defendants (and the one who had carried the laboring oar with respect to the financial discovery and related issues), moved to withdraw. In December 2022, just before Mr. Novell filed his motion

to withdraw, another attorney from the same firm advised the Court during a hearing that Mr. Novell had made erroneous statements to the Court. The Court told counsel to put this in writing. Defense counsel's submission, filed on December 29, 2022, reported that Mr. Novell had falsely stated to the Court (in a May 23, 2022 filing and a May 24, 2022 hearing) that the reason certain Nussbaum tax returns had not been produced was that counsel had not received readable electronic versions. Defense counsel reported that in fact, Mr. Novell had received fully readable copies of the tax returns as early as March 15, 2022. *See* Dkt. no. 312.

## Discussion

### A.    Monetary sanctions

The Court begins with plaintiff's request for monetary sanctions. Plaintiff seeks sanctions under Federal Rule of Civil Procedure 37(b)(2)(C), which states that a court "must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure [to comply with a court order]c, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C); *see* Pl.'s Submission in Further Support of Monetary Sanction at 2 (citing the Rule).

The defendants violated the orders of the Court in several respects, as detailed earlier. In particular, they failed to produce documents responsive to plaintiff's document requests that the Court enforced, which required further enforcement efforts by plaintiff and by the Court. In addition, they failed to appear for their March 31 depositions without justification. There is no question that plaintiff is entitled to an award of fees and costs under Rule 37.

A party entitled to fees and costs under Rule 37 "should be made whole—should be as well off as if the opponent had respected his legal rights in the first place." *Rickels v. City of S. Bend*, 33 F.3d 785, 787 (7th Cir. 1994). But a court may impose only the attorney's fees and costs that the party would not have paid for but for the wrongdoing. *See Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 108 (2017). And, equally significantly, Rule 37 by its terms permits recovery only of *reasonable* fees and expenses.

As indicated, plaintiff seeks to recover $238,005 in attorney's fees and $1,460.05 in expenses. From a 30,000-foot level, this appears quite excessive. At rates of $750 for plaintiff's lead counsel and $570-$588 for plaintiff's other counsel, the total represents around 400 hours of attorney time.[1] The fee request covers a period of about four months, from mid-March through mid-July 2022. That's about seventeen weeks, or a little over eighty workdays if holidays aren't included. The attorney time claimed thus averages out to something like five hours per day for every day during the relevant period.

To be sure, plaintiff was put to significant extra work due to defendants' noncompliance and unjustified delays in compliance. He had to file repeated requests and participate in several court hearings to secure compliance. And as materials trickled in, plaintiff kept finding out about previously-undisclosed responsive materials, requiring further efforts to obtain production—which was hardly ever forthcoming without some coercion. But, in the Court's view, the amount of fees claimed is significantly

---

[1] The Court cannot find in plaintiff's submission a total of the hours claimed for each attorney, or even the total number of hours claimed, and it did not do a detailed calculation on its own. Thus the approximation in the text.

8

beyond the *reasonable* fees occasioned by defendants' noncompliance with court orders. It is worth noting that although plaintiff's counsel had to prepare a number of separate filings and participate in several hearings, these all involved a common or overlapping set of points. The wheel didn't have to be reinvited with each filing; most of what was required for court filings and hearings involved building on previous submissions and discussions.

Plaintiff has broken down his fee request into a series of topics. The Court addresses each in turn.

1. Plaintiff claims 20.9 hours of attorney time—$12,452—for the twelve-page motion for sanctions he filed on March 25, 2022. The filing of the motion was caused by defendants' noncompliance with the Court's March 1 order, but the total time claimed (translating to $1,000 per page) is not reasonably shifted to defendants given the subject matter involved. The Court reduces this amount by one-half, to $6,226. Plaintiff's reply brief on this same motion, which is nine pages long, results in a request for $15,965 in attorney's fees (about $1,700 per page), representing over twenty-seven hours in attorney time. This, too, is unreasonably excessive. The Court reduces this amount by two-thirds, to $5,321.

2. Plaintiff claims $36,552 (seventy-two attorney hours) for preparation for the Nussbaums' March 31 depositions, for which they did not appear. The Court disagrees with defendants' contention that this should not be compensated at all. The depositions were ordered by the Court, and the time plaintiff reasonably spent on preparation was almost entirely wasted due to defendants' failure to appear. But the time claimed for preparation is excessive by quite a bit. For two one-hour depositions,

9

plaintiff seeks a total of *seventy-two hours* of preparation time. The Court understands that time would be needed to hone the questioning given the court-imposed time limitation, but seventy-two hours is absurdly excessive. The Court will allow ten hours of this time, at attorney Hailey's $588 rate, for a total of $5,880.

3.    A total of 14.6 hours of time, or $8,575, is claimed for plaintiff's April 1 sanctions motion regarding the defendants' non-appearance for their depositions. That's outlandish; this was a simple matter to describe and bring to the Court's attention (and the motion was filed just one day after the non-appearance). The Court reduces this amount by three-fourths, to $2,143.

4.    Plaintiff unreasonably seeks $3,874 in fees—which translates to 6.4 hours of attorney time—for a May 2, 2022 two-page notice updating the Court on discovery. That's excessive; nothing anywhere close to that was reasonably required. The Court reduces this by two-thirds, to $1,291. The Court also reduces by two-thirds the amount claimed ($2,278) for a two-page filing on May 16 regarding the non-production of the trust documents. The reduced amount is $759.

5.    Plaintiff requests a total of a bit over $42,000 in fees for the May 13, 2022 joint status report ($23,632) and his May 23, 2022 supplement to that report ($18,883). These filings covered a significant amount of territory (the May 13 report was twenty pages long and the May 23 report was seventeen), but they largely raked over old ground and covered relatively straightforward points that had come up during the ongoing proceedings. It appears that just short of thirty-six hours are charged for the May 23 supplement and that thirty-seven hours are charged for the May 13 report. The Court reduces the attorney's fees for these by two-thirds, to $14,171.

10

Defendants contend that no fees should be imposed for these reports. The Court disagrees. The May 13 status report amounted to a request to (again) compel production of the financial records as ordered by the Court. As for the May 23 status report, defendants argue the fees should not be shifted because the report involved questions regarding production of trust-related records. But it is quite clear at this point (and plainly was known to defendants all along, given their knowledge of the trust arrangement) that documents involving the trust amount to financial records of the defendants that were encompassed by the Court's March 2022 production order. Among other things, the trust appears to have been funded at least to some extent by payments from defendant Revolution (from which Barry Nussbaum apparently has taken little or no salary or draw); the trust apparently finances some reasonably significant part of Barry Nussbaum's living expenses; and Joshua Nussbaum is and has been a beneficiary. One cannot with a straight face characterize records about the trust as anything other than records regarding the defendants' assets and finances.

6.      The fees sought by plaintiff for preparation for and participation in several court hearings during this period are unreasonably excessive. This includes $8,111 sought for the April 15, 2022 telephonic hearing (just under fourteen hours' worth), which took just fifteen minutes; $9,927 for the May 18, 2022 telephonic hearing, which lasted about thirty minutes; and $4,590 for the May 24, 2022 video hearing. The Court cuts the fees for each of these by two-thirds, to $7,542.

7.      The Court declines to include in the sanctions award $5,814 in fees claimed in relation to Barry Nussbaum's request to appear remotely for his deposition due his health condition and $4,057 for the June 1, 2022 hearing on that motion. This

time was not occasioned by the defendants' noncompliance with any court orders.

8.      Plaintiff seeks $3,293 (5.6 hours) for a June 8 status report—plaintiff's part of the report was a little under six pages—and $4,677 for preparation for and participation in a June 10 status hearing that took fifteen minutes. Reasonable time for these matters is compensable because the report (and thus the hearing) amounted to a further effort to compel production of documents sought by the Court. The amount claimed for the report is reasonable, but the amounts claimed for the hearing is unreasonably excessive. The Court reduces the latter amount by two-thirds (to $1,559). The revised total is $4,852.

9.      Plaintiff filed on June 24, 2022 a memorandum in further support of his sanctions motion that also addressed defendants' claims that, by then, they had complied. The filing of this memorandum, which contained fifteen pages of text, was reasonably caused by defendants' noncompliance with the Court's orders, but the amount claimed, 49.6 hours for a total of $30,466, is unreasonably high. The Court reduces this by two-thirds, to $10,155.

10.     For similar reasons, the Court reduces by two-thirds the amounts claimed in connection with a relatively brief June 30, 2022 hearing ($2,587); a July 1, 2022 notice regarding ongoing noncompliance or delayed compliance ($1,125); and a July 13, 2022 telephonic hearing, which took about 20 minutes ($4,900). The reduced amount is $2,870.

11.     For the period from mid-March through the end of June 2022, a total of fifty-six hours of time ($32,402) is claimed for communication with defendants' counsel regarding compliance issues and reviewing correspondence and submissions by

defendants.  Some of this actually amounts to deposition preparation time that defendants elsewhere represented they were not seeking (Kane entry of 6.3 hours and Hailey entry of 2.9 hours on 6/12/2022; Hailey entry of 3.9 hours and Kane entry of 0.4 hours on 6/13/2022); a lot of it actually relates date-wise to filings for which the Court has already reduced the claimed amount to a reasonable sum for the preparation of those filings; and some of it is occasioned by inter-attorney consultation among the three attorneys representing Curry.  Some of this consultation is reasonably necessary, but it's not reasonable to shift all of it to defendants.  This time is reduced by three-fourths, to $8,100.

12.     Finally, the Court addresses the submissions plaintiff made in July and August 2022 to quantify the requested monetary sanctions award.  The Court has reviewed those submissions extensively in connection with the present ruling.  The primary items are plaintiff's ten-page submission in further support of monetary sanctions filed on June 22, 2022 and his fifteen-page reply brief filed on August 7, 2022. These were significant submissions ordered by the Court and caused by defendants' noncompliance with Court orders.  But the Court can reasonably infer from its extensive review of the billing already discussed that the total time and effort charged for these would likely be in line with the amounts charged for earlier submissions, each of which the Court has found unreasonably excessive and has reduced accordingly.  The Court sees no useful purpose in going through, or requiring counsel to go through, the time and effort that would be required to brief the appropriate amount recoverable for these submissions.  The Court will allow a total of $12,000 for these filings.  This amounts to about twenty hours of attorney time at the rates of the lawyers who appear to be the

principal drafters of plaintiff's written submissions.

13. The total amount of attorney's fees the Court will award in favor of plaintiff and against defendants is $81,310. Defendants have not challenged the requested out-of-pocket costs, so the Court awards the requested costs in their entirety—$1,460. The total monetary sanction is $82,770. These sanctions are imposed jointly and severally against each of the defendants. On a couple of relatively discrete points, it appears that some of the delay was due to attorney Novell, and it is at least possible that defendants' non-production, delayed production, and failures to appear resulted from consultation with counsel. On that, defendants and their counsel are free to address among themselves who ultimately should be responsible for what.[2] That should not be plaintiff's problem. The monetary sanctions are payable to plaintiff in full no later than twenty-one days after the date this decision is issued.

## B. Preclusive and inferential sanctions

As the Court has previously indicated, it will address plaintiff's request for preclusive and inferential sanctions at a point closer to trial. In this regard, plaintiff is directed to file by January 27, 2023 a submission of not more than five pages describing any remaining documents covered by the Court's production orders that plaintiff believes defendants still have not produced. Defendants are directed to file by February 3, 2023 a response of not more than five pages.

---

[2] The Court reserves the possibility, in connection with attorney Novell's motion to withdraw, of making Mr. Novell jointly and severally liable for some part of the fee award associated with his alleged misrepresentations to the Court or otherwise sanctioning him.

**C.    Novell motion to withdraw**

Before addressing Mr. Novell's motion to withdraw, the Court needs to consider the contentions made by his (now former) law firm regarding certain representations Mr. Novell made to the Court.  Mr. Novell may file a response to the law firm's submission by no later than January 20, 2023.  The Court will deal with the motion to withdraw and any sanctions or proceedings resulting from Mr. Novell's claimed misconduct after that.

**Conclusion**

For the reasons described above, the Court grants plaintiff's motion(s) for sanctions and imposes a monetary sanction of $82,770 in favor of plaintiff against defendants, jointly and severally.  The monetary sanction must be paid in full by no later than February 13, 2023, and defendants are to file a notice of compliance by no later than February 14, 2023.  In addition, plaintiff is directed to file by January 27, 2023 a submission of not more than five pages identifying any remaining documents covered by the Court's production orders that plaintiff believes defendants still have not produced.  Defendants are directed to file by February 3, 2023 a response of not more than five pages.  Attorney Timothy Novell's motion to withdraw is taken under advisement.  Mr. Novell may file a response to his former law firm's December 29, 2022 submission by no later than January 30, 2023.  Finally, the Court's order to show cause relating to contempt has been adequately dealt with by the present order and other previous orders and is therefore withdrawn without prejudice.

Date:  January 23, 2023

_____
MATTHEW F. KENNELLY
United States District Judge

15