IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHARLES CURRY, d/b/a GET DIESEL NUTRITION, <br><br> Plaintiff, <br><br> v. <br><br> REVOLUTION LABORATORIES, LLC; REV LABS MANAGEMENT, INC.; JOSHUA NUSSBAUM; and BARRY NUSSBAUM, <br><br> Defendants. | Case No. 1:17-cv-02283 <br><br> Judge Matthew F. Kennelly |

## PLAINTIFF'S RESPONSE TO ATTORNEY NOVEL'S FILING

Pursuant to the Court's January 31, 2023 order, Dkt. 328, Plaintiff submits this short response to Attorney R. Timothy Novel's recent response and declaration, Dkts. 327, 327-1.

Mr. Novel's submission reveals a striking record of misconduct by the Nussbaums, among others. Although the discovery violations were already well-known,[1] Mr. Novel provides entirely new insights into the Nussbaums' personal responsibility for the systematic, months-long defiance of the Court-ordered discovery into their finances. These new facts reinforce the need to instruct the jury as to the Nussbaums' serious discovery violations. *See* Dkt. 284 at 1-2.

Mr. Novel leaves no doubt that the Nussbaums were responsible for these violations:

- "[T]he principal cause for delay in discovery was the defendants' resistance." Dkt. 327 at 2.

- "I had numerous conversations with Barry Nussbaum . . . the clients were not taking the discovery process, the accumulation of motions to compel, or the Court's increasing

---

[1] *See, e.g.*, Dkt. 319 at 2-7 (the Court finding that "[D]efendants violated the orders of the Court in several respects," and detailing Defendants' "obstructive tactics," "misrepresent[ations]," and "continued noncompliance" with the Court's orders); Dkt. 258 at 3-7, 8-9, 10-11, 14 (discussing the Court's prior orders and rulings regarding Defendants' discovery violations).

frustration as seriously as they should." Dkt. 327-1 at ¶ 32.

- "By [June 11, 2022], defendants had stated that they would agree to cooperate more meaningfully . . . [but] [t]he client assurances of cooperation and taking their responsibilities seriously were short-lived." *Id.* at ¶¶ 47-48.

- "Even during Joshua Nussbaum's deposition [on financial discovery, conducted in the Court's Chambers on June 13, 2022], there was a demonstrated failure to take responsibilities seriously." Dkt. 327 at 2. "[T]he witness [Mr. Nussbaum] acted immaturely and disrespectfully . . . ." Dkt. 327-1 at ¶ 48.

Mr. Novel also reveals that, at the time Defendants opposed Plaintiff's two sanctions motions at the April 15, 2022 motions hearing, he knew that Defendants were ***in violation*** of the Court's discovery order—despite Defendants' having made multiple submissions to the Court days earlier claiming to be "***fully compliant***" with the Court's order, Dkt. 211 at 2, Dkt. 212 at 2 (emphasis added)—and those violations were largely due to the Nussbaums' refusals to comply:

> As of April 15, 2022, I believed that the defendants' failure to produce discovery in a timely manner resulted from three factors: (a) as to some aspects of discovery, such as, most significantly, the trust issues, there was ***client opposition***; (b) as to other aspects of discovery, such as some bank records that were found late in the process, there was ***client disorganization and a failure to take their obligations seriously enough***; (c) as to other aspects of discovery, there were failures on my and Aronberg's part to catalogue and produce discovery efficiently, and our state of internal disorganization contributed to the appearance that ***discovery was not being taken as seriously as it should***.

Dkt. 327-1 at ¶ 30 (emphases added). This disclosure raises significant concerns about whether Defendants had a good faith basis for the claims and arguments they made in opposing Plaintiff's sanctions motions, as required under the Rules.

As for the discovery into their Trust that the Nussbaums obstructed for so long in defiance of the Court's orders, Mr. Novel reveals that he understood from the beginning that Trust documents were encompassed by the Court's orders, and that he sought to convince the Nussbaums to comply with this Court-ordered discovery, but to no avail:

> I was aware on March 1, 2022 that the kinds of trust arrangements that my clients had established years ago were less protective than my clients believed and that

2

> reliance on those kinds of trust provisions can lead to contempt. . . . ***[M]y increasing frustration and deteriorating relationship with the defendants resulted from their conduct. In the particular context of the trusts that supplied so much of the trappings of the Nussbaums' lives, I saw them heading in a direction that I sought to convince them to change.*** Having some experience and familiarity with the issue, I expected that any attempt to convince the Court (a) that the Nussbaums could not gain access to financial information and (b) that there would be nothing that anyone could do about it to ensure the triers of fact could assess the Nussbaums' wealth would fail. . . . ***I knew that courts were not allowing litigants to hide behind those types of devices and structures***.

Dkt. 327-1 at ¶¶ 19, 34 (emphases added).

In addition to Defendants' known financial discovery violations, Mr. Novel's declaration also raises serious questions about what non-financial discovery might have been improperly withheld or not searched by Defendants. Mr. Novel's declaration refers to Defendants' "past failures to comply with discovery demands and orders," *id.* at ¶ 21, and he said that he "knew [Defendants] had faced challenges in the case on the issue of discovery compliance," *id.* at ¶ 20. Defendants' failure to comply with their discovery obligations earlier in the case could explain the very limited number of emails they produced between Barry and Joshua Nussbaum—less than a handful—among other apparent gaps in Defendants' productions during fact discovery.

## **CONCLUSION**

These and other previously-undisclosed facts set forth in Mr. Novel's declaration make clear that requiring the Nussbaums to pay Plaintiff's attorneys' fees alone is insufficient to address the Nussbaums' flagrant and ongoing violations of the Court's discovery orders. Rather, Mr. Novel's disclosures underscore that the only way to ameliorate the prejudice caused to Plaintiff, punish Defendants, and deter such misconduct in the future is to instruct the jury as to the Nussbaums' discovery violations. *See* Dkt. 284 at 1-2.

Additionally, these new facts reinforce why Mr. Novel's motion to withdraw as counsel should be deferred until after the pending discovery sanction issues in this case are resolved.

Dated:  February 2, 2023                                  Respectfully submitted,

*/s/ Nicholas C. Hailey*
Matthew J. Oppenheim (443698)
Scott A. Zebrak (452649)
Nicholas C. Hailey (admitted *pro hac vice*)
Jeff Kane (admitted *pro hac vice*)
OPPENHEIM + ZEBRAK, LLP
4530 Wisconsin Avenue, NW, 5th Floor
Washington, DC 20016
Tel: 202-480-2999
matt@oandzlaw.com
scott@oandzlaw.com
nick@oandzlaw.com
jkane@oandzlaw.com

*Attorneys for Plaintiff*

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 2, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which sent notice of such filing to all parties.

*/s/ Nicholas C. Hailey*
Nicholas C. Hailey (admitted *pro hac vice*)
