# EXHIBIT 1

1

1     IN THE UNITED STATES DISTRICT COURT
      NORTHERN DISTRICT OF ILLINOIS
2              EASTERN DIVISION

3

CHARLES CURRY                          )    Docket No. 17 C 2283
4   Doing business as                    )
    Get Diesel Nutrition,                )
5                                        )
                          Plaintiff,     )
6                                        )    Chicago, Illinois
              vs.                        )    September 7, 2022
7                                        )    3:00 o'clock p.m.
    REVOLUTION LABORATORIES, LLC, et     )
8   al.,                                 )
                                         )
9                         Defendants.    )

10

              TRANSCRIPT OF PROCEEDINGS - STATUS
11        BEFORE THE HONORABLE MATTHEW F. KENNELLY

12

APPEARANCES:
13

14  For the Plaintiff:     OPPENHEIM + ZEBRAK, LLP
                           BY:  MR. MATTHEW OPPENHEIM
15                              MR. NICHOLAS COOPER HAILEY
                           4530 Wisconsin Avenue, NW, 5th Floor
16                         Washington, DC 20016
                           (202) 480-2174
17

18

19  For the Defendants:    ARONBERG GOLDGEHN DAVIS & GARMISA
                           BY:  MR. R. TIMOTHY NOVEL
20                              MR. MATTHEW L. DE PRETER
                           330 N. Wabash Ave, Suite 1700
21                         Chicago, IL 60611
                           312-755-3161
22

23

24  Court Reporter:        MS. CAROLYN R. COX, CSR, RPR, CRR, FCRR
                           Official Court Reporter
                           219 S. Dearborn Street, Suite 2102
25                         Chicago, Illinois  60604
                           (312) 435-5639

1   strictly in accordance with the advice of the attorney, who

2   had been given a full report."

3           I think that the evidence as it's been discussed in

4   deposition testimony, which I've been told they're going to

5   testify consistent with, fails on a full and accurate report

6   of all material facts.  They didn't send the cease-and-desist

7   letter.

8           And besides that, the testimony is quite vague.  I

9   read it all.  It's quite vague.  It would probably be

10  excludable for that reason as well.  It's not specific enough

11  to meet the test; so I'm going to grant motion in limine

12  number 2.  That's plaintiff's number 2.

13          The third one has to do with the profit and loss

14  summary.  Okay.  So I want to make sure that I'm completely

15  understanding.  This is about the profit and loss summary that

16  was I guess -- if I'm understanding it right, it was basically

17  downloaded from like -- I'm blanking on the name --

18  QuickBooks.  QuickBooks.  By this fellow, Mr. Turner.

19          So there's a lot of discussion about whether this

20  qualifies as a business record under 803(6).  It probably

21  could with a proper foundation, but it seems like to me, from

22  reading this, that Mr. Turner has enough knowledge of this

23  that he can lay the foundation for this as a summary under

24  Rule 1006.  Now, the problem with a summary is that the

25  underlying records have to have been made available.  And

1    there's a complaint -- there's a beef made by the plaintiff is

2    that we never got the underlying records.  The defense says

3    that the underlying records were all produced.  And so I need

4    to hear more about that from the defense.

5         So what ended up getting turned over as far as the

6    data from the QuickBooks system as it relates to this P&L

7    summary?

8         MR. NOVEL:  They have all of the bank records from

9    Rev Labs and the tax returns, which would show the entries

10   that were made into QuickBooks.  I would have to look and see

11   if --

12        THE COURT:  Let me go about this in a different way.

13   What is Mr. Turner going to say about how this summary was put

14   together?  I mean, he's got to lay a foundation for it one way

15   or another.  What's he going to say about how this summary got

16   put together?  What did he do to get it?

17        MR. NOVEL:  That on a regular basis, I entered data

18   into QuickBooks.  And in order to produce this summary, I

19   simply hit print, a function in QuickBooks that allowed me to

20   generate this from the system that I use in the ordinary

21   course of my business to keep track of the company's books.

22        THE COURT:  Okay.  So on the plaintiff's side, what's

23   wrong with that as a foundation?

24        MR. HAILEY:  Your Honor, they have never produced the

25   QuickBooks data file, the underlying file.  We requested that

1   they produce that.  We requested that multiple times, and they
2   never produced it.

3         What the P&L is is a litigation-created summary
4   document without any --

5         THE COURT:  When you say it was litigation created, I
6   mean, yeah, it was created during the litigation.  But it's
7   not like he -- it sounds like, from what the guy says, that he
8   just clicked a function in QuickBooks.  I mean, that's
9   different from what you would normally regard as a
10  litigation-created document, which might be something that
11  if -- you know, somebody just said, let's go put this together
12  for the lawsuit.  According to his own testimony -- and, you
13  know, maybe he's lying.  Okay.  But according to his
14  testimony, he clicked on, you know, various functions within
15  QuickBooks, and that's how he generated it.

16        So let's put litigation generated to the side.  I
17  agree that it was produced during the litigation, but that
18  doesn't mean that it's suspect for that reason.  So just deal
19  with the rest of it.

20        MR. HAILEY:  So I think that issue goes to whether or
21  not it's a business record maintained in the ordinary course.
22  If it was produced during a lawsuit, it's not a business
23  record in the ordinary course.

24        THE COURT:  That's just false.  Okay.  So let's just
25  imagine that Apple computers gets sued for patent

1    infringement.  And two years into the lawsuit, they're asked
2    to produce something about sales of the product.  They go into
3    their financial accounting system, and they produce something
4    regarding sales of the product.  Under your theory, that's not
5    admissible because it's not generated in the ordinary course
6    of business, to which the answer is hogwash.
7          What's your next argument?
8          MR. HAILEY:  Well, we need to see the underlying
9    records that they used because otherwise -- the summary that
10   we created, we don't -- there's case law saying that we don't
11   have to take the word just based on this summary.  We're
12   entitled to the underlying --
13         THE COURT:  What does that mean?  What does that mean
14   for data that's stored in a computer system?  What is it that
15   you would have wanted to have that you didn't get?
16         MR. HAILEY:  They could produce the QuickBooks data
17   file.  Data files like this are frequently produced in
18   litigation, along with profit and loss summaries.  Our damages
19   expert could have taken a look at that file and compared it
20   against the P&L and looked at the underlying documents.
21         THE COURT:  Mr. Novel or Mr. De Preter, was that
22   done?  Was the data file from QuickBooks produced?  And, if
23   not, why wasn't it produced?
24         MR. NOVEL:  I don't know if the data file was
25   produced.  They have the bank records that would have

1    reflected --

2          THE COURT:  That's not the data file.  That means

3    they have to go back and do what QuickBooks did automatically,

4    click, click, click, which they shouldn't have to do and

5    which, under 1006, they don't have to do.  It's a summary.

6    Okay?  It's not just a business record.  It's a summary.

7    Under 1006, the underlying records have to be produced.  So

8    the fact that there were bank records from which somebody

9    could recreate what was in the QuickBooks file may be doesn't

10   cut it.

11         Can anybody on the defense side tell me that this

12   QuickBook was produced?  Everybody is saying no.  Okay.

13         MR. DE PRETER:  No, your Honor, we do not believe it

14   was produced.

15         THE COURT:  Here's the next question.  Does it still

16   exist?  In other words, there's a document that Mr. Turner

17   wants to put in about the P&L.  Does the QuickBooks file still

18   exist that -- you know, the trial date is not until January.

19   I could tell you, produce it in ten days.  What's going to

20   happen if I tell you to do that?  Is somebody going to say it

21   doesn't exist anymore?

22         MR. NOVEL:  I would go to my client and tell them, if

23   they have it, it has to be produced.

24         THE COURT:  That's what you got to tell them.

25   They've got ten days to produce the data file.

1    And then what's going to happen is that the
2  plaintiff's expert can consider it, and you're not going to
3  get to depose the plaintiff's expert again.  Because this
4  stuff wasn't produced at the time, you're just going to hear
5  it when you hear it.
6    And so subject to the production of the data file,
7  motion in limine 3 is denied.  And motion in limine 4, which
8  basically is the other side of the same coin, is also denied.
9  He can testify about this assuming that the underlying data
10  gets produced, "he" being Turner.
11    MR. OPPENHEIM:  Your Honor, can I ask for one
12  clarification on that?
13    THE COURT:  Yes.
14    MR. OPPENHEIM:  I believe the way QuickBooks
15  functions is that they can store data files as of points in
16  time.  If we could get the data file from the closest point in
17  time to the creation of the P&L, that will allow us to
18  hopefully have things match up.
19    THE COURT:  Do your best to give a data file from
20  close to that.  Sometimes these things -- I mean, I have the
21  home version of that, which is Quicken, and oftentimes these
22  things overwrite the data files.  And so depending upon what
23  the practice was about retention and storage and whatnot, it's
24  not clear that they would have that.  Give a data file that's
25  closest to the point in time of the P&L that you can.  If you