# Exhibit 019

| | |
|---|---|
| **From:** | M. "Chip" De Preter |
| **Sent:** | Friday, February 17, 2023 10:44 AM |
| **To:** | Jeff Kane; Chidinma O. Ahukanna; Amy Rapoport Gibson; Gary P. Hollander |
| **Cc:** | Nick Hailey; Matt Oppenheim |
| **Subject:** | RE: Curry v. Revolution - QuickBooks Database |

Your characterization of the Court's order is false. During the hearing—consistent with my October 10, 2022 email—I stated "we produced it by inspection and I requested
multiple times that plaintiffs schedule a date, we would go there, you can look at anything that you want to on our QuickBooks file, you can make any report, you can search up, down, sideways, print out copies" p. 16-17. The Court echoed that offer "What I understood you to be telling me just now is that we, the defendants, told the plaintiff, you can come over and look at the entirety of the QuickBooks file, not just limited to Diesel Test but the whole thing and you can run whatever searches and print whatever reports you want, the whole file for the whole company for whatever the period is." p. 17. The Court then Ordered " So I'm just going to tell defense counsel, you can -- you're going to have **that offer** open for another week. And on the plaintiff's side, you got a week to go over and have at it **and look at** the whole QuickBooks file for whatever period it was that was offered before." p. 18, emphasis added. When Plaintiff balked at following those instructions, the Court stated "I'm going to direct plaintiffs and defendants and their counsel to negotiate in good faith to try to develop a mechanism for the plaintiff to get the downloaded QuickBooks data so that they do not have to travel to San Diego." P. 49

We have been trying to develop such a mechanism since you stated an expert would be coming to Revolution. But rather than negotiate in good faith, you have consistently made demands about the manner you believe you want to gather the data. We do not agree that this is simply "copying Revolution's Quickbooks data in native format." That would be the case if we were able to password protect the new database to maintain the integrity of the data and prevent it from being altered. We have recommended a solution for accomplishing that, but you have rejected it. As an alternative, we simply request that an accurate summary of the work being performed and the output of that work be recorded and attest to by the experts. That hardly seems like an unreasonable request. As I have said, If you believe our expert's proposed statement of the work is inaccurate, have your expert draft their own.

**M. "Chip" De Preter**
cdepreter@agdglaw.com



Aronberg Goldgehn / 330 N. Wabash Ave. / Suite 1700 / Chicago, IL 60611-3586
Phone: (312) 755-3153 / Fax: (312) 222-6364 / www.agdglaw.com
**MY BIO  MY VCARD**

This electronic message is from a law firm. It may contain confidential or privileged information. If you received this transmission in error, please reply to the sender to advise of the error and delete this transmission and any attachments.

---

**From:** Jeff Kane <JKane@oandzlaw.com>
**Sent:** Friday, February 17, 2023 10:12 AM
**To:** Chidinma O. Ahukanna <cahukanna@agdglaw.com>; Amy Rapoport Gibson <agibson@agdglaw.com>; Gary P. Hollander <ghollander@agdglaw.com>; M. "Chip" De Preter <cdepreter@agdglaw.com>
**Cc:** Nick Hailey <Nick@oandzlaw.com>; Matt Oppenheim <Matt@oandzlaw.com>
**Subject:** Re: Curry v. Revolution - QuickBooks Database

Counsel,

Again, all we are doing is copying Revolution's QuickBooks data in native format. We are collecting that Court-ordered discovery in accordance with the Federal Rules, Local Rules, and custom and practice. *See, e.g.*, FED. R. CIV. P. 34(b)(2)(E)(i)–(ii) and accompanying notes. There is nothing unusual about this data collection compared to the production of native data in the normal course that would justify the unnecessary additional hurdles you suggest. The process we are undertaking is consistent with the Court's guidance at the last hearing "to develop a mechanism for the plaintiff to get the downloaded QuickBooks data so that they do not have to travel to San Diego." The "new" QuickBooks accounts are simply the mechanism through which Plaintiff (and Defendants) can view the existing QuickBooks data once it's copied.

We are not going to rehash the long history of Defendants' discovery lapses over this data. The Court has ordered Defendants to produce Revolution's QuickBooks data, and Plaintiff has gone to great lengths to propose and implement a process whereby Plaintiff is able copy that data consistent with the Court's guidance. Defendants cannot now condition their production of this Court-ordered discovery on our signing a statement you've drafted or some other conditions.

Jeff Kane
**Oppenheim + Zebrak, LLP**
4530 Wisconsin Avenue NW, 5th Floor
Washington, DC 20016
202.499.2940
jkane@oandzlaw.com | www.oandzlaw.com
    Follow us @OandZLaw

2