# Exhibit 033

| | |
|---|---|
| **From:** | M. "Chip" De Preter |
| **Sent:** | Monday, March 6, 2023 3:33 PM |
| **To:** | Jeff Kane; Chidinma O. Ahukanna; Amy Rapoport Gibson; Gary P. Hollander |
| **Cc:** | Nick Hailey; Matt Oppenheim |
| **Subject:** | RE: Curry v. Revolution - QuickBooks Database |

Jeff,

The process that your expert started weeks ago remains incomplete. Our expert is available until 2:00pm today for a call with intuit.

Once again, your email includes blatant lies. Defendants have not "refused" to provide a copy of its QuickBooks. As I have made abundantly clear on many occasions, and most particularly in in my email of October 10, 2022, "the solution is for Plaintiffs to inspect the quickbooks data and run whatever reports it wants using the actual quickbooks version and database utilized and maintained by Defendants in their regular course of business." You chose not to do that. In fact, you did nothing for months. Finally, when the Court ordered Defendants to keep that offer open for two weeks from February 7, 2023, you still did not come to Revolution. Instead, you hire someone to try and make a copy of the database. Any alleged prejudice you refer to, and any "ongoing delay" is underline entirely due to Plaintiff's failures.

As I noted above, our expert is available if your expert would like to set up a call. However, at this point, our view of this situation is that your methods of trying to copy the database are ineffective. It has been a month since the Court ordered "you got two weeks rather than one. So that's the offer. I'm satisfied that that's the offer that was made. I'm satisfied that that offer is sufficient to cover the points that we're talking about here. And so you got two more weeks. Take them up on the offer. That's enough time for you to – for somebody to make arrangements to go out to San Diego for a day or two to look at the stuff." We believe that we are entitled to a protective order terminating this perpetual process or in the alternative giving Plaintiffs what the Court originally ordered, namely, a day or two to travel to San Diego and actually look at the data.