IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHARLES CURRY, d/b/a GET DIESEL NUTRITION,<br>        Plaintiff,<br>   v.<br>REVOLUTION LABORATORIES, LLC et al.<br>        Defendants. | Case No. 1:17-cv-02283<br><br>Judge Matthew F. Kennelly |

**Plaintiff's Opposition to Defendants' Motions *in Limine* re QuickBooks Data**

Less than seven weeks before trial, Defendants are attempting to introduce key documents that Defendants refused to produce during discovery, that were not disclosed on Defendants' Rule 26 disclosures, that Plaintiff has never seen, that are not on Defendants' exhibit list, and that relate to merits discovery that ended in February of 2021. The closest Defendants came to producing these documents was asking Plaintiff to "inspect" a collection of over 123,000 documents, of which the relevant documents comprised some subset. The Court should deny Defendants' motion.

Defendants' plan is obvious: Defendants realized that they wanted to use at trial financial documents they never produced during discovery, and tried to cure this failure by asking Plaintiff to travel to California to inspect Defendants' QuickBooks databases. But Defendants attached plainly unacceptable conditions to their offer: (1) Plaintiff had to agree in advance that all the QuickBooks records would be admissible at trial, (2) Defendants pretended the databases could be viewed only from Defendants' office in California, and (3) Defendants wanted to sit in on Plaintiff's privileged conversations with co-counsel and Plaintiff's expert during the inspection. This "offer" was no offer at all, no matter how many times they repeated it.

Defendants ask this Court to excuse their characteristic discovery misconduct by rendering all these unproduced documents, which neither Plaintiff nor the Court has seen, admissible. This Court should reject Defendants' extraordinary and unsupported request.

1

## ARGUMENT

**I. Defendants hope to correct a discovery failure by belatedly introducing key documents.**

For eleven of the twelve products at issue in this case, Defendants did not produce any documents concerning their expenses: no profit-and-loss statements, no QuickBooks reports, no receipts, an no expert testimony. No doubt, if allowed to introduce never-produced QuickBooks documents, Defendants will offer reports from QuickBooks claiming to show expenses related to these products. But because those documents were never produced, those claimed expenses have not been subject to any discovery scrutiny: none of Revolution's witnesses were asked about them, Plaintiff could not contact third parties to verify whether the expenses are real, and Plaintiff's damages expert could not opine on them. And for *none* of the twelve products at issue have Defendants produced records like receipts, invoices, purchase orders, or payment records. Defendants' plan to fix this discovery failure is to offer reports that they claim are valid and from QuickBooks.

Defendants cannot be allowed, one month before trial, to cherry-pick helpful documents from their QuickBooks databases and produce them for the first time. Such a ruling would allow Defendants to claim that certain helpful documents are representative of the databases as a whole when in fact they may not be, and would allow Defendants to claim that various expenses relate to the infringing products, when in fact they may relate products not at issue in this case.

Plaintiff has every reason to question Defendants' QuickBooks data because Defendants themselves question it. Barry Nussbaum testified that one key item on Revolution's balance sheet was "a mistake", Ex. 1, and that another was "stone cold wrong", Ex. 2. Defendants claim that their QuickBooks records show overall sales by Revolution across all products of only $8.3 million. But Joshua Nussbaum swore under penalty of perjury that Revolution's total sales (for an even shorter period) were $15.5 million. Dkt. 44-1 ¶¶ 5, 6. And Defendants' own accounting

2

manager testified to a total lack of knowledge about where the numbers in the Diesel Test P&L came from, and whether there were underlying records to support them. Ex. 3.

Defendants should not be allowed to offer these questionable records, none of which were subjected to the scrutiny of discovery.

## II. Defendants cannot "produce" documents on which *Defendants* intend to rely by asking Plaintiff to inspect those documents for them.

It is thus *Defendants*, not Plaintiff, who wish to rely on the documents in question. When Defendants first asked Plaintiff to inspect their QuickBooks databases in September 2022, it was so that *Defendants* could introduce their Diesel Test P&L. Dkt. 351-2 ¶¶ 11–13. But rather than arranging an inspection, Defendants chose to produce a report from their QuickBooks database instead. Dkt. 351 at 2–3. And Plaintiff has foregone the request for bank statements that prompted Defendants' more recent "offer" of inspection in 2023 Dkt. 344 at 2.

Plaintiff requested these documents during fact discovery, and Defendants chose not to provide them. Dkt. 351-2 ¶ 9. Having declined to produce responsive documents in discovery (for inspection or otherwise), Defendants cannot now shift the burden of production to Plaintiff by pointing Plaintiff to Defendants' voluminous databases and saying "the documents are in there."

## III. Defendants never made these documents available for inspection.

Both of Defendants' requests for Plaintiff to inspect Defendants' databases included conditions any reasonable litigant would find unacceptable.

In March of 2023, Defendants explicitly conditioned any inspection on Plaintiff's agreeing in advance that all the materials in Defendants' QuickBooks databases would be admissible at trial, subject only to relevance objections. Dkt. 344-1 at 2, Mar. 10, 2023 De Preter Email ("Our willingness to allow your tardy inspection and copying of the Quickbooks records is subject to your agreement that we can use such information at trial as stated above . . . ."). In September 2022, Defendants went a step further, claiming that simply by asking Plaintiff to inspect the

3

databases, Defendants became entitled to introduce any document from the databases.[1]

Defendants also attached several other conditions. Defendants wanted to sit in on Plaintiff's privileged conversations during the inspection, Dkt. 351-2 ¶ 18; they would not allow Plaintiff to use device with sufficient speed to conduct the inspection efficiently, *id.*; and even though the databases are available online, Dkt. 351-1 ¶ 20, Defendants insisted that the inspection had to be conducted at Revolution's offices in San Diego, Dkt. 351-3 at 12. And, Defendants would make the databases available only for "a day or two", plainly not enough time for Plaintiff to review the 320,000 transactions and 123,000-plus documents in the databases, Dkt. 344-1 at 2. These "offers" do not constitute production of the QuickBooks data. The lone case Defendants cite, *Cox v. Royal Caribbean Cruises, Ltd.*, lacks the dispositive features of Defendants' motion. In that case, the defendant had placed no restrictions on the plaintiff's ability to conduct the inspection in question (an inspection which involved simply looking underneath the carpet where a slip-and-fall accident occurred). No. 10-cv-22232, 2012 WL 13036848 (S.D. Fla. Mar. 14, 2012) at *1–2. Here, Defendants placed so many restrictions on the inspection as to render it unworkable.

Equally objectionable, Defendants insisted that Plaintiff conduct any inspection in the dark, having no idea which of the 123,000-plus documents in Defendants' QuickBooks databases Defendants would claim are relevant or seek to introduce at trial. This is entirely backwards. It is not Plaintiff's burden to sift through massive amounts of data, only to have Defendants later disclose what of that data are responsive or that Defendants intend to introduce.[2]

---

[1] Dkt. 351-3 at 10 (Novel Sep. 27, 2022 Email) ("Defendants' Quickbooks data has now been provided in accordance with the Federal Rules of Civil Procedure. We reserve the right to utilize any and all of [Defendants' QuickBooks] data, including any summaries thereof.").

[2] *Hagemeyer N. Am., Inc. v. Gateway Data Scis. Corp.*, 222 F.R.D. 594, 598 (E.D. Wis. 2004) ("When producing documents, the responding party cannot attempt to hide a needle in a haystack by mingling responsive documents with large numbers of nonresponsive documents."); *Wagner v. Dryvit Sys., Inc.*, 208 F.R.D. 606, 610 (D. Neb. 2001) (same)"Dryvit asserts that directing plaintiffs to find the discovery among

4

**IV. Plaintiff's Motions in Limine 3 and 4 should be granted.**

In September 2022, the Court held that Defendants could introduce the P&L for Diesel Test if Defendants produced the records underlying that P&L. Dkt. 292. Because Defendants never produced the data underlying the QuickBooks file, the Court should grant Plaintiff's motions in limine 3 and 4 (Dkt. 285 at 8–11).[3]

## CONCLUSION

This Court should (1) grant Plaintiff's motion (Dkt. 351) and preclude Defendants from referring to, relying on, or introducing into evidence any QuickBooks documents not already provided to Plaintiff; (2) deny Defendants' motion requesting *carte blanche* to introduce any QuickBooks documents (Dkt. 350 at 8); (3) deny Defendants' motion to preclude Plaintiff from asserting that Defendants' QuickBooks files were not produced (Dkt. 350 at 1); and (4) grant Plaintiff's Motions *in Limine* Nos. 3 and 4 to exclude the Diesel Test P&L (Dkt 285 at 8–13).

Dated: March 30, 2023

Respectfully submitted,

*/s/ Jeff Kane*
Matthew J. Oppenheim (443698)
Scott A. Zebrak (452649)
Nicholas C. Hailey (admitted *pro hac vice*)
Jeff Kane (admitted *pro hac vice*)
OPPENHEIM + ZEBRAK, LLP
4530 Wisconsin Avenue, NW, 5th Floor
Washington, DC 20016
Tel: 202-480-2999
matt@oandzlaw.com
scott@oandzlaw.com
nick@oandzlaw.com
jkane@oandzlaw.com

---

volumes of irrelevant information complies with Federal Rules of Civil Procedure. To the contrary, producing large amounts of documents in no apparent order does not comply with a party's obligation under Rule 34.").

[3] In addition to being inadmissible as a summary under FRE 1006, the P&L should be excluded as hearsay under FRE 801(c) and as unfairly prejudicial under FRE 403. *See* Dkt. 285 at 10–11. And Mr. Turner's testimony should be excluded not just because the underlying records have not been produced, but because he testified to having no personal knowledge of the items in the P&L. Dkt. 285 at 11–13.

5