**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CHARLES CURRY, d/b/a GET DIESEL NUTRITION, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | Case No. 1:17-cv-02283 |
| REVOLUTION LABORATORIES, LLC; REV LABS MANAGEMENT, INC.; JOSHUA NUSSBAUM; and BARRY NUSSBAUM, | ) ) ) ) ) | Judge Matthew F. Kennelly |
| Defendants. | ) ) | |

<u>**PLAINTIFF'S MOTION FOR A FINDING OF LIABILITY ON HIS
ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT CLAIM**</u>

**INTRODUCTION**

Last Monday, May 22, 2023, a jury found that all three Defendants in this case willfully infringed Plaintiff's "Diesel Test" trademark, finding for Plaintiff on his federal and state-law infringement claims. Dkt. 377 (Verdict Form ¶¶ 1–2). Prior to trial, the parties had agreed that Plaintiff's separate claim under the Illinois Uniform Deceptive Trade Practices Act ("IUDTPA") would be decided by the Court, rather than the jury, given that the IUDTPA provides for injunctive relief and attorneys' fees as opposed to monetary damages. Hr'g Tr. 5:19–23 (Apr. 6, 2023). Accordingly, Plaintiff now moves for a finding that all three Defendants willfully violated the IUDTPA.

The jury's verdict that the Defendants willfully infringed Plaintiff's trademark resolves nearly every aspect of Plaintiff's IUDTPA claim. It is well-established that where the underlying facts of an IUDTPA claim are the same as a parallel trademark infringement claim, establishing trademark infringement likewise establishes an IUDTPA violation. That is because a violation of

1

the IUDTPA requires only that the Defendants caused a likelihood of confusion. Since likelihood of confusion is an element of trademark infringement, the jury's finding in this case that the Defendants willfully infringed Plaintiff's Diesel Test trademark necessarily establishes that the Defendants willfully violated the IUDTPA. The only additional element of an IUDTPA claim is a connection to Illinois. Here, that connection is established both by Defendant Joshua Nussbaum's trial testimony attesting that Defendants sold their infringing Diesel Test product in Illinois, and by Defendants' own sales records proving hundreds of infringing sales in Illinois.[1]

Accordingly, the Court should hold that all three Defendants are liable for violating the IUDTPA and that their deception was willful.[2]

## ARGUMENT

### I. Defendants violated the IUDTPA.

#### A. The jury's verdict and the Defendants' liability stipulation establish a likelihood of confusion.

The IUDTPA prohibits any deceptive trade practice that creates a likelihood of confusion among consumers. 815 ILL. COMP. STAT. ANN. 510 § 2(a) ("A person engages in a deceptive trade practice when, in the course of his or her business . . . the person . . . (2) causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods

---

[1] Given Defendants' stipulation and the jury's findings, Plaintiff asked Defendants to stipulate to IUDTPA liability and willfulness as to all three Defendants. Defendants declined to stipulate to individual liability under the IUDTPA as to Barry and Joshua Nussbaum or to willfulness as to any Defendant, and did not offer a reason for their refusal. Kane Decl. ¶ 6. Accordingly, Plaintiff files the present motion.

[2] If the Court grants this motion and finds Defendants liable for willfully violating the IUDTPA, Plaintiff intends to move for a permanent injunction and an award of attorneys' fees under both the IUDTPA and the Lanham Act. Plaintiff believes it is more efficient to move for an injunction and attorneys' fees under both statutes at once, rather than separately.

or services;" or "(3) causes likelihood of confusion or of misunderstanding as to affiliation, connection, or association with or certification by another . . . .").

The law makes clear that a finding that the Defendants violated the Lanham Act is sufficient to establish a likelihood of confusion in violation of the IUDTPA. *See, e.g.*, *AHP Subsidiary Holding Co. v. Stuart Hale Co.*, 1 F.3d 611, 619 (7th Cir. 1993) ("The state unfair competition claim is analyzed under the likelihood of confusion standard and thus mirrors our infringement analysis."); *UL LLC v. Am. Energy Prod., LLC*, 358 F. Supp. 3d 753, 758 & n.2 (N.D. Ill. 2019) (Kennelly, J.) (recognizing that a "parallel state law" claim for violating the Illinois Uniform Deceptive Trade Practices Act is "subject to precisely the same standards as the federal infringement claims"); *Dynamic Fluid Control (PTY) Ltd. v. Int'l Valve Mfg., LLC*, 790 F. Supp. 2d 732, 739 (N.D. Ill. 2011) ("[W]here factual allegations underlying a Lanham Act claim also form the basis for a claim under the DTPA, the DTPA claim must rise or fall based on the Lanham Act claim."); *Morningware, Inc. v. Hearthware Home Prod., Inc.*, 673 F. Supp. 2d 630, 639 (N.D. Ill. 2009) ("Where a plaintiff's factual allegations under the Illinois Uniform Deceptive Trade Practices Act also form the basis for plaintiff's claim under the Lanham Act, the legal inquiry is the same under both statutes.") (internal quotations omitted throughout).

Here, there should be no dispute as to the Defendants' liability under the IUDPTA. As to Revolution, all three Defendants stipulated that "[a]ctual confusion has occurred among consumers in the marketplace between Plaintiff's common law Diesel Test mark and Revolution's Diesel Test branded product," and that "Revolution is liable for infringing Plaintiff's Diesel Test mark" under Plaintiff's Lanham Act and Illinois trademark claims. Dkt. 156 ¶ 1, 2. Given those admissions, Revolution should also be held liable under the IUDTPA. The jury's finding that Revolution

*willfully* infringed Plaintiff's trademark, Dkt. 377 (Verdict Form) ¶¶ 1–2, further underscores that Revolution is liable under the IUDPTA as well.

Likewise, Barry and Joshua Nussbaum are also liable for violating the IUDTPA. The standard for individual liability under the IUDTPA is the same *Dangler* standard (personal participation in the infringing activity) that the jury applied in holding the Nussbaums individually liable for trademark infringement. *See, e.g.*, *Desmond v. Chicago Boxed Beef Distributors, Inc.*, 921 F. Supp. 2d 872, 885–87 (N.D. Ill. 2013) (applying the same *Dangler* individual liability standard to determine individual liability for Lanham Act claim and IUDTPA claims); *Jones Day v. Blockshopper LLC*, No. 08 CV 4572, 2008 WL 4925644, at *2, *6 (N.D. Ill. Nov. 13, 2008) (applying the *Dangler* standard to decide a motion to dismiss on individual liability for both trademark infringement and IUDTPA claims). Thus, the jury's finding of individual liability against Barry and Joshua Nussbaum for trademark infringement, Dkt. 377 (Verdict Form) ¶ 1, likewise requires that they be held individually liable for violating the IUDPTA.

That finding was supported by overwhelming evidence of the Nussbaums' personal participation in the infringing activity, including the following:

- Joshua Nussbaum "decided to use the Diesel Test name" on Revolution's infringing product. Rough Trial Tr. 41:18–20 (May 16, 2023 (AM)). He was "involved in creating the Diesel Test label." *Id.* at 41:25–42:2. He "made the decision about how to price Revolution's infringing Diesel Test product." *Id.* at 42:18–20. Joshua Nussbaum also personally participated in the sale of the infringing product: he "played a role in selling Diesel Test to distributors and retailers," he was "involved in Revolution sales of Diesel Test through Amazon," and he "managed sales of Diesel Test through eBay." *Id.* at 87:8–12; 73:10–12; 80:13–24. Along with his father Barry Nussbaum, Joshua Nussbaum "made the decision to continue selling Diesel Test after receiving Mr. Curry's cease and desist communication," and to just "let him sue us." *Id.* at 68:23–69:13; PX-1 at 1. He made the decision to continue selling Diesel Test even after Mr. Curry filed the instant lawsuit. Rough Trial Tr. 65:1–3 (May 16, 2023 (PM)). And he applied for a federal trademark registration in Diesel Test, despite knowing that Mr. Curry possessed a common law trademark on that name. PX-5; Rough Trial Tr. 92:19–93:1 (May 16, 2023 (AM)).

- Barry Nussbaum consulted with his son and approved the use of the Diesel Test name before the launch of the infringing product. Rough Trial Tr. 95:16–96:17 (May 16, 2023 (PM)). He also was "involved in the decision to continue selling Revolution's Diesel Test product after receiving [Mr. Curry's] cease and desist," and he "agreed" that the company "should ignore Mr. Curry's cease and desist request and let him sue the company." Rough Trial Tr. 56:2–5, 59:11–14 (May 17, 2023 (AM)). He approved Joshua Nussbaum's filing of the Diesel Test trademark application, despite knowing that Mr. Curry possessed a common law trademark on that name. PX-1 at RL_000462 ("Yesssssssss."). And, despite being the "highest-ranking executive at the company" and having the authority to "decide to stop selling Revolution's Diesel Test product at any time," he never instructed anyone to stop selling the infringing product. Rough Trial Tr. 88:11–13; 88:23–25 (May 16, 2023 (PM)); Rough Trial Tr. 67:7–10 (May 17, 2023 (PM)).

For all these same reasons, the Nussbaums are individually liable for violating the IUDTPA.

### B. Defendants' sales to Illinois customers establish the requisite connection to Illinois.

This Court has explained that for an IUDTPA violation to be actionable, the dispute must have occurred primarily and substantially in Illinois. Dkt. 195 at 17. Importantly, the case law makes clear that the dispute need not have occurred *exclusively* in Illinois. Rather, courts have found a sufficient connection to Illinois where a trademark was infringed in multiple states, so long as one of those states was Illinois. *See, e.g.*, *Specht v. Google, Inc.*, 660 F. Supp. 2d 858, 866 (N.D. Ill. 2009) (finding the requisite connection to Illinois because "[t]he alleged infringement took place on the Internet and was international in scope, presumably occurring in Illinois."); *Republic Techs. (NA), LLC v. BBK Tobacco & Foods, LLP*, No. 16 C 3401, 2022 WL 910862, at *3 (N.D. Ill. Mar. 29, 2022) (finding a sufficient connection to Illinois because the plaintiff "alleged, and the evidence showed, that [the defendant]'s false advertising claims occurred nationwide, including in Illinois . . . ."); *Purepecha Enterprises, Inc. v. El Matador Spices & Dry Chiles*, No. 11 C 2569, 2012 WL 3686776, at *5, *15 (N.D. Ill. Aug. 24, 2012) (finding a sufficient connection to Illinois where the infringing product was sold in Illinois, even though it also was sold in California and Texas). This makes good sense. An infringer should not be able to shield itself from

liability in Illinois by expanding its infringement to other states. Otherwise, "any plaintiff suing under this statute would face significant difficulty in protecting themselves when a defendant employs a nationwide false advertising campaign. *Republic Techs.*, 2022 WL 910862 at *4. "If all conduct must occur within Illinois . . . the statute which seeks to protect plaintiffs from this kind of harm loses much of its efficacy." *Id.*

Courts consider four factors in deciding whether there is a sufficient connection to Illinois: "(1) the plaintiff's residence, (2) where the misrepresentation was made, (3) where the damage to the plaintiff occurred, and (4) whether the plaintiff communicated with the defendant in Illinois." *IPOX Schuster, LLC v. Nikko Asset Mgmt. Co.*, 191 F. Supp. 3d 790, 808 (N.D. Ill. 2016).

Here, all four factors support a connection to Illinois. First, the Plaintiff is an Illinois resident. PX-27 at 1. Second, Defendants' misrepresentations (here, the use of Plaintiff's trademark) occurred in Illinois, because Defendants undisputedly sold their infringing product in Illinois. Defendant Joshua Nussbaum testified at trial that Revolution sold its infringing Diesel Test to customers in Illinois. Rough Trial Tr. 42:24–43:3 (May 16, 2023 (AM)). He also filed an affidavit acknowledging that for the period October 14, 2016, through June 1, 2017, Revolution sold 1,130 units of Diesel Test to 767 consumers in Illinois, resulting in sales of $71,461. PX-174 (Dkt. 44-1) at ¶¶ 5, 7, 8. Mr. Nussbaum confirmed the contents of that affidavit and the specific Illinois sales identified in his trial testimony. Rough Trial Tr. 43:14–17, 44:4–44:23 (May 16, 2023 (AM)). Moreover, Defendants' internal sales records for the period October 1, 2016 through October 31, 2017 show more than 1,500 sales to Illinois customers. PX-149 (Defendants' Limelight sales records); Kane Decl. ¶ 5. Third, the damage to the public (*i.e.*, the confusion created) also occurred in Illinois by virtue of Defendants' sales in Illinois. Likewise, the damage to Plaintiff occurred in Illinois because Plaintiff resides in Illinois. Fourth, Defendants' sales to

Illinois necessarily involved communication with Illinois customers. Defendants also communicated with Plaintiff in Illinois by responding to one of his initial cease-and-desist communications. PX-23 (Revolution responding to one of Mr. Curry's cease-and-desist messages).

Therefore, the requirement for a connection to Illinois plainly is satisfied here.

## II. Defendants acted willfully.

The evidence presented at trial and the jury's finding of willfulness against all three Defendants also clearly establishes that the Defendants willfully violated the IUDTPA.

In the context of the IUDTPA, willful conduct is defined as conduct that is "voluntary and intentional, but not necessarily malicious." *Republic Techs.*, No. 16 C 03401, 2023 WL 3004625 at *6 (internal quotations omitted). Here, the jury concluded not only that all three Defendants acted willfully, but also that punitive damages were appropriate against all three Defendants. Dkt. 377 (Verdict Form) ¶¶ 2, 4. The jury's conclusions were supported by ample evidence at trial, including the following:

- The evidence indicated that the Defendants' infringement was willful from the very beginning. Revolution's infringing Diesel Test product used the exact same name as Mr. Curry's Diesel Test product, with similar lettering and font, and similar packaging. PX-12, 13; Rough Trial Tr. 43:13–44:2 (May 22, 2023 (AM)). It is difficult to believe that this was a coincidence.

- In any event, Defendants' infringement undisputedly became willful after they ignored Mr. Curry's repeated cease-and-desist requests and made the affirmative decision to continue their infringement. Mr. Curry sent Defendants three cease-and-desist communications informing them that their product was infringing his Diesel Test trademark. PX-23, PX-24. After receiving these cease-and-desist requests, Defendants chose to "ignore" Mr. Curry, continue selling their infringing product, and just "let him sue us." Rough Trial Tr. 59:11–14 (May 17, 2023 (AM)) (testimony of Barry Nussbaum: "Q. You were—you agreed with your son, did you not, Mr. Nussbaum, that you should ignore Mr. Curry's cease and desist request and let him sue the company, right? A. Yes."); PX-1 at 1.

- Upon receiving Mr. Curry's cease-and-desist letters, the Defendants did not search for the "Diesel Test" product name on Amazon, did not contact Mr. Curry, and did not click on the links he provided to his product web sites. Rough Trial Tr. 53:16–18, 60:23–61:15, 54:14–55:6 (May 17, 2023 (AM)).

- Defendants likewise continued selling the infringing product for months after their product was banned from Amazon due to Mr. Curry's counterfeit complaint. Rough Trial Tr. 82:12–83:4 (May 15, 2023 (PM)); Rough Trial Tr. 78:22–79:24 (May 16, 2023 (AM)); PX-6.

- Indeed, Defendants continued infringing for months after Mr. Curry filed the instant lawsuit. Rough Trial Tr. 84:6–85:10 (Mr. Curry testifying that Revolution continued selling his product after he filed the instant suit in March 2017); Dkt. 44-1 (Joshua Nussbaum admitting in an affidavit that Revolution continued selling Diesel Test into the first quarter of 2018); Rough Trial Tr. 64:12–16 (May 16, 2023 (PM)) (Joshua Nussbaum testifying as to the same).

Numerous courts have found that such continued infringement after clear notice or the filing of a lawsuit constitutes willful conduct. *See, e.g.*, *Neuros Co. v. KTurbo, Inc.*, No. 08-CV-5939, 2013 WL 1706368, at *4 (N.D. Ill. Apr. 17, 2013) (finding willfulness where defendant continued infringing after the lawsuit was filed); *Chicago's Pizza, Inc. v. Chicago's Pizza Franchise Ltd. USA*, 384 Ill. App. 3d 849, 868–69, 893 N.E.2d 981, 998 (2008) (same); *Bingham v. Inter-Track Partners*, 234 Ill. App. 3d 615, 621, 600 N.E.2d 70, 75 (1992) (finding willfulness where the defendant continued infringing after receiving a cease-and-desist letter).

Here, just as the jury found, there can be no doubt that Defendants' deceptive trade practices under the IUDTPA were willful.

## CONCLUSION

Accordingly, consistent with the jury's findings at trial, this Court should hold that all three Defendants are liable for violating the IUDTPA and that their violation was willful.

Dated: May 30, 2023

Respectfully submitted,

*/s/ Jeff Kane*
Matthew J. Oppenheim (443698)
Scott A. Zebrak (452649)
Nicholas C. Hailey (admitted *pro hac vice*)
Jeff Kane (admitted *pro hac vice*)
OPPENHEIM + ZEBRAK, LLP
4530 Wisconsin Avenue, NW, 5th Floor
Washington, DC 20016
Tel: 202-480-2999
matt@oandzlaw.com
scott@oandzlaw.com
nick@oandzlaw.com
jkane@oandzlaw.com