**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION**

| | | |
|---|---|---|
| CHARLES CURRY, d/b/a GET DIESEL NUTRITION, | ) ) ) | Case No. 1:17-cv-02283 |
| Plaintiff, | ) ) | Honorable Matthew F. Kennelly |
| v. | ) ) | Magistrate Judge Kim |
| REVOLUTION LABORATORIES, LLC, REV LABS MANAGEMENT, INC., JOSHUA NUSSBAUM, and BARRY NUSSBAUM | ) ) ) ) ) | |
| Defendants. | ) | |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION RESPECTING THE
ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT CLAIM**

**I.     Introduction**

Count II of Plaintiff's Complaint is directed to the Illinois Uniform Deceptive Trade Practices Act. Dkt. 1. Defendants did not stipulate to liability as to Count II, and instead confirmed that "[i]t is disputed as to…(b) whether Revolution is liable under Counts I and II; [and] (c) whether Joshua Nussbaum and Barry Nussbaum are liable on any Counts." Dkt. 156. Accordingly, at all times Plaintiff has had the burden to establish each and every element of its IUDTPA claim as to each Defendant. Plaintiff did not introduce evidence sufficient to hold any Defendant liable under the IUDTPA.

Plaintiff's argument respecting its IUDTPA claim is that the jury found liability generally on his common law trademark infringement claims. However, Plaintiff omits that he failed to introduce evidence respecting the existence of any common law trademark rights in Illinois. Plaintiff introduced no evidence of making even a single sale to any Illinois customer.

In assessing Plaintiff's IUDTPA claim, the Court cannot rely on the Defendants' stipulation that Revolution is liable generally, or that the jury found Defendants liable for

trademark infringement generally. At the summary judgement stage, this Court denied Plaintiff's motion for summary judgment because "the IUDTPA also 'require[s] the dispute occur primarily and substantively in Illinois' " and Curry did not address that element. Dkt. 195, p. 17, quoting *BCBSM, Inc. v. Walgreen Co.*, 512 F. Supp. 3d 837, 856 (N.D. Ill. 2021). At trial, Plaintiff did not address or introduce evidence as to that element either. This Court should find that Plaintiff has not met its burden and deny Plaintiff's motion as to the IUDTPA.

## II. The Evidence Presented at Trial

Plaintiff's motion does not identify any evidence of any sale of Curry's Diesel Test to any customer in Illinois. At trial, he did not provide any testimonial or documentary evidence showing that he made even a single sale of Diesel Test to a customer in Illinois. The closest Curry got to providing evidence on the location of his alleged sales was as follows:

> Q. Where are the customers located who have purchased your products?
> A. Oh, United States -- I don't think of a state I never sold in. Canada. A lot of the other ones. Customers everywhere. A lot of European, but Canada and U.S., Europe.

Trial Tr. 237:1-5. But that does not actually identify any state where the sales occurred. It also does not provide the time frame for when any sales actually occurred (e.g. before or after Revolution first made sales in Illinois). It only confirms that Curry does not know the states where he actually had sales. And of course, Curry testified that he had no records of any sales at all. Trial Tr. 292:12-300:11; 307:8-309:7.

With respect to activities of Joshua and Barry Nussbaum, all of the evidence presented at trial was directed to Joshua and Barry's roles as corporate officers of Revolution Laboratories. Plaintiff failed to introduce evidence sufficient to show that either Joshua or Barry acted outside of their roles as President and CEO respectively or that either acted other than as an officer. He failed to introduce evidence sufficient to show that either Barry or Joshua used the corporation to

carry out their own personal willful and deliberate infringement, that Revolution was an irresponsible corporation, or that either Barry or Joshua used an irresponsible corporation with the purpose of avoiding personal liability. Rather, everything Plaintiff relies on pertains to an officer performing a managerial role in operating the Revolution Laboratories business.

With respect to the evidence that while he was President, Joshua came up with the name Diesel Test and that Barry acquiesced to its use by Revolution, there is no evidence that either acted willfully or knowingly in pursuing deliberate infringement at the time. Rather, the evidence presented established that neither was aware of Curry or his trademark rights at the time. Trial Tr. 478:22-24; 557:3-18. Both Nussbaums testified as to the innocent impetus of the name Diesel Test, that it was descriptive of being "diesel," a slang bodybuilding term. Trial Tr. 657:9-22; Trial Tr. 472:12-473:2. Joshua Nussbaum testified that prior to using the name, he diligently performed a trademark search, did not find Diesel Test and believed that it was available for use. Trial Tr. 471:3-474:14.

More particularly, Curry did not introduce any evidence that Joshua or Barry Nussbaum were personally involved (or in any way personally participated) in the sale of the products that occurred in Illinois. Everything relied on by Plaintiff in arguing that Joshua and Barry Nussbaum were "involved" in the sale of accused products is generalized. See Dkt. 378, p. 4-5.

The evidence further established that Revolution had been in business for years prior to receiving any complaint from Curry, that it had many employees, and sold a number of different products. See Trial Tr. 468:18-469:13; 757:16-758:11; 758:24-759:9; See also Defendants' Exhibit GK including products such as Bella Gold serum, nurivia serum, Lux Allure moisturizer, and Sonix Labs- Garcinia Cambogia weight loss supplement, among many others). While Plaintiff points to Joshua filing a trademark application, the law is clear that filing an application

is *not* use of a trademark, and in any case that application was not filed in Illinois. See *S Indus., Inc. v. Diamond Multimedia Sys., Inc.*, 991 F. Supp. 1012, 1019 (N.D. Ill. 1998) ("no rights are conferred by the mere filing of a federal trademark application"). Plaintiff also points to Barry's lack of ordering the company to stop selling Diesel Test. But that is not an act of infringement. Not acting cannot be converted to an act of deliberate personal infringement.

Finally, both Barry and Joshua testified about the extensive searches that were performed looking for evidence that Curry was actually making sales. Barry testified about his and Revolution's searching online, on Amazon, and on Google. Trial Tr. 638:5-22; Trial Tr. 723:20-724:12. Joshua testified about searching on Google, speaking with multiple distributors, and rechecking trademarks411 all of which failed to uncover any trademark use by Curry. Trial Tr. 486:10-20. Joshua further noted that, despite alleging to have sold on Amazon, Curry failed to provide and ASIN for his product, any example of his product being sold, or any evidence of an actual sale of his product. Trial Tr. 486:21-487:17. Curry confirmed that he had not sought to even apply for trademark registration until December of 2016 (after he contacted Defendants), and that his product was out of stock "most of the year." Trial Tr. 337:9-11; 335:24-336:3.

**III. Plaintiff Failed to Establish Activity that Occurred Primarily and Substantively In Illinois that Violated Any Illinois Rights**

The IUDTPA does not have extraterritorial effect. *LG Elecs. U.S.A., Inc. v. Whirlpool Corp.*, 809 F. Supp. 2d 857, 859-860 (N.D. Ill. 2011). Rather, liability can only occur where the circumstances relating to the disputed transaction occur primarily and substantially in Illinois. *Id*. at 862. In *LG Elecs.*, the Plaintiff argued that it could sue under the IUDTPA where the defendant directed its challenged conduct at consumers nationwide. *Id*. at 859. The court rejected that argument. *Id*. at 861. Instead, the court was clear that liability under the IUDTPA is limited to where the plaintiff establishes that the complained of activity occurred both

4

primarily and substantively within the State of Illinois. *Id*.

Here, Plaintiff complains about common law trademark infringement generally. In the context of a motion *in limine* respecting damages under Counts I and V, this Court concluded that it would not provide any instruction on the geographic scope requirement of common law trademark rights because Defendants had stipulated to Revolution's liability generally. Dkt. 362, p. 5-6. In ruling, the Court noted that if Defendants contended that Plaintiff might have some trademark rights but not nationwide rights, and if Defendants wanted to contest the scope of Plaintiff's ability to enforce its mark, Defendants could have limited the scope of its liability Stipulation. Dkt. 362, p. 5.[1] That is exactly what Defendants did when Defendants refused to stipulate to liability under the IUDTPA. That is further reflected in the negotiations of the Stipulation. Plaintiff initially proposed a stipulation that included the statement "Plaintiff owns and holds common law rights nationwide" and that such rights were "valid, protectable, and superior to any common law rights claimed by Defendants." Exhibit A. Defendant rejected that, and it does not appear in the final Stipulation. Compare Exhibit A and Dkt. 156. Accordingly, Defendants retained their right to contest the existence of Plaintiff's alleged rights in Illinois.

Plaintiff's IUDTPA claim is based on his assertion that he has common law trademark rights in Illinois. However, Plaintiff did not introduce evidence sufficient to establish the existence of any such rights in the State of Illinois as a whole or any particular geographic region of Illinois. Plaintiff further failed to introduce evidence that Defendants each engaged in actions violating any alleged common law trademark rights primarily and substantially in Illinois.

Trademark protection under common law "confers ownership on the person who employs the first actual use of a mark in a genuine commercial transaction." *Planet Hollywood (Region*

---

[1] Defendants maintain that the stipulation was limited, but that issue is not the subject of this motion.

*IV), Inc. v. Hollywood Casino Corp.*, 80 F. Supp. 2d 815, 879 (N.D. Ill. 1999), opinion clarified, No. 96 C 4660, 1999 WL 1186802 (N.D. Ill. Dec. 9, 1999) (cleaned up). "<u>Public sales let others know</u> that they should not invest resources to develop a mark similar to one already used in the trade." *Zazu Designs v. L'Oreal, S.A.*, 979 F.2d 499, 502 (7th Cir. 1992), emphasis added. The adoption of a trademark in one area does not project the right of protection to another area in advance of the extension of the trade, nor does it operate as a claim of territorial rights over areas into which a party may desire to extend the trade in the future. *United Drug Co. v. Theodore Rectanus Co.*, 248 U.S. 90, 98, 39 S. Ct. 48, 51, 63 L. Ed. 141 (1918). "Geographic considerations are also particularly relevant where a plaintiff holds only common-law trademark rights in a mark because it is well-established that the scope of protection accorded his mark is coextensive only with the territory throughout which it is known and from which it has drawn its trade." *Tana v. Dantanna's*, 611 F.3d 767, 780 (11th Cir. 2010) citing *Hanover Star Milling Co. v. Metcalf*, 240 U.S. 403, 416, 36 S.Ct. 357, 361, 60 L.Ed. 713 (1916), superseded by statute in irrelevant part as stated in *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 105 S.Ct. 658, 83 L.Ed.2d 582 (1985). De minimis sales, or sporadic sales are insufficient to establish trademark rights. *S Indus.*, 991 F. Supp. at 1019 (N.D. Ill. 1998) ($5301.00 in sales from 1986-1988 was not sufficient to establish rights); *Zazu Designs,* 979 F.2d at 503 (A few over the counter sales in Hinsdale Illinois and a few more in Texas and Florida was insufficient).

Curry contended that he advertised in the United States and online, but that is legally insufficient to establish common law rights in a specific geographic location. Indeed, "[m]ere advertising of a product and documentary use of a symbol apart from the goods does not constitute trademark use." *Avakoff v. Southern Pacific Co.,* 765 F.2d 1097, 1098 (Fed.Cir.1985). Rather, the test for establishing rights is a collective review of "(1) the volume of sales of the

6

trademarked product; (2) the growth trends (both positive and negative) in the area; (3) the number of persons actually purchasing the product in relation to the potential number of customers; and (4) the amount of product advertising in the area." *V & V Food Prod., Inc. v. Cacique Cheese Co.*, 683 F. Supp. 662, 668 (N.D. Ill. 1988).

At all times it remained Plaintiff's burden to establish the geographic regions in which he had sufficient reputation, advertising, and sales of sufficient volume. Here, Plaintiff failed to introduce any evidence that he had ever made even a single sale of Diesel Test to even one customer in Illinois. There was no evidence of any growth trends of sales to Illinois customers or his ratio of sales to the segment of approximately 12 million Illinois people that might be customers.[2] In the absence of bona fide commercial transactions involving Plaintiff's Diesel Test in Illinois, Plaintiff cannot show he has common law trademark rights in Illinois.

While Plaintiff pronounces that Revolution's sales in Illinois establish infringement, that is not the case at all. In fact, in view of the legal precedent set forth above establishing that the first company to enter the market through sales of a new product is entitled to common law rights, the fact that Curry presented no evidence of sales in Illinois and the only evidence of any product being sold in Illinois is the evidence of Revolution's sales, the law and evidence support a determination that Revolution had prior and superior rights to the Diesel Test mark in Illinois.

And even if Plaintiff had made some sales, there is no evidence that the geographic region(s) where any such sale(s) occurred overlapped with sales made by Revolution. Indeed, Plaintiff points to 1,500 sales made by Defendants in Illinois, but Plaintiff points to nothing that shows he had any market penetration in any geographic area overlapping even one of those sales.

Consequently, none of the Defendants is liable under the IUDTPA as Plaintiff failed to

---

[2] https://www.census.gov/quickfacts/fact/table/IL

introduce evidence sufficient to establish that it had common law trademark rights at the time Revolution sold the accused product.

Plaintiff relies on a smattering of cases to argue that it proved its UDTPA claim. Dkt. 375, p. 5. Those cases are not determinative or even helpful. *Specht v. Google, Inc.* involved a motion to dismiss, not actual liability. 660 F. Supp. 2d 858, 866 (N.D. Ill. 2009) ("Thus, the Court finds that, based on the factual allegations discussed above, the FAC has stated a DTPA claim against Google."). In *Purepecha Enterprises, Inc. v. El Matador Spices & Dry Chiles*, the court considered and denied motions for summary judgment due to factual issues. No. 11 C 2569, 2012 WL 3686776, at *16 (N.D. Ill. Aug. 24, 2012). Finally, in *Republic Techs. (NA), LLC v. BBK Tobacco & Foods, LLP*, the jury had evidence that included proof that false advertisements had been made in Illinois and that Plaintiff had lost sales as well. No. 16 C 3401, 2022 WL 910862, at *3 (N.D. Ill. Mar. 29, 2022). Here, Plaintiff introduced no evidence of lost sales. Also, Plaintiff failed to establish that any infringing activity occurred in Illinois as he failed to establish any common law trademark rights in Illinois or even that he made any sales in Illinois (or any region in Illinois) prior to Revolution selling in any geographic region in Illinois.

In sum, the totality of the factors considered in determining whether a defendant could be liable for violation the IUDTPA weight against liability in this case. True, the Plaintiff's residence is in Illinois. However, there was insufficient evidence of any infringement of any Illinois common law trademark. There is no damage caused to Plaintiff by any Illinois activity. And aside from a single Facebook message response from Revolution—where it was impossible for Revolution to know the location of the person sending the Facebook message—no Defendant sent any communications to Plaintiff. The foregoing confirms that the circumstances of any allegedly infringing activity did not occur primarily or substantially in Illinois, much less both.

**IV.     Neither Barry Nussbaum Nor Joshua Nussbaum Can Be Individually Liable**

There is no dispute that Barry and Joshua were CEO and President of Revolution, respectively. Curry did not assert a veil-piercing or alter-ego claim. Yet, Curry seeks to hold both men individually liable for the sales of products made by Revolution. Plaintiff argues that because the jury found each person generally liable this Court should find them liable in Illinois too. But under *Dangler v. Imperial Mach. Co.*, 11 F.2d 945, 947 (7th Cir. 1926) individual liability requires a special showing that "the officer acts willfully and knowingly—that is, when he personally participates in the manufacture or sale of the infringing article (acts other than as an officer), or when he uses the corporation as an instrument to carry out his own willful and deliberate infringements, or when he knowingly uses an irresponsible corporation with the purpose of avoiding personal liability—that officers are held jointly [liable] with the company."

Plaintiff failed to introduce evidence sufficient to establish that either Barry or Joshua personally participated in the manufacture or sale of any allegedly infringing activity (i.e. acted other than as an officer) in Illinois. Plaintiff failed to introduce evidence sufficient to establish that either Barry or Joshua used Revolution as an instrument to carry out his own willful and deliberate infringement of any Illinois trademark right. Finally, Plaintiff failed to introduce evidence sufficient to establish that either Barry or Joshua knowingly used an irresponsible corporation with the purposes of avoiding personal liability for violating any Illinois trademark.

Since *Dangler* was decided, the Seventh Circuit has addressed the issue of individual liability on multiple occasions. Particularly, in *Panther Pumps & Equipment Co. v. Hydrocraft, Inc.*, the court found, based on prior precedent, that "the officers are not liable unless they act outside the scope of their official duties." 468 F.2d 225, 233 (7th Cir.1972) citing *Cazier v. Mackie-Lovejoy Mfg. Co.*, 138 F. 654, 71 C.C.A. 104 and *Reed v. Cropp Concrete Mach. Co.*, 225 F. 764, 141 C.C.A. 90. It went on to state "we adhere to the *Cazier v. Mackie-Lovejoy Mfg.*

9

*Co*. decision, and hold that, in the absence of some special showing, the managing officers of a corporation are not liable for the infringements of such corporation, though committed under their general direction." *Id*., citing *Dangler*, 11 F.2d at 946–48. That continues to be the law in the Seventh Circuit. See *4SEMO.com Inc. v. S. Ill. Storm Shelters, Inc*., 939 F.3d 905, 912 (7th Cir. 2019) (citing *Dangler* and determining that the individuals ignored the corporate form). The same analysis is applied for federal and state law trademark claims. *Microsoft Corp. v. Rechanik*, 2007 WL 2859800, at *3 (7th Cir.2007) citing *McGraw–Edison Co. v. Walt Disney Prods.*, 787 F.2d 1163, 1173–74 (7th Cir.1986); *D 56, Inc. v. Berry's Inc*., 955 F.Supp. 908, 920 (N.D.Ill.1997). See also *FM Indus., Inc. v. Citicorp Credit Servs., Inc.*, 2007 WL 4335264, at *4 (N.D. Ill. Dec. 5, 2007)("The special showing standard is not met when individual defendants have done nothing beyond the scope of their duties as officers and the corporation was not organized to permit the individual defendants to profit from infringement or hide personal liability."). In those cases where an individual was held liable while still acting as an officer, the court was clear that the individual was operating for their own personal gain and misusing the corporation. For example, in *General Motors Corp. v. Provus*, 100 F.2d 562 (7th Cir. 1938), the Seventh Circuit affirmed individual liability where there was evidence of "deliberate conduct on the part of the officers to use the corporation <u>merely to carry on</u> the infringing and unfair practices." *Id.* at 564, emphasis added. That fits with *Dangler*'s misuse of the corporate instrument prong. That is not the case here.

   Here, the evidence established that Revolution was a legitimate, ongoing business concern offering a host of products, none of which infringed Plaintiff's Diesel Test mark. It was not a sham company that merely carried out infringing sales. Nor was it "set up" with the purpose of avoiding liability for the sale of Diesel Test. The company was formed in 2012, four

years before Diesel Test was ever sold. Trial Tr. 354:20-24; 360:19-21; 363:7-12.

Plaintiff further failed to introduce evidence sufficient to establish that either Barry or Joshua used Revolution to carry out his own personal infringement in Illinois. In fact, none of Plaintiff's evidence ties either Barry or Joshua to any particular Illinois activity at all.

With respect to Barry, Plaintiff did not identify any evidence of Barry Nussbaum undertaking any affirmative act with respect to any conduct occurring in Illinois. Rather, Plaintiff argues that Barry <u>did not</u> take affirmative steps to stop Revolution's sale of the accused product. Not acting is no substitute for the *Dangler*'s bases for finding personal liability, all of which require affirmative actions. *See Dangler*, 11 F.2d at 947 (an individual may be held liable "when the officer <u>acts</u> willfully…when he <u>personally participates</u>…, or <u>when he uses</u> the corporation…, or when he <u>knowingly uses</u> an irresponsible corporation….") emphasis added.

Evidence of Joshua Nussbaum's activities also fails to establish a nexus between those activities and the State of Illinois. Everything Plaintiff points to is generic, including the general approval of the Diesel Test name, pricing decisions, general involvement with the company's eBay and Amazon sales, and a decision not to instruct Revolution to stop selling the product. All of those actions are also prototypical managerial decisions of a company officer. They do not show that Joshua was personally responsible sales of products within Illinois as an individual. They do not support a determination that Joshua used Revolution "merely" to infringe in Illinois or used Revolution as an irresponsible company simply in an effort to avoid personal liability. Neither Barry nor Joshua should be held individually liable for any violation of the IUDTPA.

**V.      This Court Should Consider Law that the Jury Was Not Provided as It Further Supports Defendants Lack of Willfulness**

In the event that this Court considers the question of willfulness, it should find that no Defendant willfully violated the IUDTPA.

Prior to trial, Defendants requested that this Court take judicial notice that the case was dismissed in May of 2017. Dkt. 363; Dkt. 47. That was shortly after the complaint was filed and before any discovery took place. Indeed, the Discovery period did not even open until May of 2020, months after the case was reinstated. Dkt. 64; Dkt. 96. When the issue was raised with the Court, Defendants explained that the relevance of the foregoing went directly to punitive damages and the argument that Defendants were acting maliciously. Trial Tr. 138:6-19. Defendants explained that Revolution had completely stopped selling Diesel Test in the time between when the case was dismissed and when it was reinstated, further showing a lack of malicious intent. *Id*. However, this Court ruled that while there was probative value, it was outweighed under Rule 403. Trial Tr. 140:18-142:4.

Prior to trial, Defendants also sought an instruction on the geographic scope of the Plaintiff's use of the mark and that damages must be limited to the geographic markets where Plaintiff could show sales sufficient to establish common law rights. Dkt. 302-2 (PageID# 7981, 9788). Defendants' requested instructions were based on the law of common law trademark rights which required a trademark owner to show actual commercial sales in commerce to obtain trademark rights in those geographic regions in which such use occurred. See Dkt. 302-2 (PageID# 9782; PageID #9794). These instructions were for the purpose of educating the jury as to what constitutes a common law mark. The instructions further informed the jury of the undeniable importance of showing actual commercial sales.

All of the foregoing weighs on the mental state of Barry and Joshua with respect to the allegation of willful infringement. Based on their unrebutted testimony that neither could find any evidence of actual sales of Curry's product, and Curry's failure to introduce evidence of any actual sales of his product in any particular geographic region (including a failure to show any

sales to customers in Illinois), there is insufficient evidence to show that either Joshua or Barry could have willfully infringed the Diesel Test mark in Illinois. All of the evidence presented indicated that at the time of the cease and desist, Curry had not shown he had any trademark rights in the State of Illinois. Curry brought suit, but before discovery commenced, the suit was dismissed. So there remained a lack of evidence of the existence of trademark rights overall. Defendant's then voluntarily stopped marketing and selling Diesel Test years before the case was reinstated and before discovery actually took place. It was only after discovery was underway that Revolution stipulated to liability, but again, no party stipulated to any damages because, while Curry may have had some modicum of trademark rights in the market generally, there was insufficient evidence of the geographic regions where such rights existed, including Illinois.[3]

      This Court is in a position to take the legal standard governing the existence of trademark rights into account and the underlying lack of evidence as to where and when Curry was actually selling Diesel Test. Based on the record, this Court should hold that there is insufficient evidence to establish that Curry actually had sales of Diesel Test anywhere in Illinois and particularly at any time before Revolution began selling in Illinois and also at the time that Defendants were researching the legitimacy of Plaintiff's claim. Given the lack of evidence of sales, Revolution's sale of Diesel Test cannot constitute willful infringement by any Defendant. To be sure, simply because facts later came to light after discovery commenced in May of 2020—years after Revolution stopped selling the accused product—does not undercut Defendants' good faith belief that back in 2016 and 2017 Plaintiff did not have trademark rights and that Revolution's sales back then did not violate any laws.

      That the case was dismissed, even if only for lack of jurisdiction, supports the lack of

---

[3] Again, there was no stipulation to any nationwide rights; that provision was struck from the stipulation.

willfulness as well. While Curry could have tried bringing his suit in another jurisdiction, he did not. The lack of willfulness is further shown by Defendant's unilateral decision to stop selling the accused product while the case was dismissed. It shows that Defendants had no ill-will or malice toward Curry, nor any intention of purposefully offending any rights that he may ultimately have been able to show. Curry did not produce any discovery during the time period in which Revolution was selling the accused product and he had not filed a verified complaint either. But Revolution made the decision to stop selling anyway.

Plaintiff's willfulness argument is based on Defendants' not stopping selling immediately after receiving a cease and desist. The law does not mandate such action. In the similar context of patent infringement, the court has recognized that that "the mere fact that an accused infringer continues its infringing activity cannot support a finding of willfulness where the accused infringer presents legitimate defenses and did not know of the asserted patents until the filing of the suit." *Civix-DDI, LLC v. Cellco P'ship*, 387 F. Supp. 2d 869, 903 (N.D. Ill. 2005) citing *Gustafson, Inc. v. Intersystems Indus. Prods., Inc.,* 897 F.2d 508, 511 (Fed.Cir. 1990).

Here, the evidence presented shows that Defendants did not know about Curry or his trademark until after he contacted Revolution. At that point, Defendants undertook an extensive search looking for sales of Curry's product in an effort to substantiate his claim. They found none, and Curry did not introduce evidence of a single bona fide sale of Diesel Test at trial. Accordingly, Defendants had legitimate, non-frivolous defenses to the infringement accusation overall and to the IUDTPA accusation specifically. Simply because discovery that took place years after Revolution stopped selling the product which led Defendant to stipulate to liability for trademark infringement—though Defendants maintained their defense to the IUDTPA based on lack of evidence of Illinois sales—does no retroactively transform their initial good-faith belief

14

of non-infringement into evidence of willfulness. See Trial Tr. 487:21-488:5 ("I didn't think I was doing anything wrong. I believed he -- I thought it was a scam or, at the very least, didn't have a registered trademark and, as a result, didn't have rights to it. Nor could I find any evidence that he was selling it in stores or any distributors that, you know, literally sell into stores nationwide, had never heard of the product."); Trial Tr. 493:1-12. At all times, Defendants acted reasonably based on the information available to them.

## VI. Conclusion

Defendants did not stipulate to liability under the UDTPA. Plaintiff failed to introduce evidence sufficient to establish that he had any trademark rights in the State of Illinois. Indeed, he introduced no evidence of sales in the State of Illinois at all. At all times, Defendants proceeded under the good faith belief that Plaintiff had not provided any evidence of any trademark rights in the State of Illinois. Accordingly, Defendants acted reasonably and with good faith defenses to Plaintiff's accusation of violations of the IUDTPA. This Court should deny Plaintiff's motion for judgement against Defendants under the IUDTPA.

Dated: June 7, 2023         Respectfully submitted,

By: */s/ Matthew De Preter*
Gary P. Hollander
Amy R. Gibson
Matthew De Preter
Chidinma O. Ahukanna
ARONBERG GOLDGEHN DAVIS & GARMISA
330 N. Wabash Ave. Suite 1700
Chicago, IL 60611
(p) 312.828.9600
(f) 312.828.9635
ghollander@agdglaw.com
agibson@agdglaw.com
cdepreter@agdglaw.com
cahukanna@agdglaw.com
*Attorneys for Defendants*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on June 7, 2023 a true and correct copy of the foregoing was filed through the ECF filing system which will provide notice to counsel of record.

*/s/ Matthew De Preter*

*Attorney for Defendants*
4869-0742-0775, v. 5