IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHARLES CURRY, d/b/a GET DIESEL NUTRITION, <br><br> Plaintiff, <br><br> v. <br><br> REVOLUTION LABORATORIES, LLC; REV LABS MANAGEMENT, INC.; JOSHUA NUSSBAUM; and BARRY NUSSBAUM, <br><br> Defendants. | Case No. 1:17-cv-02283 <br><br> Judge Matthew F. Kennelly |

**PLAINTIFF'S REPLY IN SUPPORT OF**
**MOTION FOR FINDING OF LIABILITY ON IUDTPA CLAIM**

**Table of Contents**

**Introduction** ................................................................................................................................ 1

**Argument** .................................................................................................................................... 1

    I.    Plaintiff clearly established the requisite connection to Illinois under the IUDTPA. .......... 1

        A.    The evidence satisfies the four-part test for a connection to Illinois. ............................. 1

        B.    Defendants already stipulated to Plaintiff's trademark rights in Illinois. ....................... 2

        C.    Plaintiff need not show his own sales in Illinois to prevail on his IUDTPA claim. ......... 4

    II.    Defendants apply the wrong standard for individual liability under the IUDTPA. ............. 5

    III.    Defendants acted willfully. ................................................................................................ 7

**Conclusion** ................................................................................................................................. 8

**INTRODUCTION**

Defendants' claim that Plaintiff has not shown a sufficient connection to Illinois is contradicted by the evidence at trial, by this Court's prior rulings, and by Defendants' admissions. The evidence at trial clearly showed a sufficient connection to Illinois, including more than 1,500 sales of the infringing product to Illinois purchasers, and actual confusion by Illinois consumers. Unable to quarrel with this evidence, Defendants instead argue that Plaintiff's trademark rights did not include rights in Illinois. But this Court already has rejected that argument as foreclosed by Defendants' stipulation to trademark infringement under Illinois common law. Defendants' other arguments, that there is insufficient evidence of individual liability and willfulness, likewise fail. Both arguments misstate the applicable law and ignore considerable evidence introduced at trial.

**ARGUMENT**

**I.     Plaintiff clearly established the requisite connection to Illinois under the IUDTPA.**

Defendants do not dispute that they stipulated to infringing Plaintiff's trademark and to creating actual confusion, Dkt. 156 ¶ 1–2, or that liability for trademark infringement necessarily establishes a violation of the IUDTPA, Dkt. 378 at 3 (collecting cases). Instead, Defendants attempt to evade liability by arguing that their infringement was not sufficiently connected to Illinois to constitute an IUDTPA violation. But courts use a four-part test to decide whether there is a sufficient connection to Illinois, and Defendants fail even to *mention* this test. Rather, Defendants baselessly claim that Plaintiff's trademark rights did not include rights in Illinois. This Court already has rejected that argument, and should do so again.

**A.     The evidence satisfies the four-part test for a connection to Illinois.**

To determine whether an IUDTPA claim has a sufficient connection to Illinois, courts consider four factors: "(1) the plaintiff's residence, (2) where the misrepresentation was made, (3) where the damage to the plaintiff occurred, and (4) whether the plaintiff communicated with the

defendant in Illinois." *IPOX Schuster, LLC v. Nikko Asset Mgmt. Co.*, 191 F. Supp. 3d 790, 808 (N.D. Ill. 2016) (Kennelly, J.). Plaintiff squarely meets that standard. Dkt. 378 at 6–7.

- On the first factor, Defendants concede that Plaintiff is an Illinois resident. Dkt. 381 at 8.

- As to the second factor, Defendants do not dispute that they sold at least 1,500 units of their Diesel Test product in Illinois, Dkt. 381 at 7; that their product infringed Plaintiff's Illinois common law trademark rights, Dkt. 156 ¶ 2; and that actual confusion resulted, *id. at* ¶ 1. Moreover, the evidence at trial showed that Defendants marketed and sold their infringing product through websites visible to consumers in Illinois. Rough Trial Tr. 45:11–16 (May 16, 2023 (AM)) (Ex. 2).[1] And, Plaintiff presented evidence of a *specific* complaint from an Illinois customer regarding Defendants' infringing Diesel Test and tag-along MRX products:

    > I was Trying to complete my order for one bottle of Diesel Test, when I see your website ADDED a bottle of "MRX" to my order.. I DO NOT WANT AND DID NOT ORDER MRX . . . please send me Diesel Test for $4.95 and REMOVE THE ORDER AND CHARGE FOR MRX . . . OR I WILL FILE A COMPLAINT ABOUT YOUR COMPANY WITH ILLINOIS ATTORNEY GENERAL
    > [Customer name and street address]
    > Chicago, IL. 60642

    PX-38 (Ex. 11) at 2. Thus, there is no question that Defendants made misrepresentations in Illinois.

- On the third factor, Plaintiff was damaged in Illinois due to Revolution's admitted infringement of his trademark, as were the many Illinois consumers who purchased Defendants' infringing product and experienced what Defendants admitted was "actual confusion." Dkt. 156 at ¶¶ 1, 2, *see also* Ex. 11 at 2.

- As to the fourth factor, Defendants concede that they communicated with Plaintiff in Illinois, Dkt. 381 at 8; and they necessarily communicated with the Illinois consumers who Defendants concede bought 1,500 units of Defendants' infringing product online, *id.* at 7.[2]

Thus, applying the proper test, Plaintiff plainly established the necessary links to Illinois.

### B. Defendants already stipulated to Plaintiff's trademark rights in Illinois.

Rather than addressing the factors above, Defendants instead claim that Plaintiff does not

---

[1] *See IPOX*, 191 F. Supp. 3d at 808 (finding allegations of false statements on "a website visible to Illinois consumers" were sufficient to satisfy this element at the motion to dismiss stage).

[2] *See IPOX*, 191 F. Supp. 3d at 808 (finding this element satisfied where defendant "communicated with [plaintiff] in Illinois by email and telephone").

have trademark rights in Illinois. Dkt. 381 at 1. But this Court already rejected that argument because it is contrary to the stipulation into which that all three Defendants entered.

Defendants stipulated that Revolution committed trademark infringement under Illinois common law. Dkt. 156 ¶ 2. Prior to trial, Defendants argued that the stipulation was limited to particular geographic regions. Dkt. 296 at 7 (Defendants' claiming that they had "provided no stipulation as to the validity or enforceability of Plaintiff's mark as a whole *or in any particular geographic region*.") (emphasis added). This Court correctly rejected that argument:

> If Revolution wanted to contest the [geographic] scope of plaintiff's ability to enforce his trademark rights, it could have limited the scope of its liability stipulation. But it didn't. The complaint did not limit plaintiff's claim to any particular geographic area within the U.S. The liability stipulation does not do so either . . . All of the defendants admitted that '[a]ctual confusion has occurred among consumers in the marketplace,' without limitation. In other words, *they didn't say that there was actual confusion only in some geographic areas but not others; it was a general stipulation*.

Dkt. 362 at 5 (emphasis added). The Court likewise rejected Defendants' contention that the stipulation left room for Defendants to argue that Plaintiff does not hold a valid trademark.

> The Court starts with the contention by the defendants that there is no stipulation regarding validity or enforceability. That's just plain wrong. Revolution stipulated to liability on the common law trademark claims . . . *a trademark holder who has an invalid or unenforceable mark can't establish liability . . . Revolution gave up the right to challenge validity and enforceability when it stipulated to liability*.

*Id.* at 4–5 (emphasis added).

Defendants' argument fares no better this time around. All three Defendants admitted that Revolution infringed Plaintiff's trademark under *Illinois* common law. Dkt. 156 ¶ 2. That necessarily concedes that Plaintiff had trademark rights in Illinois. Defendants could not have been liable for trademark infringement under Illinois law if Plaintiff did not have common law trademark rights in Illinois. *See Steak & Brew, Inc. v. Beef & Brew Rest., Inc.*, 370 F. Supp. 1030, 1035 (S.D. Ill. 1974) (plaintiff had a common law trademark claim only insofar as he had

3

established use of the mark within Illinois). Defendants' additional stipulation that "[a]ctual confusion has occurred among consumers in the marketplace," *id.* at ¶ 1, without any geographic limitation or exclusion, further disproves any claim that Plaintiff lacks Illinois trademark rights. Defendants' stipulation thus forecloses any argument that Plaintiff lacks Illinois trademark rights.[3]

Finally, Defendants' suggestion that "Revolution had prior and superior rights to the Diesel Test mark in Illinois", Dkt. 381 at 7, is baseless. Defendants' stipulation forfeits any such defense.

In sum, Defendants' argument that Plaintiff lacks trademark rights in Illinois is meritless.

**C.     Plaintiff need not show his own sales in Illinois to prevail on his IUDTPA claim.**

Defendants argue that they are not liable under the IUDPTA because there is insufficient evidence of Plaintiff's own sales in Illinois. This argument fails for three reasons.

First, Plaintiff's own sales in Illinois would be relevant only to show that Plaintiff had common law trademark rights in Illinois, which is no longer in dispute given Defendants' stipulation. Defendants do not cite any authority suggesting that Plaintiff must make a *separate* showing of Illinois sales to have a IUDTPA claim, and that argument is contrary to the four-factor test discussed above. Rather, Defendants' logic is that without sales in Illinois, Plaintiff cannot have trademark rights in Illinois, and therefore cannot show an IUDTPA violation. But Defendants have *stipulated* that Plaintiff had trademark rights in Illinois.

Second, even ignoring that Plaintiff's own Illinois sales are irrelevant given Defendant's stipulation, Plaintiff *did* present evidence of sales in Illinois. Mr. Curry testified that he could not think of any U.S. state in which he *did not* sell his product. Rough Trial Tr. at 64:1–4 (May 15, 2023 (PM)) (Ex. 1) ("I don't think of a state I never sold in."). That necessarily includes sales in

---

[3] Defendants claim they refused to stipulate that Plaintiff held "nationwide" rights. Dkt. 381 at 5. That does not free Defendants to argue, contrary to the stipulation, that Plaintiff lacks rights in Illinois.

4

Illinois. Although Defendants now complain that Mr. Curry's testimony did not specifically name Illinois, Dkt. 381 at 2, their nitpicking ignores how ordinary people speak. Mr. Curry's testimony at trial conveyed that he had sold Diesel Test in every U.S. state, including Illinois.

Third, even if it were true that Plaintiff had offered no evidence of his own sales in Illinois, that still would not preclude him from holding trademark rights in Illinois. The Seventh Circuit has made clear that courts apply a "totality of the circumstances" test to determine whether a common law trademark exits; evidence of sales is not required.

> In determining whether a party has established rights in a trademark, we take into account all relevant facts—the totality of the circumstances . . . *Evidence of actual sales is not necessary to establish ownership*. A wide variety of sources may demonstrate 'use' sufficient for public identification of a mark, including advertising brochures, catalogs, newspaper ads, and articles in newspapers and trade publications.

*S.C. Johnson & Son, Inc. v. Nutraceutical Corp.*, 835 F.3d 660, 666 (7th Cir. 2016) (internal quotations and citations omitted) (emphasis added). Applying this "totality of the circumstances" test, Plaintiff clearly held a trademark in Diesel Test. He advertised Diesel Test in national publications and online; his product won national awards and received coverage from news and fitness publications; he sold his product through online retailers like Amazon, eBay, A1supplements.com, and dpsnutrition.com; and his company was well-known and recognizable in the weightlifting industry.[4] Thus, even if Revolution had not conceded Plaintiff's Illinois trademark rights, Plaintiff presented ample evidence at trial to establish those rights.

## II. Defendants apply the wrong standard for individual liability under the IUDTPA.

*Dangler* and its progeny make clear individual liability may arise in a number of circumstances. Plaintiff's individual liability claims here were premised on the Nussbaums'

---

[4] Ex. 1 at 54:20–55:23, 58:16–23, 63:11–24, 64:6–15; 65:22–24, 66:23–67:20, 68:8–69:13, 81:12–82:24, 134:2–7; PX-18 (Ex. 8), PX-19 (Ex. 9), PX-20 (Ex. 10).

"personal participation" in Revolution's infringing activity. Consistent with this caselaw, the Court correctly instructed the jury that the Nussbaums are liable if they "personally participated in or directed Revolution's infringing activity." Rough Trial Tr. 13:12–16 (May 22, 2023 (AM)) (Ex. 5). Defendants do not dispute that the standard for individual liability for trademark infringement, as set forth by *Dangler* and its progeny, also governs individual liability under the IUDTPA, Dkt. 378 at 4. Indeed, Defendants rely on *Dangler*. Dkt. 381 at 9. But Defendants misstate the *Dangler* standard applicable to this case, offering an interpretation of it that this Court repeatedly rejected.

Defendants argue that, to establish individual liability, Plaintiff had to prove the Nussbaums "act[ed] outside the scope of their official duties," "acted other than as an officer," "used Revolution as an instrument to carry out his own willful and deliberate infringement of any Illinois trademark right," or "knowingly used an irresponsible corporation with the purposes of avoiding personal liability for violating any Illinois trademark." *Id.* Defendants advocated for this exact same standard in their proposed jury instructions and at trial. Dkt. 302-2 at 67; Rough Trial Tr. 2:13–3:4 (May 22, 2023 (PM)) (Ex. 6). The Court rightly rejected this standard, both at summary judgment and at trial,[5] instructing the jury that the Nussbaums are liable if they "personally participated in or directed Revolution's infringing activity," Ex. 5 at 13:12–16.

Applying the correct standard, the evidence is clear that the Nussbaums personally participated in and directed the infringing activity. Dkt. 378 at 4–5. After receiving Mr. Curry's cease-and-desist communications, Joshua Nussbaum decided to continue selling the infringing Diesel Test product and "let him sue us," was personally involved in sales of the infringing product,

---

[5] Dkt. 195 at 7–8 (the Court: "Seventh Circuit caselaw indicates that officers can be held liable regardless of whether they act within the scope of their duties." (collecting cases)); Ex. 6 at 3:14–18 (the Court's explaining that the law "doesn't require that the person acted outside the scope of his employment, [and] doesn't require that he didn't act in the interest of company. It just requires that the plaintiff prove by a preponderance of the evidence that he personally participated in or directed the infringing activity").

and persisted in these infringing sales even after being banned from Amazon and sued by Mr. Curry. Dkt. 378 at 4. Barry Nussbaum likewise specifically "agreed" that they "should ignore Mr. Curry's cease-and-desist request and let him sue the company," among other things. Rough Trial Tr. 59:11–14 (May 17, 2023 (AM)) (Ex. 4).[6] The jury correctly found the Nussbaums liable for trademark infringement; they likewise are liable for violating the IUDTPA, Dkt. 378 at 4.

### III.   Defendants acted willfully.

The jury found that all three Defendants willfully infringed Plaintiff's trademark. Dkt. 377 at 1 ¶ 1. Because Plaintiff's trademark infringement and IUDTPA claims are premised on the same set of facts, Defendants likewise willfully violated the IUDTPA. Dkt. 378 at 7–8. Defendants' two arguments to the contrary are unavailing.

First, Defendants' contention that they stopped selling their infringing Diesel Test months after Plaintiff's claims were dismissed on jurisdictional grounds in August of 2017 has no bearing on willfulness. As an initial matter, whether Defendants ceased their infringement at the time they claim remains in question. Defendants failed to produce post-October 2017 sales records, and Mr. Curry testified that he observed a Revolution website advertising the infringing Diesel Test product as late as May 2020. Ex. 1 at 91:8–92:25; PX-77 (Ex. 12), 78 (Ex. 13). Regardless, even if Defendants *did* eventually cease their illegal activity, that long-overdue decision does not excuse their prior willful infringement. Dkt. 278 at 7–8. Indeed, Defendants continued to sell their infringing product long after receiving Mr. Curry's cease-and-desist communications, long after Amazon banned their infringing product, and for nearly a *full year* after being served with this

---

[6] Defendants' suggestion that in order to be individually liable, they must have personally participated in sales in Illinois (Dkt. 381 at 11) is similarly unsupported by any caselaw. But even if that were the standard, the above evidence of the Nussbaums' personal involvement would be enough to meet it.

7

lawsuit.[7] What's more, Joshua Nussbaum testified that Defendants stopped selling Diesel Test because it was unprofitable, not out of respect for Plaintiff's trademark. Rough Trial Tr. 25:16–23 (May 16, 2023 (PM)) (Ex. 3).

Second, Defendants are wrong to argue that Plaintiff did not have trademark rights in Illinois and so there was nothing to willfully infringe. Plaintiff did have trademark rights in Illinois, as explained in Part I.B, *supra*. To the extent Defendants mean to argue that they acted in good faith because they believed Plaintiff had no sales, that argument likewise fails. Defendants have no records of the supposedly exhaustive search they claim showed Mr. Curry's lack of sales. Defendants also admitted that they did not even search online for the name "Diesel Test," did not contact Mr. Curry, and did not click on the links to his product in his cease-and-desist communications. Ex. 4 at 53:16–18, 54:14–55:6, 60:23–61:15.

## CONCLUSION

The Court should find that all three Defendants willfully violated the IUDTPA.

Dated: June 27, 2023

Respectfully submitted,

*/s/ Jeff Kane*
Matthew J. Oppenheim (443698)
Scott A. Zebrak (452649)
Nicholas C. Hailey (admitted *pro hac vice*)
Jeff Kane (admitted *pro hac vice*)
OPPENHEIM + ZEBRAK, LLP
4530 Wisconsin Avenue, NW, 5th Floor
Washington, DC 20016
Tel: 202-480-2999
matt@oandzlaw.com
scott@oandzlaw.com
nick@oandzlaw.com
jkane@oandzlaw.com

---

[7] Ex. 4 at 59:11–14; Ex. 1 at 82:12–83:4; 84:6–85:10; Ex. 2 at 78:22–79:24; PX-6 (Ex. 7).