# Exhibit 4

***REALTIME UNEDITED TRANSCRIPT ONLY***

1

09:25:31  1    Judge Kennelly, May 17, 2023, 9:30 start time, volume 3-A,
09:25:31  2    Curry v. Revolution Laboratories, jury trial.
09:25:31  3         THE CLERK:  Case 17 C 2283, Curry v. Revolution
09:46:28  4    Laboratories.
09:46:28  5         THE COURT:  All right.  Maybe one person for each
09:46:30  6    side could give all the appearances, and then we can get
09:46:33  7    going.
09:46:35  8         MR. OPPENHEIM:  Good morning, your Honor.  Matt
09:46:36  9    Oppenheim, Nick Hailey, Jeffrey Kane, on behalf of plaintiff,
09:46:42  10   Charles Curry.
09:46:42  11        MR. HOLLANDER:  Good morning, your Honor, Gary
09:46:45  12   Hollander for the defendants, along with Matthew De Preter and
09:46:48  13   Chidinma Ahukanna.
09:46:48  14        THE COURT:  All right.  I see we have Mr. Nussbaum on
09:46:50  15   the line.  Do we have anything we have to do before we start?
09:46:54  16        MR. HOLLANDER:  Your Honor, I have a motion to make.
09:46:56  17        THE COURT:  Okay.
09:46:57  18        MR. HOLLANDER:  Sorry.  On behalf of defendants,
09:47:02  19   we're moving for a mistrial, and I don't do this lightly.  I
09:47:06  20   don't know if I've ever done it before.  But the questions
09:47:11  21   that were interjected yesterday, one of them being
09:47:17  22   Revolution's been sued for violating consumer fraud statutes,
09:47:21  23   correct?  And there was an objection.  Your Honor sustained
09:47:23  24   the objection and directed the jury to disregard the question.
09:47:28  25        But then the follow-up question is most problematic,

***REALTIME UNEDITED TRANSCRIPT ONLY***

Case: 1:17-cv-02283 Document #: 395-4 Filed: 06/27/23 Page 3 of 8 PageID #:12995
***REALTIME UNEDITED TRANSCRIPT ONLY***

53

| | | |
|---|---|---|
| 11:23:55 | 1 | personally? |
| 11:23:56 | 2 | A. Okay. The hazy one is -- |
| 11:24:00 | 3 | Q. I'm not asking you the hazy one, Mr. Nussbaum. I'm asking |
| 11:24:04 | 4 | you the one you say you remember clearly. |
| 11:24:07 | 5 | A. Okay. I called a meeting of everybody in all the staff, |
| 11:24:13 | 6 | and I got everybody on together. And I organized a search |
| 11:24:17 | 7 | party, so to speak, to see if we can verify any of the claims |
| 11:24:21 | 8 | of Mr. Curry, which we did together. I ran the meeting |
| 11:24:25 | 9 | personally. |
| 11:24:25 | 10 | Q. Okay. And then you have some vague recollection of doing |
| 11:24:30 | 11 | something else, but not a clear recollection. Is that my |
| 11:24:33 | 12 | understanding? |
| 11:24:33 | 13 | A. Yeah, I kind of want to say I checked eBay, but I'm not |
| 11:24:38 | 14 | positive. |
| 11:24:38 | 15 | Q. Okay. So let's go back to your Amazon search. |
| 11:24:41 | 16 | When you went on Amazon to search, you didn't search |
| 11:24:46 | 17 | for Diesel Test, did you? |
| 11:24:48 | 18 | A. No. |
| 11:24:51 | 19 | Q. You didn't -- what did you search for, Mr. Nussbaum? |
| 11:25:00 | 20 | A. Testosterone boosters, testosterone enhancers, |
| 11:25:05 | 21 | testosterone products, anything with the name testosterone in |
| 11:25:10 | 22 | it. |
| 11:25:11 | 23 | Q. Do you read books, Mr. Nussbaum? |
| 11:25:16 | 24 | A. Yes, I do. |
| 11:25:18 | 25 | Q. You know the author Stephen King? |

***REALTIME UNEDITED TRANSCRIPT ONLY***

Case: 1:17-cv-02283 Document #: 395-4 Filed: 06/27/23 Page 4 of 8 PageID #:12996
***REALTIME UNEDITED TRANSCRIPT ONLY***

54

| | | |
|---|---|---|
| 11:25:21 | 1 | A. I haven't read his books, but I've heard of him. |
| 11:25:29 | 2 | Q. Okay. He's written a lot of books, right, even if you |
| 11:25:32 | 3 | haven't read them, right? |
| 11:25:33 | 4 | A. Yes. |
| 11:25:34 | 5 | Q. If you wanted to go find one of Stephen King's books on |
| 11:25:41 | 6 | Amazon, would you search for "book"? |
| 11:25:46 | 7 | A. You mean like would I type in b-o-o-k into the search |
| 11:25:59 | 8 | engine? |
| 11:25:59 | 9 | Q. Correct. |
| 11:26:00 | 10 | A. No. |
| 11:26:01 | 11 | Q. In this exhibit, Mr. Curry provided links at the bottom, |
| 11:26:18 | 12 | correct? |
| 11:26:18 | 13 | A. I believe so. That's my memory, yes. |
| 11:26:22 | 14 | Q. And you can see on page 472, those four links, correct? |
| 11:26:39 | 15 | A. Yes. |
| 11:26:55 | 16 | Q. And two of those links would take you to the getdiesel.com |
| 11:27:06 | 17 | domain, correct? |
| 11:27:07 | 18 | A. I have no way to know. |
| 11:27:08 | 19 | Q. Well, that's the domain in the links, correct, the first |
| 11:27:11 | 20 | two links? |
| 11:27:12 | 21 | A. That's the domain in the link, but you asked me where it |
| 11:27:17 | 22 | would take me. And I can't give you answer that unless I |
| 11:27:21 | 23 | clicked on it. |
| 11:27:22 | 24 | Q. Ah. But you didn't click on them, did you? |
| 11:27:26 | 25 | A. Absolutely, I didn't. |

Case: 1:17-cv-02283 Document #: 395-4 Filed: 06/27/23 Page 5 of 8 PageID #:12997
\*\*\*REALTIME UNEDITED TRANSCRIPT ONLY\*\*\*

55

| | | |
|---|---|---|
| 11:27:27 | 1 | Q. And you didn't go to Google and search those links, did |
| 11:27:31 | 2 | you? |
| 11:27:31 | 3 | A. No. |
| 11:27:31 | 4 | Q. And you didn't click on the other two links either, did |
| 11:27:35 | 5 | you? |
| 11:27:35 | 6 | A. Absolutely not. |
| 11:27:49 | 7 | Q. And you called a meeting of all these people to conduct an |
| 11:27:54 | 8 | investigation, and you didn't ask anybody in that meeting to |
| 11:27:56 | 9 | click on those links, right? |
| 11:27:59 | 10 | A. Absolutely not. |
| 11:28:00 | 11 | Q. And you didn't ask anybody at this company that did all |
| 11:28:04 | 12 | this Internet selling to set up a single computer and click |
| 11:28:07 | 13 | on -- which had nothing else on it and click on it to see what |
| 11:28:11 | 14 | was there, did you? |
| 11:28:12 | 15 | A. Nope. |
| 11:28:14 | 16 | Q. And you didn't ask an I.T. specialist if there was a way |
| 11:28:23 | 17 | you could click on those links and avoid any potential |
| 11:28:27 | 18 | phishing, did you? |
| 11:28:28 | 19 | A. No. |
| 11:28:32 | 20 | Q. But at the time that you received this cease and desist, |
| 11:28:48 | 21 | you had the authority to tell the company to stop selling the |
| 11:28:53 | 22 | product, didn't you? |
| 11:28:54 | 23 | A. Not unilaterally, no. |
| 11:29:00 | 24 | Q. Well, along with your son Joshua, you did, didn't you? |
| 11:29:06 | 25 | A. If we made the decision together, then the answer would be |

\*\*\*REALTIME UNEDITED TRANSCRIPT ONLY\*\*\*

Case: 1:17-cv-02283 Document #: 395-4 Filed: 06/27/23 Page 6 of 8 PageID #:12998
\*\*\*REALTIME UNEDITED TRANSCRIPT ONLY\*\*\*

59

| | | |
|---|---|---|
| 11:33:31 | 1 | correctly? |
| 11:33:31 | 2 | A. Yes, sir. |
| 11:33:33 | 3 | Q. And isn't it, in fact, true, that you, Barry Nussbaum, |
| 11:33:38 | 4 | personally entered into this stipulation that Revolution is |
| 11:33:41 | 5 | liable? |
| 11:33:42 | 6 | A. Correct. |
| 11:33:44 | 7 | Q. So when you refer to Mr. Curry's email as a lie and a |
| 11:33:58 | 8 | scam, that's contrary to the admission -- excuse me -- the |
| 11:34:03 | 9 | stipulation you've entered into in this court, correct? |
| 11:34:05 | 10 | A. I don't think about it that way. |
| 11:34:12 | 11 | Q. You were -- you agreed with your son, did you not, |
| 11:34:19 | 12 | Mr. Nussbaum, that you should ignore Mr. Curry's cease and |
| 11:34:23 | 13 | desist request and let him sue the company, right? |
| 11:34:27 | 14 | A. Yes. |
| 11:34:28 | 15 | Q. And when Mr. Curry reached out to the company in November |
| 11:34:36 | 16 | 2016, you had already invested considerable time, effort, and |
| 11:34:40 | 17 | money into promoting the Revolution -- Revolution's Diesel |
| 11:34:43 | 18 | Test product, right? |
| 11:34:44 | 19 | A. Yes. |
| 11:34:46 | 20 | Q. And Diesel Test -- excuse me. |
| 11:34:50 | 21 | Revolution already had bottles, labels, and affiliate |
| 11:34:54 | 22 | marketing underway when they received Mr. Curry's cease and |
| 11:34:58 | 23 | desist, right? |
| 11:34:59 | 24 | A. I'm pretty sure that's correct, yes. |
| 11:35:03 | 25 | Q. And you never told Joshua Nussbaum or anyone else at |

| | | |
|---|---|---|
| 11:35:08 | 1 | Revolution to pause selling or marketing Diesel Test until |
| 11:35:13 | 2 | after the question of Mr. Curry's rights were resolved, did |
| 11:35:19 | 3 | you? |
| 11:35:19 | 4 | A.  I don't understand your question.  I'm sorry. |
| 11:35:29 | 5 | Q.  Let me break it down. |
| 11:35:31 | 6 | You receive this email with Mr. Curry's cease and |
| 11:35:35 | 7 | desist.  You called a meeting of everybody, and you said, we |
| 11:35:38 | 8 | need to investigate this.  You didn't say at that meeting, |
| 11:35:42 | 9 | let's pause all our sales while we figure this out, did you? |
| 11:35:45 | 10 | A.  Absolutely not.  It was a scam.  I mean, why would you do |
| 11:35:52 | 11 | that? |
| 11:35:52 | 12 | Q.  Well, again, you called it a scam, Mr. Nussbaum, but |
| 11:35:56 | 13 | you've admitted that Revolution is liable, right? |
| 11:36:00 | 14 | A.  Well, if you put it in the context -- |
| 11:36:08 | 15 | Q.  It's a yes-or-no question, Mr. Nussbaum. |
| 11:36:11 | 16 | A.  I don't know how to answer it as a yes or no. |
| 11:36:14 | 17 | THE COURT:  The question is whether you admitted |
| 11:36:16 | 18 | Revolution -- the question that's asked is, did you admit that |
| 11:36:19 | 19 | Revolution is liable? |
| 11:36:21 | 20 | THE WITNESS:  Yes, sir. |
| 11:36:22 | 21 | THE COURT:  Okay. |
| 11:36:24 | 22 | BY MR. OPPENHEIM: |
| 11:36:25 | 23 | Q.  And I want to go back to that meeting for a moment.  When |
| 11:36:28 | 24 | you were in that meeting, did you instruct anybody in the |
| 11:36:30 | 25 | meeting to email Mr. Curry and have a discussion with him |

Case: 1:17-cv-02283 Document #: 395-4 Filed: 06/27/23 Page 8 of 8 PageID #:13000
***REALTIME UNEDITED TRANSCRIPT ONLY***

61

| | | |
|---|---|---|
| 11:36:37 | 1 | about his claim? |
| 11:36:38 | 2 | A. I have no recollection either way on that one. |
| 11:36:54 | 3 | Q. Did you -- you have this room of people. Did you say, |
| 11:36:57 | 4 | hey, somebody, pick up the phone. Let's call this guy and |
| 11:37:00 | 5 | have a dialog? |
| 11:37:01 | 6 | A. I don't recall making that statement, no. |
| 11:37:05 | 7 | Q. So you were going to conduct an investigation. You |
| 11:37:08 | 8 | weren't going to click on his links, and you weren't going to |
| 11:37:11 | 9 | communicate with him. Is that your testimony? |
| 11:37:13 | 10 | A. Well, I didn't want to click on the link for the obvious |
| 11:37:22 | 11 | problem about phishing. In terms of -- I was very clear on |
| 11:37:25 | 12 | that. |
| 11:37:26 | 13 | In regards to telling somebody to call him or not, I |
| 11:37:32 | 14 | don't have a clear recollection about that either way. So I |
| 11:37:36 | 15 | have a firm answer and a hazy answer. Sorry. |
| 11:37:41 | 16 | Q. After you received this cease and desist notice, somebody |
| 11:37:50 | 17 | suggested that you might be able to federally register the |
| 11:37:54 | 18 | trademark that Mr. Curry claimed to have common law rights to, |
| 11:37:57 | 19 | correct? |
| 11:37:58 | 20 | A. Yes. |
| 11:37:59 | 21 | Q. And you in an email approved to the filing of that |
| 11:38:06 | 22 | trademark application, correct? |
| 11:38:07 | 23 | A. I know I approved it. I don't remember if it was email or |
| 11:38:17 | 24 | phone call or text, but I remember approving it, yes. |
| 11:38:21 | 25 | Q. Well, let's look at page 00462 of that Exhibit 1 we were |