**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CHARLES CURRY, d/b/a GET DIESEL NUTRITION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 1:17-cv-02283 |
| v. | ) | |
| | ) | Judge Matthew F. Kennelly |
| REVOLUTION LABORATORIES, LLC; REV LABS MANAGEMENT, INC.; JOSHUA NUSSBAUM; and BARRY NUSSBAUM, | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF PLAINTIFF'S BILL OF COSTS**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ........................................................................................................... 1

ARGUMENT ................................................................................................................... 2

   I.    **As the prevailing party, Plaintiff is entitled to recover costs.** ................................ 2

   II.   **Plaintiff should recover costs for trial graphics and a trial technician.** ................. 3

      A.   Plaintiff should recover costs for trial graphics. ................................................. 3

      B.   Plaintiff should recover costs for the use of a trial technician. ........................... 6

      C.   Plaintiff's graphics preparation and trial technician costs are reasonable. ..................... 7

   III.   **Plaintiff should recover costs for copying electronic and physical documents.** ........ 8

      A.   Plaintiff should recover costs for copying Defendants' QuickBooks files. .................... 8

          1.   The cost of copying electronic documents is taxable. ................................. 8

          2.   Plaintiff necessarily incurred these costs. ................................................. 9

      B.   The Court should award costs for copying physical documents. ....................... 11

   IV.   **Plaintiff is entitled to recover transcript costs.** ...................................................... 12

      A.   Plaintiff should recover costs for deposition transcripts. ................................... 12

      B.   Plaintiff should recover costs for trial and hearing transcripts. ....................... 13

   V.    **Plaintiff should recover fees of the clerk and marshal.** ......................................... 14

   VI.   **Plaintiff should recover a witness fee for his expert's testimony and attendance.** 14

CONCLUSION .............................................................................................................. 15

## INTRODUCTION

The Lanham Act requires a court to award costs where a plaintiff prevails on a trademark infringement claim. In addition, the Federal Rules create a strong presumption for awarding costs to the prevailing party on any claim. And, the Illinois Uniform Deceptive Trade Practices Act ("IUDTPA") allows a court to award costs where a defendant willfully violates the IUDTPA. Here, Plaintiff prevailed on his Lanham Act and common law trademark claims, on his IUDTPA claim, and on one of his Anticybersquatting Consumer Protection Act (ACPA) claims. There can be no question that Plaintiff is a prevailing party entitled to costs. The categories of costs that are recoverable are set out in 28 U.S.C. § 1920. As this Court has recognized, one of those categories, "exemplification," includes the cost of preparing trial graphics and the cost of a trial technician. Here, Plaintiff's graphics specialist/trial technician was crucial in presenting voluminous exhibits and lengthy documents to the jury in an efficient, understandable manner. In addition, section 1920's provision for copying costs allows a prevailing party to recover the cost not just of ordinary physical copies, but of copying digital documents or data. Thus, Plaintiff's costs to copy Defendants' accounting records are taxable. Finally, Plaintiff is entitled to ordinary expenses for filing fees, transcripts, witness attendance, and copies of trial documents. The total taxable costs are $50,888, as shown below. Plaintiff should recover these costs in full.

| Category | Amount |
|---|---|
| Graphics and trial technician | $ 25,650 |
| Copies of electronic documents | 5,068 |
| Copies of physical documents | 1,631 |
| Deposition transcripts | 13,181 |
| Trial transcript | 3,715 |
| Hearing transcripts | 913 |
| Fees of the clerk and marshal | 570 |
| Witness fee | 160 |
| **Total** | **$ 50,888** |

**ARGUMENT**

I.      **As the prevailing party, Plaintiff is entitled to recover costs.**

The Lanham Act provides that the prevailing party "shall be entitled" to recover "the costs of the action." 15 U.S.C. § 1117(a). Likewise, the Federal Rules provide that "unless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." FED. R. CIV. P. 54(d); *see also Springer v. Ethicon, Inc.*, No. 17-cv3930, 2018 U.S. Dist. LEXIS 48870, at *41 (N.D. Ill. Mar. 23, 2018) (Kennelly, J.) ("The presumption that the prevailing party will recover costs is difficult to overcome."). In addition, the IUDTPA provides that a prevailing plaintiff may recover costs if the defendant "wil[l]fully engaged in a deceptive trade practice." 815 ILL. COMP. STAT. ANN. 510/3.

Here, Plaintiff easily qualifies as the prevailing party. "The prevailing party for purposes of Rule 54(d) is the party that prevails with regard to a substantial part of the litigation." *Ariel Invs., LLC v. Ariel Capital Advisors LLC*, 2017 U.S. Dist. LEXIS 110240, *3–4 (N.D. Ill. Jul. 17, 2017) (Kennelly, J.); *see also Baker v. Lindgren*, 856 F.3d 498, 502 (7th Cir. 2017) ("For the purposes of Rule 54, a party is deemed 'prevailing' if it prevails as to a substantial part of the litigation."). Here, Plaintiff prevailed on nearly all of his claims. Judgment was entered against all Defendants for trademark infringement under both the Lanham Act and Illinois common law. Dkt. 417. The jury found that all three defendants acted willfully, awarding punitive damages, as well as damages for loss of good will. Dkts. 377. The jury likewise found Joshua Nussbaum liable for violating the ACPA and awarded statutory damages. Dkt. 377. The Court awarded Plaintiff disgorgement of Defendants' profits, and found that Defendants willfully violated the IUDTPA. Dkt. 410 at 30, 46. And the Court entered a permanent injunction prohibiting Defendants from further infringement, and ordering Defendants to withdraw their opposition to Plaintiff's federal trademark application. Dkt. 413 ¶¶ 3, 4. That the jury found for Defendants on portions of the

ACPA claim, Dkt. 377, does not render Defendants the prevailing party. *Baker v. Lindgren*, 856 F.3d 498, 502 (7th Cir. 2017) ("[A] party may meet that standard even when the party does not prevail on every claim."); *Springer*, 2018 U.S. Dist. LEXIS 48870, *42–43 (a "party need not win on every claim to qualify as a prevailing party."). Plaintiff, therefore, is entitled to recover costs.

## II.    Plaintiff should recover costs for trial graphics and a trial technician.

A prevailing party may recover "[f]ees for exemplification." 28 U.S.C. § 1920(4). As explained below, exemplification includes both trial graphics like slide shows or other visual aids, and the use of a courtroom technician. Plaintiff, therefore, is entitled to recover his costs of $25,650 for graphics preparation and the use of a trial technician.

### A.    Plaintiff should recover costs for trial graphics.

The Seventh Circuit has explained that "prevailing parties can, under appropriate circumstances, be reimbursed for the cost of computer generated, multi-media presentations even to the degree that such presentations are used not to produce exhibits but rather to display them to the court." *Cefalu v. Village of Elk Grove*, 211 F.3d 416, 429 (7th Cir. 2000). This includes "the expense of graphics services employed in preparing exhibits" for courtroom presentations. *Id.* at 427–28 (7th Cir. 2000); *Haroco, Inc. v. American National Bank & Trust Co.*, 38 F.3d 1429, 1441 (7th Cir. 1994). Indeed, "[s]o long as the means of presentation furthers the illustrative purpose of an exhibit, we believe it is potentially compensable as exemplification. This approach allows appropriate room for the more sophisticated types of multi-media presentations made possible by technological advances." *Cefalu*, 211 F.3d at 428.

Consistent with this holding, district courts in the Seventh Circuit have taxed costs for creating PowerPoint slides and other visual aids where such materials have aided the fact finder's understanding of the evidence. For example, this Court has awarded costs for "a multimedia presentation," which was "essentially limited to the use of PowerPoint presentations and

documents displayed on a courtroom projector." *Springer*, 2018 U.S. Dist. LEXIS 48870, at *59.[1]

Plaintiff is entitled to his costs for the preparation of trial graphics. Plaintiff's graphics technician helped prepare four PowerPoint slide decks (one each for Plaintiff's opening argument, damages expert, and closing and rebuttal arguments) comprising 160 slides. Ex. 1, Declaration of Attorney Jeff Kane ("Atty. Decl.") ¶ 4. The decks are attached as Exhibits 2–5.

Each of these decks was valuable in presenting key facts and issues to the jury and Court. The slides for Plaintiff's opening argument contained excerpts or images from twenty different exhibits, helping to focus the jury on critical evidence. Atty. Decl. ¶ 5. It consolidated key evidence, such as the three separate cease-and-desist communications, into one place. Ex. 2 at Slide 12. It enlarged and highlighted important text, such as Joshua Nussbaum's statement that Defendants should keep infringing and "let him sue us," and Amazon's ban of Defendants' infringing product. *Id.* at Slides 13–14. It created side-by-side images of the infringing Diesel Test bottle and Plaintiff's bottle, so as to illustrate the two bottles' similarities. *Id.* at Slides 14–15. And it included a chart of the claims, defendants, and potential damages, to aid the jury's understanding of the case. *Id.* at Slides 21, 24.

Similarly, the slides for Plaintiff's damages expert (Ex. 3) were crucial to conveying the financial information in this case. First, the slides aggregated data that otherwise did not appear in one place. For example, Defendants' revenues were not neatly totaled in one exhibit; they were spread across more than fifteen spreadsheets, totaling tens of thousands of rows of data. Atty. Decl.

---

[1] *See also LG Electronics U.S.A., Inc. v. Whirlpool Corp.*, No. 08-cv-0242, 2011 U.S. Dist. LEXIS 121361, at *20–21 (N.D. Ill. Oct. 20, 2011) (awarding costs for "digital presentations and computer graphics."); *MarcTec, LLC v. Johnson & Johnson*, No. 07-cv-825, 2010 U.S. Dist. LEXIS 15300, at *11 (S.D. Ill. Feb. 22, 2010) (awarding cost for a "slide show presentation"); *Z Trim Holdings, Inc. v. Fiberstar, Inc.*, No. 07-cv-161, 2008 U.S. Dist. LEXIS 61514, at *4 (W.D. Wis. Aug. 12, 2008) (awarding costs for "graphic production," "illustration," and "design."); *Fletcher v. Doig*, No. 13-cv-3270, 2022 U.S. Dist. LEXIS 234007, at *6 (N.D. Ill. Dec. 31, 2022) ("Section 1920(4)'s authorization of costs for exemplification includes recovery for costs incurred in the preparation of visual aids for use at trial.").

¶ 6. Indeed, Defendants themselves spent pages of testimony adding numbers from various spreadsheets because Defendants' profit-and-loss statement didn't include all revenues. Rough Trial Tr. 17:16–21:22 (May 18, 2023 (PM)) (Ex. 44). In contrast, Mr. Herman's slide deck totaled all of the revenues from the various primary source documents and presented them in a simple format to the jury. Similarly, Defendants declined to provide statements that consolidated their and their trust's assets in one place. Thus, the only way for the jury to see the total assets was for an expert to provide those numbers in the form of slides. One slide consolidated twenty-plus trust-owned entities into one chart. Ex. 3 at Slide 30. These visual aids helped the jury understand Defendants' profits and their web of assets. The expert's deck also provided several other benefits. It enlarged key passages like the contact information of customers whose orders did not appear in Defendants' sales data, or Defendants' statements about when they stopped selling Diesel Test. *Id.* at Slides 10–12, 13. It zeroed in on spreadsheet columns showing sale dates and sale amounts, so that the jury could understand Mr. Herman's methodology without Mr. Herman having to show the jury actual spreadsheets. *Id.* at Slides 5–6, 14. It provided a graphical illustration of how QuickBooks works (*i.e.*, that it simply records the data that a user inputs, rather than verifying the information) and what a trust is. *Id.* at Slides 22, 35. It enlarged key elements like bank account balances, loan balances, and tax return line items. *Id.* at Slides 27, 29, 31–34. And it summarized key evidence, such as the evidence of benefits paid from the Trust to the Nussbaums. *Id.* at Slides 37–39.

The closing and rebuttal decks (Exs. 4, 5) excerpted and enlarged key information from the jury instructions and from the verdict form, saving the jury the trouble of flipping through these documents during the closing. *See, e.g.*, Ex. 4, Slides 4, 13, 15, 21–23. They reproduced important trial testimony, such as the Nussbaums' testimony about their involvement in the infringement, *id.*

at Slides 8–11, and Revolution employees' testimony about Diesel Test and the tag-along products being sold together, *id.* at Slide 28. They contained excerpts or images from more than forty exhibits. Atty. Decl. ¶ 7. This included consolidating the numerous complaints Plaintiff received from customers who purchased the infringing product from Defendants and blamed Plaintiff. Ex. 4, Slides 19–20, 27, 54–55. And it compared Defendants' trial testimony with their contradictory deposition testimony and with contradictory documents. *Id.* at Slides 34–37, 45, 56–57, 64.

### B. Plaintiff should recover costs for the use of a trial technician.

Courts likewise recognize that "exemplification" costs include the cost of a trial technician.[2] During trial, Plaintiff's graphics technician was able to bring up exhibits electronically, saving the time and effort of handing out copies to the jury. Over and over, the trial technician was able to "quickly and clearly highlight the relevant parts of . . . large and complex exhibits." *Springer*, 2018 U.S. Dist. LEXIS 48870, at *57. Many of these exhibits were detailed, multi-page documents that contained complicated provisions and small print. The trial technician made the consideration of these exhibits far more efficient, helping Plaintiff to present his case within the Court's time limit. *GmbH v. ZR Energy Inc.*, 2001 U.S. Dist. LEXIS 23716, at *97 (N.D. Ill. Sept. 18, 2001) ("[P]ointing to a single page in a large trial notebook with multiple pages of exhibits would not have effectively shown to the jurors the most important features . . . ."). The trial technician's work also made the documents easier for the jury to digest. For example:

- PX-148 was a 468-page document containing several contracts to purchase properties. Rough Trial Tr. 15:13–15, 19:18–19, 20:7–12, 20:13–21:2, 23:8–24 (May 17, 2023 (AM)) (Ex. 42). The trial technician was able (near-instantly) to navigate to the pages

---

[2] *The Medicines Co. v. Mylan Inc.*, No. 11-cv-1285, 2017 U.S. Dist. LEXIS 179107, at *33–34 (N.D. Ill. Oct. 30, 2017) ("Trial technician time is also a compensable cost."); *LG* Electronics, 2011 U.S. Dist. LEXIS 121361, at *21–22 (awarding cost of technician); *Chicago Board Options Exchange, Inc. v. International Securities Exchange, LLC*, No. 07 CV 623, 2014 U.S. Dist. LEXIS 4701, at *24 (N.D. Ill. Jan. 14, 2014) (awarding costs for "in-court trial technician,"). *See also Segner v. Ruthven Oil & Gas, LLC*, No. 3:12-CV-1318, 2020 U.S. Dist. LEXIS 8101, at *11 (N.D. Tex. Jan. 14, 2020) (same); *Versata Software Inc. v. SAP America, Inc.*, No. 2:07-cv-153, 2011 U.S. Dist. LEXIS 109015, at *10 (E.D. Tex. Sep. 23, 2011) (same).

showing that the contract was in Mr. Nussbaum's name (as opposed to the Trust's name), the purchase price, etc., for the relevant contracts.

- PX-132 was a 53-page trust agreement. The technician was able, in real-time, to enlarge and highlight the specific sentences about which counsel was asking questions, so that the jury could easily follow the document. *Id.* at 33:18–21, 35:5–43:17.

- The technician also put pages side-by-side for comparison, *id.* at 36:22–37:1, and showed multiple related exhibits at once, so that the witness could discuss them as a group, Rough Trial Tr. 87:1–20 (May 15, 2023 (PM)) (Ex. 39).

- Where exhibits contained multi-page email chains, the technician located, enlarged, and highlighted the relevant text for the witness and for the jury. *Id.* at 72:20–75:11, 79:2–5; Rough Trial Tr. 61:1–62:2 (May 16, 2023 (PM)) (Ex. 41). Where an exhibit comprised a multi-tab spreadsheet with thousands of rows, the technician was able to zero in on the appropriate tab, column, and rows. Rough Trial Tr. 45:20–21, 47:13–50:14 (May 16, 2023 (AM)) (Ex. 40). Where the exhibit contained a screenshot of a webpage, the technician enlarged the relevant portion of the page, or of the date the screenshot was taken. Rough Trial Tr. 83:5–17, 88:5–7, 100:11–16 (May 15, 2023 (AM)) (Ex. 38); Ex. 41 at 57:24–58:18.

- Where only part of a document was to be published to the jury, the technician excerpted (in real time) just that portion. Ex. 40 at 43:9–44:2.

In short, the trial technician made the trial more efficient and the evidence easier to digest.

### C. Plaintiff's graphics preparation and trial technician costs are reasonable.

To reduce costs, Plaintiffs employed a single individual who served as both a graphics specialist and a trial technician, rather than using separate personnel. The combined fee for the graphics preparation and trial technician, $25,650, is in-line with what courts have allowed in other comparable matters. *Core Wireless Licensing S.A.R.L. v. LG Electronics, Inc.*, No. 2:14-CV-00912, 2020 U.S. Dist. LEXIS 56726, at *12–13 (E.D. Tex. Apr. 1, 2020) (ordering $55,222.50 in "graphics and exemplification costs" for a six-day trial); *Eolas Technologies Inc. v. Adobe Systems*, 891 F. Supp. 2d 803, 808 (E.D. Tex. 2012) ($32,000 in trial technician and graphics costs for a four-day trial); *Versata Software Inc. v. SAP Am., Inc.*, No. 2:07-CV-153 CE, 2011 U.S. Dist. LEXIS 109015, at *10 (E.D. Tex. Sep. 23, 2011) ($90,090 for a thirteen-day trial). The Court should award Plaintiff the $25,650 cost in full.

### III.    Plaintiff should recover costs for copying electronic and physical documents.

A prevailing party may recover the cost of "making copies of any materials where the copies are necessarily obtained for use in the case." 28 U.S.C. § 1920(4). Plaintiff copied two categories of materials: Defendants' electronic QuickBooks files, and exhibits for use at trial.

#### A.    Plaintiff should recover costs for copying Defendants' QuickBooks files.

Plaintiff is entitled to recover $5,068 of the costs he incurred to copy Defendants' QuickBooks files.

##### 1.    The cost of copying electronic documents is taxable.

Copying costs under section 1920(4) are not limited to paper copies, but include the cost of copying electronic documents. *CBT Flint Partners, LLC v. Return Path, Inc.*, 737 F.3d 1320, 1326 (Fed. Cir. 2013). Indeed, in 2008 Congress amended section 1920(4) to replace the phrase "copies of papers" with "copies of any materials." *Id.* That change, the legislative history explains, was intended to "mak[e] electronically produced information coverable in court costs." 154 Cong. Rec. H10270, H10271 (daily ed. Sept. 27, 2008) (statement of Rep. Lofgren). This is consistent with how courts treat copying costs involving electronically stored information generally. The Federal Circuit has explained that even when a party copies purely electronic data, the actual copying is a taxable cost under 28 U.S.C. § 1920(4). *CBT Flint Partners*, 737 F.3d at 1328–32.[3]

Likewise, where a party makes documents available for inspection, and the prevailing party copies those documents, the cost of the copying is taxable under 28 U.S.C. § 1920(4).[4] Indeed, this

---

[3] *See also Hecker v. Deere & Co.*, 556 F.3d 575, 591 (7th Cir. 2009) (affirming taxation of the cost of "converting computer data into a readable format"); *Petroliam Nasional Berhad v. GoDaddy.com, Inc.*, No. 09-cv-5939, 2012 U.S. Dist. LEXIS 64555, at *10–11 (N.D. Cal. May 8, 2012) (allowing costs for "work performed by technicians . . . which was necessary to convert computer data into a readable format . . . .").

[4] *Fagbemi v. Spatz*, No. 08-cv-3736, 2010 U.S. Dist. LEXIS 91015, at *8–9 (N.D. Ill. Sep. 1, 2010) (where plaintiff provided a "box of reports" for "inspection and copying", defendant was entitled to recover "the costs of making copies of the documents."); *Harp v. Charter Communs.*, No. 04-cv-0951, 2007 U.S. Dist.

Court has done just that. In *Srail v. Village of Lisle*, the plaintiff made "their entire files of documents available for Defendants' inspection." No. 07-cv-2617, 2008 U.S. Dist. LEXIS 101749, at *15 (N.D. Ill. Dec. 15, 2008) (Kennelly, J.). When the prevailing defendant sought to tax the costs of copying these documents, the plaintiff complained that the defendant should have inspected the documents first, then copied only those documents that were relevant. *Id.* This Court rejected that argument, finding that the copying charges "were reasonably necessary" because it would have been "impractical to sort manually the thousands of documents" contained in plaintiff's files "[g]iven the time constraints,"). *Id.* at *15.[5]

Here, Defendants made their electronic QuickBooks file available for inspection, and Plaintiff copied portions of those files. Those costs are taxable under 28 U.S.C. § 1920(4).

### 2. *Plaintiff necessarily incurred these costs.*

The award of these electronic copying costs is further justified because Defendants' conduct forced Plaintiff to incur them. Defendants wished to introduce at trial a profit-and-loss statement, and documents from their QuickBooks files purporting to support that statement. Dkt. 389 at 3–6; Dkt. 360 at 8. After the close of discovery, this Court allowed Defendants to produce their QuickBooks files or else make them available for inspection. Hr'g Tr. 42:15–25 (Sep. 7, 2022) (Ex. 31); 17:14–18:13 (Feb. 7, 2023) (Ex. 33). Rather than produce the files (or give Plaintiff

---

LEXIS 111406, at *11 (S.D. Ill. Apr. 6, 2007) (Finding taxable "actual costs [plaintiff] paid to obtain copies of documents [defendant] made available for inspection . . . ."); *Vardon Golf Co. v. Karsten Manufacturing Corp.*, No. 99-cv-2785, 2003 U.S. Dist. LEXIS 5072, at *34 (N.D. Ill. Mar. 31, 2003) ("Costs associated with photocopying documents that [plaintiff] made available for [defendant]'s inspection are necessary and recoverable."); *Bass v. Zeta Consumer Products*, No. 98-cv-8235, 1999 U.S. Dist. LEXIS 19166, at *6–7 (N.D. Ill. Nov. 30, 1999) (cost of copying documents made available to plaintiff for inspection was taxable).

[5] *See also Cengr v. Fusibond Piping Systems*, 135 F.3d 445, 455 (7th Cir. 1998) (rejecting the argument that copying costs couldn't be taxed because the prevailing party was obligated to inspect documents before copying them); *J&W Fence Supply Co. v. United States*, No. IP 97-0128, 1999 U.S. Dist. LEXIS 15296, at *4–6 (S.D. Ind. Sep. 3, 1999) (cost of copying documents made available for inspection was reasonable due to time constraints, the volume of documents, and the fact that the documents were located far away from the defendants' attorneys).

access to this *online* data), Defendants asked Plaintiff to travel to Revolution's offices in San Diego to inspect the data in-person.[6]

Obtaining these documents was necessary. Defendants represented that these QuickBooks records were the sole source of their profit-and-loss statement, Dkt. 188-1 ¶ 11, which was the only documentation of expenses Defendants offered at trial. Inspecting the documents, however, was not feasible. First, the data was voluminous. The data comprised more than 320,000 transactions and over 120,000 documents. Atty. Decl. ¶ 11. And, Plaintiff had very limited time in which to conduct any inspection. Ex. 28, Hr'g Tr. 20:5–12 (Feb. 2, 2023) (giving Plaintiff "a day or two" during a period of only two weeks to inspect or copy the files). Further, Defendants never identified what documents from their QuickBooks files they intended to use at trial. Dkt. 353 at 4–5. So Plaintiff would have been guessing which files Defendants might rely on later. Plaintiff therefore endeavored to copy the QuickBooks files, retaining a QuickBooks technician in San Diego to do so. Dkt. 351-1 ¶ 3.

The technician charged $6,756.75; Plaintiff requests reimbursement of 75% of this amount, or $5,067.56.[7] That cost is reasonable in several ways. First, the state in which Defendants kept their QuickBooks files made the copying far more difficult. QuickBooks will not allow a copy to be made unless the data is backed up. Although QuickBooks provides an "automatic" backup feature, Dkt. 351-1 ¶ 18(a), Defendants' largest database had never been backed up; its smaller database had not been backed up in months. *Id.* This meant that Plaintiff had to back up nearly all of Defendants' 320,000 transactions before a copy could be made. Dkt. 351-1 ¶¶ 5, 10, 18(a).

---

[6] As Plaintiff explained in prior briefing, this "offer" was subject to several unacceptable conditions, and was effectively a refusal to comply with the Court's order. Dkt. 351 at 2–5.

[7] Plaintiff reduces the requested amount because some of the time the QuickBooks technician billed involved planning, coordinating with Plaintiff's counsel, and discussing logistical issues with Defendants' representatives. Plaintiff seeks reimbursement only for the actual copying of data. Atty. Decl. ¶ 12.

Second, the technician had to copy manually the "audit log" (a master list of all the changes made to a QuickBooks database over time) because copying the database as a whole does not copy the audit log. Dkt. 351-2 ¶ 5. Third, Plaintiff's technician encountered numerous problems with Defendants' files, requiring her to consult with Defendants' personnel and with QuickBooks technical support. Dkt. 351-1 ¶¶ 12–14. Ultimately, Plaintiff's technician was able to copy only one of the two QuickBooks files to which Defendants provided access. Atty Decl. ¶ 14. Because copying the second database in full was unsuccessful, the technician instead manually copied hundreds of individual transactions and documents that Plaintiff identified as potentially important. *Id.* at ¶ 13. Finally, Defendants would only allow Plaintiff's expert to work on an old, slow laptop, whose small memory capacity made the copying much slower. Dkt. 351-1 ¶ 18(b).

Plaintiff's QuickBooks expert did not attempt to determine what data would be relevant to this case. *Id.* at ¶ 16. She did not conduct keyword searches, dedupe the documents, analyze the data, or organize the documents. *Id.* She simply performed the mechanical steps designed to copy Defendants' databases. *Id.* This is a classically reimbursable cost.

### B. The Court should award costs for copying physical documents.

The cost of copying physical documents likewise is taxable. Plaintiff requests reimbursement for physical copies of three categories of documents: trial exhibits, impeachment materials for trial witnesses, and exhibits sent to Barry Nussbaum for use during his remote testimony. The attached declaration breaks down what these documents are and why they were reasonably necessary. Atty Decl. ¶ 17–21. The taxable cost for copying these documents is $1,631.

Plaintiff produced all these copies in-house. Atty. Decl. ¶ 17. The Seventh Circuit has held that the reimbursement rate for copies made in-house should match "a reasonable rate for copies charged by outside print shops." This Court has found that a rate of $0.15 per page to be reasonable. *Higbee v. Sentry Insurance Co.*, No. 97-cv-1349, 2004 U.S. Dist. LEXIS 10772, at *12 (N.D. Ill.

June 11, 2004) (Kennelly, J.). Other courts in this district have done the same.[8] Indeed, courts "routinely grant copying costs of $0.20 per page." *United States ex rel. Marshall v. Woodward Governor Co.*, No. 06-cv-1746, 2016 U.S. Dist. LEXIS 62619, at *9 (N.D. Ill. May 12, 2016) (collecting cases). To document these costs, a party need not submit documentation "so detailed as to make it impossible economically to recover photocopying costs." *Northbrook Excess & Surplus Ins. Co. v. Procter & Gamble Co.*, 924 F.2d 633, 643 (7th Cir. 1991). Rather, a prevailing is "required to provide the best breakdown obtainable from retained records." In total, Plaintiff should be reimbursed for $1,631 in costs for copies of physical documents.

## IV.    Plaintiff is entitled to recover transcript costs.

A prevailing party is entitled to recover "[f]ees for printed or electronically recorded transcripts necessarily obtained for use in the case . . . .". 28 U.S.C. § 1920(2). This includes transcripts of depositions, hearings, and trials. Here, taxable transcript costs total $17,809.

### A.    Plaintiff should recover costs for deposition transcripts.

A prevailing party can recover the cost of a deposition transcript that was reasonably necessary at the time the transcript was ordered. N.D. Ill. L.R. 54.1(b) ("Subject to the provisions of Fed. R. Civ. P. 54(d), the expense of any prevailing party in necessarily obtaining all or any part of a transcript for use in a case . . . shall be taxable as costs . . . .").

Plaintiff is entitled to costs for ten deposition transcripts in this case.[9] All of these

---

[8] *LG Electronics U.S.A., Inc. v. Whirlpool Corp.*, No. 08-cv-0242, 2011 U.S. Dist. LEXIS 121361, at *22 (N.D. Ill. Oct. 20, 2011); *Bell v. Keating*, No. 09-cv-754, 2011 U.S. Dist. LEXIS 61295, at *10 (N.D. Ill. June 2, 2011); *Gutzwiller v. City of Chicago*, No. 03-cv-7598, 2007 U.S. Dist. LEXIS 57394, at *5–6 (N.D. Ill. Aug. 3, 2007); *Wagner v. Illinois Department of Public Aid*, No. 98-cv-7268, 2005 U.S. Dist. LEXIS 6299, at *9 (N.D. Ill. Mar. 28, 2005); *Chamberlain Group v. Interlogix, Inc.*, No. 01-cv-6157, 2002 U.S. Dist. LEXIS 18851, at *11 (N.D. Ill. Sep. 27, 2002); *Tokar v. City of Chicago*, No. 96-cv-5331, 2001 U.S. Dist. LEXIS 12000, at *6–7 (N.D. Ill. Aug. 8, 2001).

[9] The ten are: The 30(b)(6) deposition of Revolution Laboratories, LLC; Charles Curry; Donna Godwin; Adam Knippel; Barry Nussbaum's February 16, 2021 and May 6, 2022 depositions; Joshua Nussbaum's

12

transcripts were reasonably necessary. Excerpts from the depositions of Alexandria Roemer, Adam Knippel, and Donna Godwin were designated at trial and read to the jury, Rough Trial Tr. 53:12–147:13 (May 17, 2023 (PM)) (Ex. 43), as each witness was outside the subpoena power of the Court. For the remaining witnesses, Plaintiff quoted their deposition transcripts extensively in Plaintiff's summary judgment filings. *See, e.g.*, Dkt. 177-1 at 2–3 5–6, 10, 30. Plaintiff likewise quoted the May 6, 2022 deposition transcript of the Nussbaums in several discovery filings. *See, e.g.*, Dkt. 219 at 5–9, Dkt. 223 at 2, Dkt. 238 at 6, Dkt. 284 at 3. And Joshua Nussbaum, Barry Nussbaum, and Trent Turner's deposition testimony were used at trial repeatedly to impeach these witnesses.[10]

The reimbursement rate for deposition transcripts is published by the United States Judicial Conference. N.D. Ill. L.R. 54.1(b); Springer, 2018 U.S. Dist. LEXIS 48870 at *47–48. As detailed in the attached declaration, Plaintiff requests different rates for different depositions, as appropriate. Atty. Decl. ¶ 25–26. Likewise, court reporter appearance fees are taxable at the rate published on the district court's website. N.D. Ill. L.R. 54.1(b); *Gc2 Inc. v. Int'l Game Tech.*, No. 16-cv-8794, 2019 U.S. Dist. LEXIS 125381, at *11–12 (N.D. Ill. July 29, 2019) (Kennelly, J.). That rate is $220 for one full day. Atty. Decl. ¶ 27. Finally, shipping or delivery costs charged by the court reporting service are recoverable. *Finchum v. Ford Motor Co.*, 57 F.3d 526, 534 (7th Cir. 1995). Plaintiff therefore is entitled to a total of $13,181 for deposition costs. Atty. Decl. ¶ 24.

### B.    Plaintiff should recover costs for trial and hearing transcripts.

As with a deposition transcript, a prevailing plaintiff may recover the cost of a trial or

---

February 11, 2021 and May 6, 2022 depositions; Alexandria Roemer; and Trent Turner's January 26, 2021 deposition.

[10] *See, e.g.*, Ex. 41 at 91:17–92:10; Ex. 42 at 9:20–10:13 (Barry Nussbaum); Ex. 40 at 38:18–39:8, 64:12-22 (Joshua Nussbaum); Ex. 44 at 39:10–40:16, 41:1–11 (Trent Turner).

hearing transcript if the transcript was necessary for the case. N.D. Ill. L.R. 54.1(b); *Majaske v. City of Chi.*, 218 F.3d 816, 825 (7th Cir. 2000). A transcript "need not be absolutely indispensable in order to provide the basis of an award of costs; it is enough if they are reasonably necessary." *Barber v. Ruth*, 7 F.3d 636, 645 (7th Cir. 1993) (internal quotation omitted).

Plaintiff requests costs for transcripts of the jury trial and ten hearings. As with deposition transcripts, the reimbursement rates are set by the Judicial Conference. N.D. Ill. L.R. 54.1(b). The attached attorney declaration lists the hearings for which reimbursement is appropriate and explains the reasons each trial or hearing transcript was necessary. Atty. Decl. ¶ 28–30. This results in a total cost of $4,628 for trial and hearing transcripts.

## V.    Plaintiff should recover fees of the clerk and marshal.

A prevailing party may recover "[f]ees of the clerk and marshal." 28 U.S.C. § 1920(1). This provision allows Plaintiff to recover both the fee for filing his lawsuit and fees paid for service of subpoenas. *Springer*, 2018 U.S. Dist. LEXIS 48870 at *45. Fees for private process service are recoverable at the rate that would have been charged by the marshal service (which was $65 per hour during this case[11]), along with "travel costs and other out-of-pocket expenses." 28 C.F.R. § 0.114(a)(1); *Springer*, 2018 U.S. Dist. LEXIS 48870 at *44. Plaintiff therefore is entitled to recover the $400 he paid to file his complaint. Atty. Decl. ¶ 31. Plaintiff likewise is entitled to $170 for service of subpoenas. These subpoenas and the associated fees are detailed in the accompanying declaration. *Id.* at ¶ 32. In total, Plaintiff requests $570 in such fees.

## VI.    Plaintiff should recover a witness fee for his expert's testimony and attendance.

A prevailing party may recover attendance fees for witnesses. 28 U.S.C. § 1920(3) (court

---

[11] $65 per hour is the current rate, and has been in effect since September 30, 2013. 28 CFR 0.114(a)(1). As this case was filed in March of 2017, Dkt. 1, $65 per hour was the applicable rate throughout this case.

may tax "[f]ees and disbursements for . . . witnesses."); *Springer*, 2018 U.S. Dist. LEXIS 48870 at *55. The fee is $40 per day. *Id.*; 28 U.S.C. § 1821(b). The fee is paid for all days that the witness was in court and available to testify, including those days on which the witness did not testify. *Spanish Action Committee v. Chicago*, 811 F.2d 1129, 1138 (7th Cir. 1987); *Nissho-Iwai Co. v. Occidental Crude Sales, Inc.*, 729 F.2d 1530, 1552 (5th Cir. 1984). Plaintiff therefore is entitled to a fee of $40 per day for four of the days that Plaintiff's damages expert attended trial, Atty. Decl. ¶ 34, for a total of $160.

## CONCLUSION

Unlike Defendants, Plaintiff does not have substantial assets at his disposal. The costs he incurred in bringing this matter (many of which are not taxable and so are not detailed here) are substantial. The Court should award Plaintiff the full taxable costs of $50,888 so that Plaintiff's net recovery will approximate what the jury and the Court have awarded.

Dated: September 25, 2023       Respectfully submitted,

*/s/ Jeff Kane*
Matthew J. Oppenheim (443698)
Scott A. Zebrak (452649)
Nicholas C. Hailey (admitted *pro hac vice*)
Jeff Kane (admitted *pro hac vice*)
OPPENHEIM + ZEBRAK, LLP
4530 Wisconsin Avenue, NW, 5th Floor
Washington, DC 20016
Tel: 202-480-2999
matt@oandzlaw.com
scott@oandzlaw.com
nick@oandzlaw.com
jkane@oandzlaw.com

*Counsel for Plaintiff*