# Exhibit 1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHARLES CURRY, d/b/a GET DIESEL NUTRITION, ) ) ) Plaintiff, ) ) v. ) ) REVOLUTION LABORATORIES, LLC; ) REV LABS MANAGEMENT, INC.; ) JOSHUA NUSSBAUM; and BARRY ) NUSSBAUM, ) ) Defendants. ) | Case No. 1:17-cv-02283<br><br>Judge Matthew F. Kennelly |

**DECLARATION OF ATTORNEY JEFF KANE**

I, Jeff Kane, hereby declare pursuant to 28 U.S.C. § 1746 that the following statements are true and correct to the best of my personal knowledge and belief.

1. I am an attorney at Oppenheim + Zebrak, LLP and am admitted to practice law in the District of Columbia. I am counsel for the Plaintiff in this case. I submit this declaration in support of Plaintiff's Bill of Costs.

2. In the accompanying memorandum of law, Plaintiff states that he is entitled to costs of $50,888. Those costs are summarized below.

| Category | Amount |
|---|---|
| Graphics and trial technician | $ 25,650 |
| Copies of electronic documents | 5,068 |
| Copies of physical documents | 1,631 |
| Deposition transcripts | 13,181 |
| Trial transcript | 3,715 |
| Hearing transcripts | 913 |
| Fees of the clerk and marshal | 570 |
| Witness fee | 160 |
| **Total** | **$ 50,888** |

1

3. This Declaration provides additional detail as to several of these costs.

**Trial Graphics**

4. Plaintiff's graphics technician helped prepare four slide decks (one each for Plaintiff's opening argument, damages expert, closing argument, and rebuttal argument) comprising 160 slides.

5. The slides for Plaintiff's opening argument, Ex. 2, contained excerpts or images from twenty different exhibits.

6. Defendants did not produce a consolidated exhibit that totaled the revenues from Diesel Test or the related products. These revenue figures were spread across multiple spreadsheets, totaling tens of thousands of rows of data. *E.g.*, RL_000006–RL_000018, RL_000002–RL_000005.

7. The closing and rebuttal decks, Exs. 4–5, contain excerpts or images from more than forty exhibits.

8. Plaintiff's graphics and trial technician billed Plaintiff a total of $26,291.51. Ex. 36. $641.51 of that represented the technician's travel and other expenses. *Id.* Plaintiff does not request reimbursement of those expenses. Plaintiff thus requests reimbursement of **$25,650**.

9. Plaintiff retained one professional, Mr. Scott Duval of FTI Consulting, who both prepared graphics and served as a trial technician. For most of Mr. Duval's services, FTI and Plaintiff agreed on a per-day rate, rather than an hourly rate. Mr. Duval provided a declaration explaining that his time broke down roughly as follows: 6.5 days of trial technician work (comprising five trial days and 1.5 days for setup/breakdown) and 4.5 days of graphics preparation. Ex. 37.

**Copies of Defendants' QuickBooks Data**

10. Defendants initially represented that the entirety of the QuickBooks database was captured in two spreadsheets the Defendants provided. Dkt. 351-3 at 4 (Defendants' counsel stating, "Our clients were ordered to produce their Quickbooks [sic] data. We produce it. We produced . . . full exports of the entire database."); Dkt. 351-3 at 8 ("We don't believe that an inspection will yield any additional information, but to the extent that you would care to inspect for yourself . . . you are welcome to schedule an inspection.").

11. Plaintiff later learned that Defendants' QuickBooks files comprised more than 320,000 transactions and over 120,000 documents. Dkt. 351-1 ¶ 9, 351-2 ¶ 5.

12. Plaintiff's QuickBooks technician initially charged $9,652.50 for the copying. Ex. 6. She later agreed to reduce her bill by 30% to $6,756.75. Plaintiff requests reimbursement of only 75% of this amount, or **$5,067.56**. Plaintiff reduces the requested amount because some of the time the QuickBooks technician billed involved planning, coordinating with Plaintiff's counsel, and discussing logistical issues with Defendants' representatives. Plaintiff seeks reimbursement only for the actual copying of data.

13. The technician also had to copy manually the "audit log" (a master list of all the changes made to a QuickBooks database over time) because copying the database as a whole does not copy the audit log. Dkt. 351-2 ¶ 5. Once the audit log was copied, and because of the issues encountered in attempting to copy the database as a whole, the technician also manually copied several transactions and documents that Plaintiff identified so that Plaintiff would have these materials in the event that the copying was unsuccessful. Plaintiff's counsel reviewed the audit log and selected various transactions about which Plaintiff wanted to retrieve documentation. These included transactions where the audit log indicated that Revolution had made changes to the

3

transaction after the transaction initially was inputted, as well as transactions for which the audit log seemed to indicate that a document might be attached to the transaction. Plaintiff provided a list of these transactions to the QuickBooks technician. The technician then retrieved the specified materials from Defendants' QuickBooks database.

14. Ultimately, Plaintiff made a complete copy of one of the two QuickBooks databases to which Defendants provided access.

15. Because copying the second database in full was unsuccessful, the technician instead manually copied hundreds of individual transactions and documents that Plaintiff identified as potentially important.

16. Plaintiff's QuickBooks expert did not attempt to determine what data that would be relevant to this case. She did not conduct keyword searches, dedupe the documents, analyze the data, or organize the documents. She simply performed the mechanical steps designed to copy Defendants' databases.

**Copies of Physical Documents**

17. Plaintiff printed numerous documents in connection with this matter. Plaintiff seeks reimbursement for three categories of documents. All printing was done in-house.

18. *Trial exhibits*: Per the Court's pre-trial guidelines, Plaintiff prepared one hard copy of each exhibit on his exhibit list to use as a "bench book," or in the event that the Court's electronic exhibit system malfunctioned. The Court likewise required the parties to prepare one copy of each of the admitted exhibits to provide to the jury during deliberations. The exhibits for the bench book totaled 5,361 pages; the exhibits for the jury totaled 921 pages. Other courts have awarded costs for the printing of trial exhibits. *Vardon Golf Co. v. Karsten Manufacturing Corp.*, No. 99-cv-2785, 2003 U.S. Dist. LEXIS 5072, at *35 (N.D. Ill. Mar. 31, 2003).

19. *Impeachment materials*: Plaintiff likewise printed certain materials to use to impeach Revolution's three live witnesses, Joshua Nussbaum, Barry Nussbaum, and Trent Turner.

   a. For the Barry Nussbaum cross: four deposition transcripts plus errata, the stipulation (Dkt. 156), the amended answer (Dkt. 101), preliminary injunction (Dkt. 132), and several declarations (Dkts. 333-1, 170-5, 35-2). This totaled 865 pages.

   b. For the Joshua Nussbaum cross: three deposition transcripts plus errata and several declarations (Dkts. 35-1, 44-1, 88-1, 170-3, 177-7, 177-37, 333-2). This totaled 468 pages.

   c. For the Trent Turner cross: one deposition transcript with errata. This totaled 363 pages.

20. *Exhibits for Barry Nussbaum Cross*: Further, at Defendants' request, the Court allowed Barry Nussbaum to testify remotely. Dkt. 307. In advance of trial, the Court informed the parties that the Court's usual electronic exhibit system could not be used to show exhibits to Mr. Nussbaum during his remote testimony. Hr'g Tr. 21:11–23 (Apr. 6, 2023). Plaintiff therefore printed hard copies of the exhibits he anticipated using during Barry Nussbaum's testimony and shipped those exhibits to Mr. Nussbaum's home in Hawaii. These documents totaled 1,799 pages. The cost to ship the documents to Mr. Nussbaum in Hawaii was $164.36. Ex. 16.

21. This totals 9,777 pages at the rate of $0.15 per page (see accompanying memorandum of law at Part III.B) plus $164.36 in shipping costs, for a total of **$1,630.91**.

**Deposition Transcripts**

22. The Court previously ordered Defendants to pay the transcript costs for the June 13 depositions of Barry and Joshua Nussbaum, and for the March 31 depositions (for which the

5

Nussbaums did not appear). Dkts. 243, 265, 266. Plaintiff thus does not request reimbursement for those transcripts in this motion.

23. As relevant here, the reimbursement rate for deposition transcripts ranges from $3.65–$6.05 per page.[12]

24. Plaintiff requests reimbursement for ten remaining depositions at the below rates, for a total of **$13,181**.

| Deponent | Breakout | Total Cost | Cite |
|---|---|---|---|
| **Revolution Laboratories 30(b)(6) (Feb. 18, 2021)** | | **$1,280** | Ex. 7 |
| 315 pages @ 3.65 per page | 1,150 | | |
| Court reporter appearance fee | 95 | | |
| Court reporter appearance fee | 35 | | |
| **Charles Curry (Feb. 4, 2021)** | | **1,021** | Ex. 8 |
| **Donna Godwin (Dec. 21, 2020)** | | **1,526** | Ex. 9 |
| 351 pages @ $3.65 per page | 1,281 | | |
| Court reporter appearance fee | 220 | | |
| Shipping/Delivery | 25 | | |
| **Adam Knippel (Jan. 19, 2021)** | | **2,192** | Ex. 10 |
| 370 pages @ 5.45 per page | 2,017 | | |
| Court reporter appearance fee | 150 | | |
| Shipping/Delivery | 25 | | |
| **Barry Nussbaum (Feb. 16, 2021)** | | **1,438** | Ex. 11 |
| 361 pages @ 3.65 per page | 1,318 | | |
| Court reporter appearance fee | 95 | | |
| Shipping/Delivery | 25 | | |
| **Barry Nussbaum (May 6, 2022)** | | **911** | Ex. 12 |

---

[12] N.D. Ill. L.R. 54.1(b); https://www.ilnd.uscourts.gov/Pages.aspx?rsp2kxYIAI6Z3skP0PESA+q3bXKkfRyo

| Deponent | Breakout | Total Cost | Cite |
|---|---|---|---|
| 115 pages @ 6.05 per page | 696 | | |
| Court reporter appearance fee | 48 | | |
| Realtime feed | 168 | | |
| **Joshua Nussbaum (Feb. 11, 2021)** | | **1,766** | Ex. 13 |
| 302 pages @ 5.45 per page | 1,646 | | |
| Court reporter appearance fee | 95 | | |
| Shipping/Delivery | 25 | | |
| **Joshua Nussbaum (May 6, 2022)** | | **666** | Ex. 12 |
| 89 pages @ 6.05 per page | 538 | | |
| Realtime feed | 127.75 | | |
| **Alexandria Roemer (Dec. 2, 2020)** | | **841** | Ex. 14 |
| 199 pages @ $3.65 per page | 726 | | |
| Court reporter appearance fee | 90 | | |
| Shipping/Delivery | 25 | | |
| **Trent Turner (Jan. 26, 2021)** | | **1,540** | Ex. 15 |
| 389 pages @ 3.65 per page | 1,420 | | |
| Court reporter appearance fee | 95 | | |
| Shipping/Delivery | 25 | | |
| **Total** | | **$13,181** | |

25. For five depositions (Donna Godwin, Barry Nussbaum's February 16, 2021 deposition, Revolution's 30(b)(6) deposition, Alexandria Roemer, and Trent Turner), plaintiff is entitled to reimbursement at the ordinary rate of $3.65 per page.

26. For the remaining five depositions, however, Plaintiff is entitled to a different rate.

a. In the case of Defendants' deposition of Plaintiff, Plaintiff is entitled to recover the full cost that Defendants' court reporter charged for the transcript. This Court has explained that "Judicial Conference rates do not apply 'when the party who must bear the costs selected the court reporter—in other words, whoever picked the

7

reporter can't later object to that reporter's rates.'" *Intercontinental Great Brands LLC v. Kellogg N. Am. Co.*, No. 13-cv-321, 2016 U.S. Dist. LEXIS 8970, at *8 (N.D. Ill. Jan. 26, 2016) (Kennelly, J.) (citing *Montanez v. Simon*, 755 F.3d 547, 558 (7th Cir. 2014)). *See also Ariel Invs., LLC v. Ariel Capital Advisors LLC*, No. 15-cv-3717, 2017 U.S. Dist. LEXIS 110240, at *5 (N.D. Ill. July 17, 2017) (Kennelly, J.) (same). Plaintiff therefore requests the full amount he was charged for this transcript.

b. For the May 6, 2022 depositions of Barry and Joshua Nussbaum, Plaintiff is entitled reimbursement for expedited transcripts and for a real-time feed. Both depositions concerned the Nussbaums' financial condition. By that point, the Nussbaums already had failed to produce entire categories of important documents concerning their financial condition, prompting an order from this Court to produce additional documents (Dkt. 215) and a motion for sanctions by Plaintiff (Dkt. 205). Prior to the depositions, the Court instructed Plaintiff that if the depositions needed to be continued (due to a lack of documents or a lack of responsiveness by Plaintiff) the depositions would be resumed in the Court's jury room. Hr'g Tr. 11:10–12:1 (Apr. 15, 2022). The Court further ordered the parties to file a joint status report on the need for additional discovery by May 18, (ten days after the depositions). Ultimately, the Court did order additional document production and additional depositions. Dkt. 225. In order to comply with the Court's orders, Plaintiff requested an expedited transcript, and a real-time feed. Those costs should be borne by Defendants. The rate for a next-day transcript is $6.05 per page.[13] The rate for a

---

[13] http://www.uscourts.gov/services-forms/federal-court-reporting-program#rates

8

real-time feed is $3.05 per page,[14] but because the court reporter charged only $1.75 per page, Plaintiff requests only that amount for the real-time feed. Ex. 12.

  c. For the January 19, 2021 deposition of Adam Knippel (Revolution's sales manager) and the February 11, 2021 deposition of Joshua Nussbaum, Plaintiff also is entitled to the fee to expedite the transcripts. Mr. Knippel's January 19, 2021 deposition occurred just five business days before the January 26, 2021 deposition of Trent Turner, Revolution's accounting manager. Likewise, Joshua Nussbaum's February 11, 2021 deposition occurred just three business days before Barry Nussbaum's February 16, 2021 deposition. Because of the quick turnaround between depositions, and because there was crossover between the subject matters covered in the depositions, it was necessary to obtain an expedited transcript of Adam Knippel and Joshua Nussbaum's depositions so that Plaintiff's counsel could review the transcripts prior to Trent Turner and Barry Nussbaum's depositions, respectively. Plaintiff therefore requests reimbursement for those two depositions at the 3-day rate of $5.45 per page.

  27. The rate for court reporter appearance fees is $110 for one half day and $220 for one full day.[15] The rates were the same in 2018, well before the depositions in this case. *Williams v. Schwarz*, No. 15 C 1691, 2018 U.S. Dist. LEXIS 169002, at *4 (N.D. Ill. Oct. 1, 2018).

**Trial Transcript**

  28. Obtaining a trial transcript was reasonably necessary. At the Court's request, Plaintiff filed a post-trial motion concerning Plaintiff's claim under the Illinois Uniform Deceptive

---

[14] http://www.uscourts.gov/services-forms/federal-court-reporting-program#rates

[15] https://www.ilnd.uscourts.gov/Pages.aspx?rsp2kxYIAI6Z3skP0PESA+q3bXKkfRyo.

9

Trade Practices Act, which the Court, rather than the jury, was to decide. Both sides' briefs on issue question quoted extensively from the trial transcript. *See, e.g.*, Dkt. 378 at 4–8; Dkt. 381 at 2–4; Dkt. 395 at 4–8. Plaintiff also had to oppose Defendants' motion to amend the judgment, which addressed evidence and rulings from trial, and quoted the trial transcript. Dkt. 385. Plaintiff likewise needed the transcript for his own motions for pre- and post-judgment interest (Dkt. 391), a permanent injunction (Dkt. 393), and for the Court to decide infringing profits (Dkt. 389), each of which relied on the trial transcript. This Court correctly has held that use of a trial transcript in post-trial briefing justifies the cost of ordering the transcript. *Merix Pharm. Corp. v. Clinical Supplies Mgmt.*, 106 F. Supp. 3d 927, 944 (N.D. Ill. 2015) (Kennelly, J.). In addition, the trial was of reasonable length and complexity (five trial days concerning three different defendants and four different claims). This Court has recognized that ordering a trial transcript can be justified where the trial is long or complex. *Gc2 Inc. v. Int'l Game Tech.*, No. 16-cv-8794, 2019 U.S. Dist. LEXIS 125381, at *7–8 (N.D. Ill. July 29, 2019) (Kennelly, J.).

29. Plaintiff ordered only a rough copy of the trial transcript. Plaintiff therefore requests reimbursement at the rate of $3.05 (the rate provided for by the Judicial Conference). For the 1,218-page transcript this results in a cost of **$3,714.90**. Ex. 17.

**Hearing Transcripts**

30. Plaintiff is entitled to costs for eight hearing transcripts. For each transcript, Plaintiff requests reimbursement at the ordinary rate of $3.65 per page,[16] for a total of **$913**.

| Hearing Date | Pages | Reimbursable Cost ($3.65 per page) | Exhibit |
|---|---|---|---|
| 10/21/20 | 20 | $73 | Ex. 18 |

---

[16] N.D. Ill. L.R. 54.1(b); https://www.ilnd.uscourts.gov/Pages.aspx?rsp2kxYIAI6Z3skP0PESA+q3bXKkfRyo

10

| Hearing Date | Pages | Reimbursable Cost ($3.65 per page) | Exhibit |
|---|---|---|---|
| 12/1/20 | 22 | 80 | Ex. 19 |
| 1/12/21 | 5 | 18 | Ex. 20 |
| 3/1/22 | 11 | 40 | Ex. 21 |
| 7/21/22 | 15 | 55 | Ex. 22 |
| 7/26/22 | 6 | 22 | Ex. 22 |
| 9/7/22 | 68 | 248 | Ex. 23 |
| 12/13/22 | 21 | 77 | Ex. 24 |
| 2/7/23 | 51 | 186 | Ex. 25 |
| 4/6/23 | 31 | 113 | Ex. 26 |
| Total | | $913 | |

a. Plaintiff necessarily obtained a copy of the October 21, 2020 hearing transcript. Ex. 27. This hearing concerned several discovery disputes. Defendants made several representations during the hearing of which Plaintiff needed to have a record: Defendants agreed to amend an interrogatory response, *id.* at 3:13–18; they represented that if they located certain insurance records, they would produce them, *id.* at 19:21–20:3; they claimed they had produced sales invoices (when in fact they had not done so); *id.* at 6:9–7:1, 16:6–7; they claimed that Revolution stopped selling Diesel Test in 2017 (then subsequently admitted they sold the product in 2018), *id.* at 9:16–17, Dkt. 88-1 ¶ 3.

b. Plaintiff necessarily obtained a copy of the December 1, 2020 hearing transcript. Dkt. 162. At that hearing the Court ruled orally on two motions to compel and on the parties' proposed protocol for remote depositions. Dkt. 162 2:14–5:17, 10:25–11:1, 17:17–20, 21:24–25:2. As to the motions to compel, obtaining a transcript was necessary because the details of the Court's ruling (and the whole of the Court's reasoning) appeared only in the transcript. The docket entry simply stated

11

"The plaintiff's second motion to compel is granted in part as stated on the record. The plaintiff's third motion to compel is denied in part and deferred in part as stated on the record." Dkt. 153. As to the remote deposition protocol, this ruling appeared only in the transcript, not in the docket order. Dkt. 153. This Court has awarded transcript costs in a similar circumstance. *Srail v. Vill. of Lisle*, 2008 U.S. Dist. LEXIS 101749, *12–13 (Dec. 15, 2008) (Kennelly, J.) (awarding costs of hearing transcripts where discovery rulings were made orally and not articulated in a written opinion or docket entry). Plaintiff also cited the hearing transcript in his summary judgment filings. Dkt. 177-1 at 24, 64 ¶ 22.

c. Plaintiff necessarily obtained a copy of the January 12, 2021 hearing transcript because Defendants made a representation about when they would be producing additional documents pursuant to the Court's modified scheduling order. Dkt. 163 at 2:24–3:8. Ex. 29.

d. Plaintiff necessarily obtained a copy of the March 1, 2022 hearing transcript. During that hearing, Defendant made two significant representations: that Defendants possessed no underlying records for their financial statements beyond what was entered into their QuickBooks system, Dkt. 217 at 7:13–18, and that Barry Nussbaum received no compensation from Revolution, *id.* at 3:14–15. Each representation was important enough to justify ordering the eleven-page transcript.

e. Plaintiff necessarily ordered the transcript of the July 21, 2022 conference (Ex. 29). At that conference, the Court explained that it would need to move the trial date, and provided a detailed explanation about options for rescheduling, and about the COVID-related processes for selecting trial dates. *Id.* at 7:7–13:10. Plaintiff asked

12

       for time to consider the scheduling options, and the Court agreed set the case for another conference for July 26. *Id.* at 12:19–13:6. In addition, Plaintiff ordered the July 21 transcript because Defendants made representations about the parties' settlement dialogue that Plaintiff believed were inaccurate. *Id.* at 3:23–4:1, 6:3–17. Moreover, the Court scheduled a follow-up conference for five days later on July 26, 2022. Dkt. 269.

f.     Plaintiff necessarily ordered the transcript of the July 26, 2022 conference (Ex. 30). At that conference, the Court made modifications to what the parties should file in their proposed pre-trial order. *Id.* at 4:5–6:19. Those modifications were not reflected in the docket entry memorializing the hearing. Dkt. 274.

g.     Plaintiff necessarily ordered the transcript of the September 7, 2022 conference. (Ex. 31). There, The Court orally identified issues that it ordered the parties to address in supplemental briefing; the description of those issues was contained only in the transcript, not in the accompanying docket entry. *Id.* at 9:8–11:25, 13:19–21:10, 49:11–50:18; Dkt. 291 ("Each side is directed to file by 9/15/2022 a supplemental memorandum . . . regarding the open issues addressed at the pretrial conference . . . ."). The transcript likewise includes a discussion of what QuickBooks data Defendants would have to produce in order for their profit-and-loss statement to be admissible. Ex. 31 at 41:21–44:5. Plaintiff needed a transcript of this discussion in order to meet and confer with Defendants' counsel concerning that subsequent production. This portion of the transcript underscores the need for an expedited transcript because Defendants' production was due within fourteen days of the hearing. Dkt. 292. The Court also provided guidance on what factors

13

|   |   |
|---|---|
|   | the Court would consider in deciding whether to provide an adverse inference instruction concerning personal financial discovery. Ex. 31 at 59:8–60:11. Plaintiff obtained the transcript of this hearing for the additional reason that it contained the Court's reasoning for granting or denying several motions in limine. *E.g.*, *id.* at 7:18–8:11, 37:18–12, 47:7–48:2. |
| h. | At the December 13, 2022 hearing, the Court ordered additional briefing on one motion in limine. Ex. 32, Hr'g Tr. 4:3–18 (Dec. 13, 2022). The transcript contained the Court's explanation of what the supplemental briefing should cover. *Id.* That full explanation was not contained in the docket entry. Dkt. 307. The transcript also contained important warnings from the Court that if Mr. Nussbaum testified remotely and experienced any technical difficulties, Mr. Nussbuam would have to testify by deposition designation instead. Ex. 32 at 12:21–13:24. The transcript also included a more detailed trial schedule (providing that trial would run Monday through Thursday then resume Monday) than what was reflected on the docket. *Id.* at 17:10–12. |
| i. | At the February 7, 2023 hearing, the Court ruled on numerous pending items. Ex. 33. The accompanying docket entry did not memorialize these rulings. Dkt. 338 ("The Court heard argument on and ruled orally on all remaining issues relating to production of financial records by the defendants. The details of the Court's orders in this regard are as stated on the record during the hearing."). Indeed, the Court encouraged the parties to order the expedited transcript. Ex. 33 at 47:11–19 ("So I'm not going to try to summarize here. I'm going to strongly suggest that you order the transcript. The order is going to be very perfunctory . . . I'm hoping somebody |

14

        was taking good notes or is going to get an expedited version of the transcript . . . .").

    j.    At the April 6, 2023, the Court ruled on Defendants' Rule 39 motion. The transcript included the Court's reasoning, as well as an important reservation of a ruling on the question of whether the jury's verdict on infringing profits would be considered advisory. Ex. 34, Hr'g Tr. 4:24–10:4 (Apr. 6, 2023). Plaintiff ordered a transcript to have a record of this important decision (which would be the subject of post-trial briefing from both sides, Dkts. 389, 396). The transcript contained an extended discussion of trial logistics, none of which was memorialized in the accompanying docket entry. Ex. 34 at 13:18–27:21, 29:4–31:10; Dkt. 356. The transcript also contained the Court's rulings on trial time limits, which was not included in the accompanying docket entry, Dkt. 356, and about which Plaintiff filed a subsequent motion, Dkt. 357.

**Fees of the clerk and marshal**

    31.    I understand that Plaintiff paid a $400.00 to file his complaint.[17]

    32.    Plaintiff likewise seeks reimbursement for three subpoenas: one to serve Defendants with the complaint and summons, and two served on third parties Amazon, eBay. As to the first subpoena, Plaintiff requests $130 (one hour each for two attempts at service), plus $15 charge by the process server for printing the materials, plus $25 charged for preparing and mailing the affidavit of service, for a total of $170. Ex. 35.

    33.    This results in a total of **$570** for fees of the clerk and marshal.

---

[17] This was the standard fee charged for civil complaints in March of 2017, when this case was filed. http://web.archive.org/web/20170213020804/https://www.ilnd.uscourts.gov/Pages.aspx?VAOKCfUfUrENJEfItoKzJ1y8ME5cnOTZ

15

**Witness Fee**

34. Plaintiff's damages expert, Joel Herman, attended each day of the trial, for a total of five days (May 15–18, May 22). Plaintiff requests reimbursement for the four days culminating in Mr. Herman's testimony on May 18. At the statutory rate of $40 per day, see accompanying memorandum of law at Part VI, the witness fee totals **$160**.

____/s/ Jeff Kane____
Jeff Kane
Executed September 25, 2023
