**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **CHARLES CURRY,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | **Case No. 17 C 2283** |
| ) | |
| **REVOLUTION LABORATORIES,** ) | |
| **LLC, et al.,** ) | |
| ) | |
| **Defendants.** ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

MATTHEW F. KENNELLY, District Judge:

Charles Curry sued Revolution Laboratories, LLC, Rev Labs Management, Inc.,

Joshua Nussbaum, and Barry Nussbaum, alleging that they infringed his "Diesel Test"

trademark and that they violated the Illinois Consumer Fraud and Deceptive Practices

Act (ICFA), the Illinois Uniform Deceptive Trade Practices Act (IUDTPA), and the Anti-

Cybersquatting Consumer Protection Act (ACPA). The parties stipulated that Revolution

was liable for infringing Curry's Diesel Test mark and violating ACPA with respect to one

domain name. The Court granted summary judgment in favor of the defendants on

Curry's ICFA claim.

The remaining claims proceeded to a jury trial in May 2022, except for the

IUDTPA claim, which the parties agreed would be decided by the Court.  The jury found

Joshua and Barry Nussbaum individually liable for trademark infringement.  The jury

also found that each defendant's infringement was willful.  The jury awarded Curry

actual damages in the amount of $2,500; defendants' profits in the amount of $500,000;

and punitive damages in the amount of $300,000 each against Revolution Labs, Joshua Nussbaum, and Barry Nussbaum.  On post-trial submissions, the Court:  (a) determined to treat the jury's profits award as advisory and awarded Curry defendants' profits in the amount of $547,095.44; (b) awarded Curry prejudgment interest on the profits award, in the amount of $201,723.65; (c) found in favor of Curry on the IUDTPA claim; and (d) issued a permanent injunction.

Now before the Court are Curry's bill of costs and his petition for attorney's fees. The Court apologizes for its delay in ruling on these matters.

**1.     Curry's bill of costs**

As the prevailing party, Curry is entitled to recover costs under the Lanham Act, the IUDTPA, 28 U.S.C. § 1920, and Federal Rule of Civil Procedure 54(d).  The defendants do not argue otherwise.  Curry seeks costs in the total amount of $50,888. Some of the elements of this total are undisputed.  The Court will address here only the disputed points.

The largest single cost sought by Curry is $24,750 for a trial graphics technician. This represents a daily fee of $2,250.  The technician prepared trial graphics before the trial and was present throughout the trial and called up exhibits, deposition excerpts, and other materials for presentation to the jury.  The technician performed the in-trial tasks quite well, but that does not make his daily fee a recoverable cost.

To be compensable, an expense must fall into one of the categories of costs authorized by statute for reimbursement.  *See Crawford Fitting Co. v. J.T. Gibbons, Inc.,* 482 U.S. 437, 441–42 (1987).  The fees charged by the trial graphics technician do not

fit into any of the categories of costs authorized by 28 U.S.C. § 1920.[1]  The only category that comes anywhere close is "[f]ees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case."  28 U.S.C. § 1920(4).  The term "exemplification" is broad enough to cover the expense of preparing materials to present at trial, *see Cefalu v. Village of Elk Grove*, 211 F.3d 416, 427-28 (7th Cir. 2000), and it is likely broad enough to cover the expense of preparing graphic presentations of exhibits and relevant events.  *See id.* at 428.  The Court is dealing with those points separately.  What is at issue here is different:  it involves the hourly or daily fees charged for a technician to be present in the courtroom and run the evidence presentation software from a laptop at counsel table.  This is a task that, in the Court's experience, is commonly performed by trial counsel themselves or by their firm's paralegals, and when they do so their fees do not get converted into recoverable costs.  The technician hired by Curry's counsel likely performed these tasks better than trial counsel would have on their own, but that doesn't make his fees a recoverable cost.  The Court declines to award this amount.

The Court does award, however, the $900 charged by the consultant for preparing graphics presentations for use in arguments to the jury.  This falls within the definition of "exemplification" approved in *Cefalu*.

The defendants also dispute an expense of $5,068 that represents the cost of recovering and copying the defendants' QuickBooks electronic files.  The cost of

---

[1] Curry does not argue that the scope of awardable costs under the Lanham Act and/or the IUDTPA is broader than that authorized under 28 U.S.C. § 1920.  *See* Pl.'s Mem. in Support of Pl.'s Bill of Costs (dkt. no. 422-1) at 1 ("The categories of costs that are recoverable are set out in 28 U.S.C. § 1920.").

3

recovering and copying electronic "documents" is just as compensable as the cost of copying paper documents. *See, e.g., Hecker v. Deere & Co.*, 556 F.3d 575, 591 (7th Cir. 2009); *see also CBT Flint Partners, LLC v. Return Path, Inc.*, 737 F.3d 1320, 1326 (Fed. Cir. 2013). These materials were reasonably and necessarily obtained by Curry, as they bore directly on the determination of recoverable profits.

The Court also agrees with Curry that the $3,715 charged for a real-time feed of the trial transcript was reasonable and necessary, and not simply a matter of convenience. Among other things, the transcript was cited extensively in the parties' post-trial submissions.

Finally, the Court agrees with the defendants that a $160 fee charged by Curry's damages expert to attend a portion of the trial is not a recoverable cost. The Court does not dispute that the expert's attendance was reasonable and appropriate, as the expert relied on testimony rendered during the trial to support his own testimony. But this was not a legitimately recoverable fee for a witness's attendance, as the expert was not testifying on those dates. Rather, it was part of the expert's fee for services, which is not a recoverable cost under section 1920. *See, e.g., Chi. Coll. of Osteopathic Med. v. George A. Fuller Co.*, 801 F.2d 908, 911-12 (7th Cir. 1986).

In sum, the Court reduces plaintiff's requested costs of $50,888 by $24,910 and taxes costs in favor of Curry and against defendants, jointly and severally, in the amount of $25,978.

## 2. Curry's motion for attorney's fees

Curry seeks an award of attorney's fees under, initially, the Lanham Act, which provides that "[t]he court in exceptional cases may award reasonable attorney fees to

the prevailing party." 15 U.S.C. § 1117(a). The Seventh Circuit has held that whether a case is "exceptional" is determined via the same standard the Supreme Court has applied to attorney's fee awards under parallel language in the Patent Act. *See LHO Chicago River, LLC v. Perillo*, 942 F.3d 384, 388-89 (7th Cir. 2019). Specifically, a court considering a request for fees under section 1117(a) is required to "examine the totality of the circumstances and exercise [its] equitable discretion" in light of the factors set out in *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545 (2014). *See LHO Chicago River, LLC*, 942 F.3d at 388-89. These factors include, with respect to the losing party and its litigating position, "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Octane Fitness, LLC*, 572 U.S. at 554 n.6. More generally, "an 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Id.* at 554.

Curry contends that this case meets the "exceptional case" standard based on: (1) the jury's finding of willful infringement; (2) considerations of adequate compensation and deterrence; and (3) what it contends was litigation misconduct on the part of the defendants. The Court will address each point in turn.

The jury found the defendants' infringement was willful, but the Court agrees with its colleague Judge Iain Johnston that this, by itself, does not make the case exceptional within the meaning of section 1117(a). *See Madison St. Props., LLC v. Marcus Corp.*, No. 20 C 50471, 2023 WL 5860318, at *4 (N.D. Ill. Sept. 11, 2023). But

the willfulness finding is a factor appropriately considered, as not all infringement is willful.  That said, this is not a case in which the infringement was willful from the get-go.  Curry's mark was not registered, and based on the evidence, the defendants gained actual awareness of his use of "Diesel Test" in the relevant field only when Curry sent what amounted to a cease-and-desist letter.  On the other hand, the defendants acted completely inappropriately at that point—basically deciding to ignore Curry's mark and make him sue them—which is likely what led, in large part, to the jury's willfulness finding.

The next factor, compensation and deterrence, is a bit of a mixed bag.  Curry did not show that he had significant actual losses.  Instead, his focus at trial was on recovery of the defendants' profits (plus, later, prejudgment interest on the profits award).  The two are not necessarily the same, and there is good reason to believe, based on the paucity of evidence regarding sales by Curry, that in this case the award of the defendants' profits exceeds by a large margin any actual losses he suffered.

The "compensation" factor also arguably takes into account the fact that Curry incurred significant legal fees in achieving the jury award and the proposition that he won't be fully compensated unless his attorney's fees are paid over and above that.  But the proposition that the award of defendants' profits plus prejudgment interest likely *over*compensates him applies here too.  And that aside, there's nothing in the record about whether Curry was paying legal fees as he went or whether, instead, his lawyers agreed to be paid from any damages award on a contingent or partially-contingent basis.  If so, then the compensation factor arguably tilts less in Curry's favor.

On the question of deterrence, the significant punitive damages awards against

each of the defendants, including the two Nussbaums, are sufficient on a going-forward basis to deter them, as well as, via general deterrence, other prospective trademark infringers.

On the question of the claimed "unreasonable manner in which the case was litigated" by the defendants, *see Octane Fitness*, 572 U.S. at 554, Curry cites their claimed obstruction of discovery; certain allegedly deceptive conduct by the defendants in the course of the litigation; and what he contends were unreasonable litigation positions on particular issues.

On the first of these points, there is no question that the defendants knowingly obstructed, repeatedly and over an extended period, Curry's legitimate efforts to obtain discovery regarding their personal finances, which was relevant regarding (if nothing else) his request for punitive damages. The Court made several findings on this score over the course of the litigation and need not repeat those findings here. Of note, however, is the fact that the Court has *already* awarded Curry his reasonable attorney's fees caused by this misconduct on the part of the defendants, to the tune of about $90,000, and the defendants have paid that sanction.[2] Given the circumstances, it's hard to see this discovery misconduct as a basis to award fees arising from *other* aspects of the litigation.

The Court agrees with Curry that certain other aspects of the defendants' conduct during the litigation were deceptive. This includes their initial representations

---

[2] This was less than the amount Curry sought, but the Court concluded that his requested fees were excessive in various respects. That determination would be the same were the Court to reassess the matter at this point regarding a fee award under section 1117(a).

that certain limited spreadsheets captured the entirety of Revolution Labs' QuickBooks database; their false denial of ownership of dieseltestbooster-red.com, the website they used to market their infringing product; and their false denials of association with an entity called Elite Wellness, which marketed the infringing product. The defendants offer no response to the second and third of these points, and on those points their deception is well documented. On the QuickBooks issue, however, though the spreadsheets in fact were not the comprehensive summary that defendants had indicated, the defendants ultimately agreed (after motion practice on Curry's part) to make the entire QuickBooks database available to Curry, and Curry's counsel did not take them up on the offer. Given the circumstances, it's hard to see this particular point as a basis to support an award of attorney's fees.

The Court does not agree with Curry regarding the other litigation positions of the defendants that he contends were unreasonable. The defendants initially fought the case over the question of personal jurisdiction, and though they ultimately did not succeed on appeal, their position that personal jurisdiction was lacking was a reasonable litigation position. In December 2020, not all that long after the case came back on remand, Revolution Labs stipulated to liability for trademark infringement, and after that the case essentially was fought out over the issues of individual liability on the part of the Nussbaums, the issue of willful infringement, and the recoverability and amount of damages, the defendants' profits, and punitive damages. Though the defendants' contentions on these points ultimately lacked merit, the Court cannot say they took unreasonable litigation positions. One possible exception involved what appeared to be an attempt on the defendants' part to limit the scope of the liability

stipulation, but the litigation over that particular point was relatively focused and did not take up an inordinate amount of time and effort.

Taking all of these circumstances together, the Court concludes that Curry has not met his burden of establishing that the case was "exceptional" within the meaning of section 1117(a) such that he is entitled to an award of attorney's fees over and above the amount already paid as a sanction for the defendants' misconduct regarding discovery on their finances.

Curry alternatively seeks an award of attorney's fees under the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/3. The statute reads as follows:

> § 3.    A person likely to be damaged by a deceptive trade practice of another may be granted injunctive relief upon terms that the court considers reasonable. Proof of monetary damage, loss of profits or intent to deceive is not required. Relief granted for the copying of an article shall be limited to the prevention of confusion or misunderstanding as to source.
>    *Costs or attorneys' fees or both may be assessed against a defendant only if the court finds that he has wilfully engaged in a deceptive trade practice.*
>    The relief provided in this Section is in addition to remedies otherwise available against the same conduct under the common law or other statutes of this State.

815 Ill. Comp. Stat. 510/3 (emphasis added). The Court has found that the defendants willfully violated the IUDTPA. *See Curry v. Revolution Labs., LLC*, No. 17 C 2283, 2023 WL 5509337, at *21 (N.D. Ill. Aug. 25, 2023).

There is not much caselaw under this provision of the IUDTPA, but what little exists indicates that a fee award is essentially automatic upon a finding of a willful violation. *See, e.g., Chicago's Pizza, Inc. v. Chicago's Pizza Franchise Ltd. USA*, 384 Ill. App. 3d 849, 868–69, 893 N.E.2d 981, 998 (2008). And the defendants do not address Curry's request for fees under the IUDTPA, so they have essentially forfeited

9

any opposition to a fee award under that statute.

This does not mean, however, that Curry is entitled to fees for the *entire case* under the IUDTPA. The only form of relief the IUDTPA authorizes is an injunction, and here the defendants agreed to an injunction in July 2020, shortly after the case was remanded from the Seventh Circuit following the personal jurisdiction appeal. (It is true that section 3 says that relief under the IUDTPA is *in addition to* relief otherwise available by law—which would include damages, disgorgement of profits, and so on— but that does not mean that these forms of relief are available *under* the IUDTPA.)

The Court concludes that Curry is entitled to an award of reasonable attorney's fees and costs based on the IUDTPA, but only up through the date the defendants agreed to entry of a preliminary injunction, which appears to have been on or about July 31, 2020.[3] Any fee award beyond that date would exceed the scope of what the IUDTPA's fee provision authorizes.

## Conclusion

For the reasons stated above, the Court grants plaintiff's bill of costs [dkt. no. 422] in part and taxes costs in favor of plaintiff Charles Curry and against defendants Revolution Laboratories, LLC, Joshua Nussbaum, and Barry Nussbaum, jointly and severally, in the amount of $25,978. The Court also grants plaintiff's petition for attorney's fees [dkt. no. 423] in part. The Court declines to award plaintiff fees under the Lanham Act but grants plaintiff's petition for an award of attorney's fees against all of

---

[3] Curry represented himself during the early stages of the litigation, and the appearances of his trial counsel were not filed until late July 2020. It is possible, and the Court understands in making its decision, that an award of fees only through July 31, 2020 may end up as a relatively nominal amount.

the defendants under the Illinois Uniform Deceptive Trade Practices Act, limited to the period through July 31, 2020. The Court waives compliance with Local Rule 54.3 regarding plaintiff's fee petition. Plaintiff is directed to file a fee petition, including any supporting materials, by July 15, 2024; defendants' response is to be filed by July 29, 2024; and plaintiff's reply is to be filed by August 8, 2024. The case is set for a telephonic status hearing on August 15, 2024 at 8:50 a.m., using call-in number 650-479-3207, access code 980-394-33. The Court's intention is to rule on the amount of the fee award at that time.

Date: June 30, 2024

MATTHEW F. KENNELLY
United States District Judge